UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------X     Docket No.
ILANA KOPMAR, DIANE T. CLARKE,                                                  1:24-cv-05158-JPO
and ISAAC ALTMAN,

                                        Plaintiffs,                             **SECOND
                                                                                AMENDED COMPLAINT**

                        -against-

THE ASSOCIATION OF LEGAL AID ATTORNEYS                                          **JURY TRIAL
AMALGAMATED LOCAL UNION 2325 OF THE                                             DEMANDED**
INTERNATIONAL UNION, UNITED AUTOMOBILE
AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA (UAW), AFL-CIO, and DANIELLE
WELCH, GERALD KOCH, EVA STEVENSON, CANDACE
GRAFF, LISA OHTA, BRET J. TAYLOR, EMILY C. EATON,
MARTYNA KAZNOWSKI, JEREMY BUNYANER, IOANA
CALIN, GILLIAN R. KRESS, PUJA PAUL, JACQUELINE
AGUILAR, BABATUNDE AREMU, CASEY BOHANNON,
MICHAEL GIBBONS, ALEXANDER HU, KELSEY LAING,
MARTHA MENENDEZ, HALLIE MITNIK, SEAN T.
PARMENTER, IAN SPIRIDIGLIOZZI, DOROTHY SUMMERS,
TANNER WIELAND, TORI ROSEMAN, ANDREW SPENCE,
COLLEEN FOLEY, and JULIA JENKINS,

                                        Defendants.

--------------------------------------------------------------------------X

        Plaintiffs Ilana Kopmar, Diane T. Clarke, and Isaac Altman, by their attorneys, The Louis

D. Brandeis Center for Human Rights Under Law, and Lieb at Law, P.C., as and for their

complaint against defendants The Association of Legal Aid Attorneys (ALAA), Amalgamated

Local Union 2325 of the International Union, United Automobile, Aerospace and Agricultural

Implement Workers of America (UAW), AFL-CIO (the "ALAA"), Danielle Welch, Gerald Koch,

Eva Stevenson, Candace Graff, Lisa Ohta, Bret J. Taylor, Emily C. Eaton, Martyna Kaznowski,

Jeremy Bunyaner, Ioana Calin, Gillian R. Kress, Puja Paul, Jacqueline Aguilar, Babatunde

Aremu, Casey Bohannon, Michael Gibbons, Alexander Hu, Kelsey Laing, Martha Menendez,

Hallie Mitnik, Sean T. Parmenter,  Ian Spiridigliozzi, Dorothy Summers, Tanner Wieland, Tori

Roseman, Andrew Spence, Colleen Foley, and Julia Jenkins, allege as follows:

## NATURE OF THE CASE

1. Plaintiffs are attorneys and ALAA union members employed by the Legal Aid Society
of Nassau County who are being expelled from the union in explicit retaliation for their having
engaged in protected activity in opposing discrimination by exercising their right to file a lawsuit
in New York state court (the "Lawsuit") temporarily blocking the union from passing a blatantly
anti-Semitic resolution concerning the Israel/Hamas war ("the Resolution") in violation of
plaintiffs' rights  arising under the Labor-Management Reporting and Disclosure Act
("LMRDA"), 29 U.S.C. §411(a)(2), §411(a)(4), §412, and §529, Title VII of the Civil Rights Act
of 1964 ("Title VII") 42 U.S.C. §2000e-3(a), the New York State Human Rights Law ("NYS-
HRL"), Executive Law §296(1), §296(6), and the New York City Human Rights Law ("NYC-
HRL"), NYC Admin. Code §8-107(7).

2. Defendants violated plaintiffs' rights under the LMRDA by retaliating against plaintiffs
for (a) bringing suit to protect their labor rights, and (b) freely expressing their opposition to the
discriminatory environment and practices within the ALAA as described herein.

3. Defendants similarly violated plaintiffs' Title VII, NYS-HRL, and NYC-HRL rights
by retaliating against plaintiffs for opposing the ALAA's discriminatory environment and
practices.

4. After the Hamas terrorist attack in Israel on October 7, 2023, the ALAA's
communication channels and governance became permeated with anti-Semitic hatred of the

Jewish state of Israel and exhilaration at the maiming, torture, burning, raping, kidnapping and murder of nearly 1,500 men, women, children, the elderly, and the disabled.

5. This mixture of fury and glee culminated in the Resolution being drafted and rushed to the membership for a vote, compelling plaintiffs to seek and obtain a temporary restraining order against finalizing the vote.

6. The resolution itself amounted to a 1,147-word diatribe against the existence of the Jewish state, wherein the Hamas massacre, a pogrom unrivaled since the Holocaust, merited only seven words of passing mention as "the violent tragedy on October 7, 2023."

7. Now plaintiffs are suffering the ultimate form of retaliation: formal charges against them and proceedings to expel them from their union *expressly for exercising their legal right to protect themselves from the union's anti-Semitism in a court of law*.

8. The anti-Semitic expressions within the ALAA represented a cornucopia of classic and modern anti-Semitism, including (1) calls for the end of the Jewish state and the denial of the Jewish people's right to self-determination, which in the context of the October 7th massacre and the support for Hamas and Hezbollah expressed by other ALAA members, plaintiffs understood as a call for further violence against Israel's Jewish population; (2) ignoring completely the October 7th Hamas attack, or minimizing or denying its barbarity, in statements on the Israel/Hamas war; (3) accusations that "Jewish donations" caused ALAA employers to denounce the anti-Semitic statements of their employees; (4) charges that Jewish ALAA members opposing the anti-Semitic rhetoric and resolution have dual loyalty to Israel; (5) attacks on the willingness and ability of those Jewish ALAA members to represent minority clients; (6) blaming Israel for police misconduct in the United States; (7) Orwellian claims that the Jewish state is committing genocide in its campaign against Hamas and that opponents of

the resolution support genocide, distorting the term beyond recognition; and, (8) in order to dehumanize and demonize the Jewish state of Israel, constant repetition of outlandish and definitively debunked sensationalized claims that Israel targeted Palestinian civilians.

9. This campaign of hate created an anti-Semitic hostile environment for Jewish ALAA members for whom Zionism is an essential part of their Jewish identity, which includes the vast majority of American Jewry, according to a study conducted by the Pew Research Center, *Jewish Americans in 2020*, Pew Research Center, May 11, 2021 ("Eight-in-ten U.S. Jews say caring about Israel is an important or essential part of what being Jewish means to them."); for Jewish ALAA members for whom the Hamas pogrom against Jews was painful beyond description; and for their non-Jewish ALAA member allies.

10. The various anti-Semitic resolutions and statements from the ALAA and its chapters astonished even the non-profit legal service providers employing ALAA's members, who denounced and disavowed them.

11. For example, The Legal Aid Society, New York City's primary indigent criminal defense provider, among other legal services, and the employer with the largest contingent of ALAA members, issued a statement just prior to an ALAA scheduled vote on the resolution that included this denunciation (emphasis added):

> The Legal Aid Society rejects the resolution from the Association of Legal Aid Attorneys (ALAA), UAW Local 2325. The resolution is **laden with coded antisemitic language and thinly veiled calls for the destruction of the State of Israel.** At a time when our attorneys and staff should be united in support of the people we serve, the resolution does not advance the legal interests of our clients, does not comport with our mission and values, and is divisive and hurtful. The Legal Aid Society condemns any expression of antisemitism and will never support such a resolution. We sincerely hope that ALAA members vote against this resolution.

12. The Bronx Defenders organization responded to its ALAA chapter's statement saying in part (emphasis added):

> Although the union calls itself 'The Bronx Defenders Union,' it is an entirely separate entity from BxD. The Bronx Defenders did not approve the union's statement and played no part in the drafting or publication of the union's statement.
>
> We agree with the American Bar Association's ('ABA') statement which has called on the legal community 'to recognize the humanity of both Palestinians and Israelis when commenting on the crisis.' The union's statement did not do so and is **not consistent with our values or mission.**
>
> **We condemn antisemitism, anti-Palestinian racism, Islamophobia and all forms of discrimination and bigotry.**

13. The Legal Aid Society of Nassau County, plaintiffs' employer, issued a "Unanimous Statement Opposing the Resolution of the Association of Legal Aid Attorneys (ALAA), UAW Local 2325," stating (emphasis added):

> The Legal Aid Society of Nassau County (NCLAS), by its management and Board of Directors unanimously and emphatically rejects the resolution from the Association of Legal Aid Attorneys (ALAA), UAW Local 2325, the chief bargaining unit of Nassau County Legal Aid Attorneys, which includes **antisemitic language and a thinly veiled call for the destruction of the State of Israel.** This resolution does not represent the values or mission of our office, and is divisive and hurtful to so many members of our staff and clients. We will never support an antisemitic, anti-religious, anti-ethnic or racist statements made by any organization.
>
> While the Legal Aid Society of Nassau County has a longstanding policy against taking positions on international and national political events, and while we are well aware and concerned about the ongoing humanitarian issues on both sides of this conflict, NCLAS will not stand idly by and allow **this irresponsible and antisemitic resolution** to stand as it does not reflect the mission of our office. Notably, the ALAA resolution inexplicably fails to mention the atrocities inflicted by Hamas against 1,400 men, women and children from Israel and other countries who were raped, killed,

> beheaded, burned and kidnapped on October 7, 2023.    The
> resolution cannot be defended and must be rejected in its totality.

14. The president and chief executive officer of the New York Legal Assistance Group ("NYLAG"), one of the largest providers of free civil legal services in New York, sent an organization-wide email that read in part:

> We have recently learned that ALAA has scheduled a vote on a
> resolution regarding Israel and the war in Gaza. The information that
> we have about what is contained in this resolution is deeply
> concerning to us, as it contains language that many of our staff,
> clients, and supporters will find to be **patently one-sided, anti-
> Semitic, and denying the right of State of Israel to exist.**    In
> contrast to this resolution, and as I have said before, there is no place
> at NYLAG for anti-Semitism, racism, Islamophobia, or any another
> ism or phobia.

(emphasis added).

15.    Indeed, the UAW is under investigation by an independent federal monitor for antisemitism over the ALAA's retaliation against its members.

16. The investigation was opened by federal monitor Neil Barofsky in February 2024, and upon information and belief, includes investigation into UAW president Shawn Fain.

17. In response to plaintiffs' Lawsuit seeking protection from the anti-Semitic resolution and the anti-Semitic firestorm surrounding it, plaintiffs were subjected to a barrage of unlawful retaliatory conduct, culminating in the current effort to expel them from the ALAA entirely.

18. The retaliatory animus behind the expulsion was not hidden, but rather proudly, gleefully, and contemptuously expressed by the ALAA members who, under color of the authority granted them by Article 31 of the UAW International Constitution, filed charges and initiated expulsion proceedings against plaintiffs immediately after plaintiffs commenced the Lawsuit and obtained a temporary restraining order blocking the vote from concluding:

> We'd like to update everyone regarding the suit being brought against ALAA. A few of us have filed Article 31 union charges against the deeply anti-democratic "members" who brought the 11/16/23 suit. Article 31 charges were filed days after the TRO was initially issued, and we believe it is important for everyone to know that members are fighting back to defend ourselves and our union.
>
> * * *
>
> In solidarity and rage,
>
> Jerry, Eva, Candace, and Dani
>
> **PS: Hello to any judges for whom this becomes an exhibit.**

(emphasis added)

19. The charges themselves could not be more explicit in their retaliatory aim to unlawfully punish plaintiffs for filing the Lawsuit, including, in particular, the aim to punish plaintiffs for expressing the point of view that the discriminatory expressions, conduct, and harassment they experienced was anti-Semitic:

> This Article 31 Proceeding charges Diane T. Clarke, Ilana Kopmar, Isaac Altman, and David Rosenfeld with conduct unbecoming of a union member. Specifically, by seeking judicial injunctive relief to interrupt a democratic process on an internal union matter and, in the process, baselessly and publicly smearing their fellow union siblings as antisemitic, these individuals violated core tenants of our union's mission and behaved in ways that demand official consequences.

20. Plaintiffs had a good faith, reasonable belief that the aforesaid anti-Semitic expressions, conduct, and harassment which plaintiffs opposed in the Lawsuit were unlawful.

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and §1343 as this action seeks redress for the violation of plaintiffs' rights arising under (a) the Labor-Management

Reporting and Disclosure Act, 29 U.S.C. § 411(a)(2), § 411(a)(4), §412,  §529, and (b) Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. §2000e-3(a).

22. This Court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. §1367(a).

23. Venue in this District is proper under 28 U.S.C. §1391 because it is the judicial district in which a substantial part of the events or omissions giving rise to plaintiffs' claims occurred and where the ALAA maintains its principal office.

## ADMINISTRATIVE PROCEDURE

24. Plaintiffs have properly exhausted their administrative remedies.

25. On June 4, 2024, Plaintiffs filed Charges of Discrimination with the Equal Opportunity Employment Commission ("EEOC") within the 300-day filing deadline.

26. On August 1, 2024, Plaintiffs received Notices of Right to Sue Letters from the EEOC, thereby permitting inclusion of their Title VII claims.

## THE PARTIES

27. Plaintiff Ilana Kopmar is an attorney employed by the Legal Aid Society of Nassau County and is an ALAA member.

28. Plaintiff Diane T. Clarke is an attorney employed by the Legal Aid Society of Nassau County and is an ALAA member.

29. Plaintiff Isaac Altman is an attorney employed by the Legal Aid Society of Nassau County and is an ALAA member.

30. Defendant ALAA  f/k/a The Association of Legal Aid Attorneys (ALAA), Amalgamated Local Union 2325 of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL-CIO"), is an amalgamated local union within the UAW and a labor organization within the meaning of the LMRDA, Title VII the NYS-HRL, and the NYC-HRL, in that it exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment, and is engaged in an industry affecting commerce.

31. The ALAA represents approximately 3,000 attorneys and legal support staff at approximately thirty employers in the New York City metropolitan area with whom it has collective bargaining agreements.

32. The ALAA's principal office is located at 50 Broadway, Suite 1600, New York, New York 10004, in the Southern District of New York.

33. The ALAA conducts almost all of its operations, meetings, programs and training at its principal place of business, which is where plaintiffs and other members would go to seek assistance from the ALAA for union matters, all of which would be denied to plaintiffs if they are expelled. It is also where the meetings described herein occurred or were organized, to the extent that they had a physical locus at all and where the selection of jurors (the Trial Committee) would be selected and the trial itself would be conducted in plaintiffs' expulsion proceeding.

34. Defendant Danielle Welch is an employee of The Legal Aid Society (covering New York City), an ALAA member, and one of the four ALAA members who filed the charges against plaintiffs.

35. Upon information and belief, Defendant Welch resides in New York.

36. Defendant Welch filed the charges against plaintiffs under the color of union authority granted pursuant to Article 31 of the UAW International Constitution.

37. Defendant Gerald Koch is an employee of The Legal Aid Society (covering New York City), an ALAA member, and one of the four ALAA members who filed the charges against plaintiffs.

38. Upon information and belief, Defendant Koch resides in New York.

39. Defendant Koch filed the charges against plaintiffs under the color of union authority granted pursuant to Article 31 of the UAW International Constitution.

40. Defendant Eva Stevenson is an employee of The Legal Aid Society (covering New York City), an ALAA member, and one of the four ALAA members who filed the charges against plaintiffs.

41. Upon information and belief, Defendant Stevenson resides in New York.

42. Defendant Stevenson filed the charges against plaintiffs under the color of union authority granted pursuant to Article 31 of the UAW International Constitution.

43. Defendant Candace Graff is an employee of The Legal Aid Society (covering New York City), an ALAA member, and one of the four ALAA members who filed the charges against plaintiffs.

44. Upon information and belief, Defendant Graff resides in New York.

45. Defendant Graff filed the charges against plaintiffs under the color of union authority granted pursuant to Article 31 of the UAW International Constitution.

46. Defendant Lisa Ohta is an employee of The Legal Aid Society (covering New York City), the President of the ALAA, and a member of its Amalgamated Council, which approved the charges filed against plaintiffs.

47. Upon information and belief, Defendant Ohta resides in New York.

48. Defendant Bret J. Taylor is an employee of The Legal Aid Society (covering New York City), the Financial Secretary-Treasurer of the ALAA and a member of its Amalgamated Council, which approved the charges filed against plaintiffs.

49. Upon information and belief, Defendant Taylor resides in New York.

50. Defendant Emily C. Eaton is an employee of The Legal Aid Society (covering New York City), the Recording Secretary of the ALAA, and a member of its Amalgamated Council, which approved the charges filed against plaintiffs.

51. Upon information and belief, Defendant Eaton resides in New York.

52. Defendant Martyna Kaznowski is an employee of the New York Legal Assistance Group, the Sergeant-at-Arms of the ALAA and a member of its Amalgamated Council, which approved the charges filed against plaintiffs.

53. Upon information and belief, Defendant Kaznowski resides in New York.

54. Defendant Jeremy Bunyaner is an employee of CAMBA, Inc., the elected ALAA "Guide," and a member of its Amalgamated Council, which approved the charges filed against plaintiffs.

55. Upon information and belief, Defendant Bunyaner resides in New York.

56. Defendant Ioana Calin is an employee of The Legal Aid Society (covering New York City), a Trustee of the ALAA, and a member of its Amalgamated Council, which approved the charges filed against plaintiffs.

57. Upon information and belief, Defendant Calin resides in New York.

58. Defendant Gillian R. Kress is an employee of The Legal Aid Society, a Trustee of the ALAA, and a member of its Amalgamated Council, which approved the charges filed against plaintiffs.

59. Upon information and belief, Defendant Kress resides in New York.

60. Defendant Puja Paul is an employee of the New York Legal Assistance Group, a.k.a., NYLAG, a Trustee of the ALAA, and a member of its Amalgamated Council, which approved the charges filed against plaintiffs.

61. Upon information and belief, Defendant Paul resides in New York.

62. Defendant Jacqueline Aguilar is an employee of Catholic Migration Services and a member of the ALAA Amalgamated Council, which approved the charges filed against plaintiffs.

63. Upon information and belief, Defendant Aguilar voted in favor of approving the charges against plaintiffs.

64. Upon information and belief, Defendant Aguilar resides in New York.

65. Defendant Babatunde Aremu is an employee of The Bronx Defenders and a member of the ALAA Amalgamated Council, which approved the charges filed against plaintiffs.

66. Upon information and belief, Defendant Babatunde voted in favor of approving the charges against plaintiffs.

67. Upon information and belief, Defendant Babatunde resides in New York.

68. Defendant Casey Bohannon is an employee of the Transgender Legal Defense and Education Fund and a member of the ALAA Amalgamated Council, which approved the charges filed against plaintiffs.

69. Upon information and belief, Defendant Bohannon voted in favor of approving the charges against plaintiffs.

70. Upon information and belief, Defendant Bohannon resides in New York.

71. Defendant Michael Gibbons is an employee of The Legal Aid Society and a member of the ALAA Amalgamated Council, which approved the charges filed against plaintiffs.

72. Upon information and belief, Defendant Gibbons voted in favor of approving the charges against plaintiffs.

73. Upon information and belief, Defendant Gibbons resides in New York.

74. Defendant Alexander Hu is an employee of the New York Legal Assistance Group, a.k.a., NYLAG, and a member of the ALAA Amalgamated Council, which approved the charges filed against plaintiffs.

75. Upon information and belief, Defendant Hu voted in favor of approving the charges against plaintiffs.

76. Upon information and belief, Defendant Hu resides in New York.

77. Defendant Kelsey Laing is an employee of Queens Defenders and a member of the ALAA Amalgamated Council, which approved the charges filed against plaintiffs.

78. Upon information and belief, Defendant Laing voted in favor of approving the charges against plaintiffs.

79. Upon information and belief, Defendant Laing resides in New York.

80. Defendant Martha Menendez is an employee of Justice in Motion and a member of the ALAA Amalgamated Council, which approved the charges filed against plaintiffs.

81. Upon information and belief, Defendant Menendez voted in favor of approving the charges against plaintiffs.

82. Upon information and belief, Defendant Menendez resides in New York.

83. Defendant Hallie Mitnik is an employee of Prisoner's Legal Services and a member of the ALAA Amalgamated Council, which approved the charges filed against plaintiffs.

84. Upon information and belief, Defendant Mitnik voted in favor of approving the charges against plaintiffs.

85. Upon information and belief, Defendant Mitnik resides in New York.

86. Defendant Sean T. Parmenter is an employee of The Legal Aid Society (covering New York City) and a member of the ALAA Amalgamated Council, which approved the charges filed against plaintiffs.

87. Upon information and belief, Defendant Parmenter voted in favor of approving the charges against plaintiffs.

88. Upon information and belief, Defendant Parmenter resides in New York.

89. Defendant Ian Spiridigliozzi is an employee of The Legal Aid Society (covering New York City) and a member of the ALAA Amalgamated Council, which approved the charges filed against plaintiffs.

90. Upon information and belief, Defendant Spiridigliozzi voted in favor of approving the charges against plaintiffs.

91. Upon information and belief, Defendant Spiridigliozzi resides in New York.

92. Defendant Dorothy Summers is an employee of Youth Represent and a member of the ALAA Amalgamated Council, which approved the charges filed against plaintiffs.

93. Upon information and belief, Defendant Summers voted in favor of approving the charges against plaintiffs.

94. Upon information and belief, Defendant Summers resides in New York.

95. Defendant Tanner Wieland is an employee of Asian Americans For Equality and a member of the ALAA Amalgamated Council, which approved the charges filed against plaintiffs.

96. Upon information and belief, Defendant Wieland voted in favor of approving the charges against plaintiffs.

97. Upon information and belief, Defendant Wieland resides in New York.

98. Defendant Tori Roseman is an employee of Volunteers of Legal Service and a member of the ALAA Amalgamated Council, which approved the charges filed against plaintiffs.

99. Upon information and belief, Defendant Roseman voted in favor of approving the charges against plaintiffs.

100. Upon information and belief, Defendant Roseman resides in New York.

101. Defendant Andrew Spence is an employee of Riseboro Community Partnership and a member of the ALAA Amalgamated Council, which approved the charges filed against plaintiffs.

102. Upon information and belief, Defendant Spence voted in favor of approving the charges against plaintiffs.

103. Upon information and belief, Defendant Spence resides in New York.

104. Defendant Colleen Foley is an employee of Legal Aid Society of Orange County and a member of the ALAA Amalgamated Council, which approved the charges filed against plaintiffs.

105. Upon information and belief, Defendant Foley voted in favor of approving the charges against plaintiffs.

106. Upon information and belief, Defendant Foley resides in New York.

107. Defendant Julia Jenkins is an employee of Legal Aid Society (covering New York City) and a member of the ALAA Amalgamated Council, which approved the charges filed against plaintiffs.

108. Upon information and belief, Defendant Jenkins voted in favor of approving the charges against plaintiffs.

109. Upon information and belief, Defendant Jenkins resides in New York.

## FACTS

**The ALAA**

110. The ALAA describes itself on its website as a "union for legal and social service workers, including attorneys, paralegals, social workers, investigators, receptionists, interpreters, advocates, administrative staff, and counselors with chapters at 30 non-profits in the NYC metropolitan area," and a membership of approximately 3,000.

111. The approximately thirty non-profit legal services organizations with collective bargaining agreements with the ALAA together provide most of the publicly funded indigent criminal defense and civil legal services representation in New York City and Nassau and Orange Counties.

112. The ALAA operates subject to the UAW constitution.

113. The ALAA by-laws, in its section on Principles and Purposes, states that one of the purposes is to "protect all members from illegal, improper, arbitrary or discriminatory treatment." *ALAA By-Laws, Art. III*.

114. The ALAA by-laws provide that "[t]he membership is the highest authority within the union. It has authority to determine critical issues such as ratify contracts, strike, return to work, set dues, and elect Officers and Delegates, including Delegates to UAW Constitutional Conventions." *ALAA By-Laws, Art. IV, § 1*.

115. The membership elects eight officers ("UAW Constitutional Officers"): President, Financial Secretary-Treasurer, Recording Secretary, three Trustees, Sergeant-at-Arms, and Guide. *ALAA By-Laws, Art. V, §§ 1-6*

116. Next in authority below the membership is the Joint Council, responsible for, among other things, approving arbitration of grievances and conducting union committee elections, and is composed of the above enumerated UAW Constitutional Officers plus representatives of each of the ALAA chapters proportionate to the size of their membership according to an articulated formula within the by-laws. *ALAA By-Laws, Art. VI.*

117. The eight UAW Constitutional Officers referenced above serve on the Amalgamated Council, which also includes representatives from all the ALAA chapters according to a formula and structure spelled out in the ALAA By-Laws. *ALAA By-Laws, Art. VII, § 2.*

118. The Amalgamated Council is "empowered to make financial decisions, hire, discipline and fire Local Union staff, execute a real estate lease, deed, service or maintenance contract or other long-term agreement, organize, and perform other duties as shall from time to time be assigned to it by the Joint Council or membership." *ALAA By-Laws, Art. VII, § 1.*

119. The eight UAW Constitutional Officers and other defendants comprising the Amalgamated Council who advocated for and/or voted to approve the charges against plaintiffs are Defendants Lisa Ohta (ALAA President), Bret J. Taylor (ALAA Financial Secretary-Treasurer), Emily C. Eaton (ALAA Recording Secretary, Martyna Kaznowski (ALAA Sergeant-at-Arms), Jeremy Bunyaner (ALAA Guide), Gillian R. Kress (ALAA Trustee), Ioana Calin (ALAA Trustee), and Puja Paul (ALAA Trustee), Jacqueline Aguilar, Babatunde Aremu, Casey Bohannon, Michael Gibbons, Alexander Hu, Martha Mendez, Hallie Mitnik, Sean T. Parmenter,

Ian Spiridigliozzi, Dorothy Summers, Tanner Wieland, Tori Roseman, Andrew Spence, Colleen Foley, and Julia Jenkins.

**The Anti-Semitic Campaign Within the ALAA**

120. The campaign against the Jewish state of Israel began immediately after the October 7, 2023, anti-Semitic attack by Hamas that maimed, tortured, burned, raped, kidnapped and murdered nearly 1,500 men, women, children, the elderly, and people with disabilities in southern Israel.

121. Within the few weeks between the October 7, 2023, attack and the scheduled vote on the resolution on November 17, 2023, the campaign came to permeate ALAA's "Gaggle Mail" system, a platform for intra-union communication. The campaign was also well represented in ALAA's public pronouncements and on ALAA affiliated social media platforms.

122. Examples include distributing messages and imagery calling for the destruction of the Jewish state of Israel; repeated exhortations of "From the river to the sea, Palestine will be free," a battle cry expressly employed by Hamas to describe its ultimate goal, achieved through terror and murder, of destroying Israel, killing and/or subjugating its Jewish population, and imposing an Islamic state; and maps of the middle east showing the entirety of the current state of Israel as a Palestinian state. (See e.g., *Hamas Document of General Principles & Policies*, May 2017: "Hamas rejects any alternative to the full and complete liberation of Palestine, from the river to the sea.")

123. Examples include the following emails:

> Additionally, if seeing bombs go off and listening to the racist/Islamaphobic/anti-semitic (because yes, zionism is anti-semitism) wasn't enough, this should matter to tenant defense attorneys everywhere. This is a mass eviction. Eviction is violent. Eviction is deadly. This is exactly what the

Isr*eli government is doing to Palestinians. We have a duty to stand up and call for a Free Palestine (which means an end to isreal.... if I read another non-brown person cite to the partition as proof of two states being a good thing... For. Fucks. Sake.)

* * *

goosestepping outside !
niteka

*Niteka Raina email on Gaggle*, Dec. 18, 2023.



*Dany Greene email on Gaggle*, Dec. 20, 2023 (image from the "ALAA UAW 2325 Labor for Palestine Statement").

124. Other examples include distributing flyers and announcements for rallies prominently featuring the word "flood" alongside ALAA and UAW logos, aligning ALAA and the UAW with the October 7th massacre dubbed by Hamas "Operation Al-Aqsa Flood":



*Yosmin Badie email on Gaggle*, Oct. 25, 2023.



*Michael Letwin email on Gaggle*, Oct. 27, 2023.

125. Still other examples include defending, rationalizing, supporting, and denying the

atrocities committed against Jews by Hamas, a designated Foreign Terrorist Organization with a

long history of violence against Jews, whose charter repeatedly commits the organization to

killing Jews, and which just murdered 1,200 people in Israel, many in utterly barbaric fashion,

while to this day holding over one hundred people hostage, including children and the elderly.

126. Examples of these kinds of anti-Semitic expression include:

> And since you can't avoid spreading misinformation:
>
> 1. You keep talking about "Jewish babies being murdered," and women being raped, you're simply spreading lies and misinformation. There is no proof or substantiation. There are no pictures. Even soldiers on the ground HAVE NOT confirmed this. LA Times retracted what they said. Biden's team had to retract what he said.
> 2. The IOF fired at Hamas FIRST, FROM the crowd of civilians and used those civilians as shields. Attack was not unprovoked and frankly 75 years of death, destruction, blockades and suffering perpetrated BY Israel can warrant this response. All anti-colonial movements do. There are other resistance coalitions on the ground that aren't Hamas who want to free Palestinians.
> 3. Any pictures of destruction and death that you have seen, have been of Palestinians (who ARE NOT just Muslim). Gaza is being incinerated by Israel. IOF soldiers are literally driving over dead Palestinian bodies and mutilating them.

*Saara Ashid officewide email to The Legal Aid Society*, Oct. 13, 2023.

> Hello all, I want to ask everyone: where and when did Hamas specifically call for continued acts of violence against all Jewish people globally?

*Huailing Chen officewide email to The Legal Aid Society*, Oct. 13, 2023.

> Now there are reports that the IOF was also responsible alongside Hamas killing civilians fleeing.. which could hypothetically explain why Satanyahu and his war criminal cabinet would rather carpet bomb Gaza and kill the hostages rather than negotiate for their return, because they know what actually happened.

*Enmanuel Garcia email on Gaggle*, Nov. 20, 2023.

> nO oNe Is DeNoUnCiNg HaMaS. Give it a rest. You are obviously not a stupid person so why are you being so deliberately obtuse? This stopped being about Hamas a long time ago. It is ISRAEL that

is doing the slaughtering. It is ISRAEL that is terrorizing a people.
It is ISRAEL that has said over and over again that they have no
intention of stopping. And our tax dollars are funding it; funding
ISRAEL, not Hamas. So when we call for defunding the IOF that's
what we mean. But you know that. WTF we gotta do with Hamas's
funding?

And as to your concern about the hostages. You mean the ones being
bombed and shot at by ... who is that again? Oh yeah, ISRAEL. Are
those the ones you mean? The same ones whose families are also
begging for a ceasefire? Israel does not care about them beyond
using them as a pretext for the massacre that they are eagerly
enacting. They've become yet another pawn of the Israeli machine
and you seem all too happy to help them with that.

*Martha Elena Menendez email on Gaggle*, Dec. 18, 2023.

127. More examples include fantastical claims that the state of Israel is responsible for social,

economic, or political ills here in the United States, a common modern variation of the anti-

Semitic trope that the Jews are responsible for society's failings:

Additionally, the idea that this fight is unrelated to the work we do
everyday continues to baffle me. Every day people are being
arrested for hate crimes fired from their jobs, displaced, repressed at
protests (by a police force who trains with Israeli security forces on
how to repress movements) - all things deeply tied to our work as
criminal defense, housing, immigration, and employment legal
workers. Supporting Palestine is deeply tied to supporting our
community and our local anti-racist, anti colonial struggles. I reject
such a false binary.

*Michelle McGrath email on Gaggle*, Dec. 17, 2023.

128. Other examples include the accusation that Jewish ALAA members who oppose the

ALAA's anti-Semitism, with *decades* of distinguished service as lawyers serving poor and

marginalized clients, cannot be trusted to represent their clients:

You also say "our mission focuses on legal services to low-income
New Yorkers." I remind you that the New York Lawyer's Code of
Professional Responsibility, Canon 7, says that a lawyer must
zealously represent every client. I question and worry whether LAS

> lawyers who have an allegiance to Israel (some of whom have dual citizenship) can zealously represent our clients who are Palestinian, Muslim, or Arabic. If they support Israel's genocide of the Palestinian people, why would they not have a reason to collude with prosecutors and other adversaries to deprive our clients of justice in the courts?

*Marlen Bodden officewide email to CEO Twyla Carter, Attorney-in-Chief and Chief Executive Officer of The Legal Aid Society*, Nov. 16, 2023.

129. When this patently anti-Semitic charge was challenged by Jewish attorneys in the Gaggle Mail forum, a different attorney defended the slander, writing:

> "It is a legitimate question."

*Monica Dula officewide email to The Legal Aid Society*, Nov. 16, 2023.

130. Ultimately The Legal Aid Society's Attorney-in-Charge of the Criminal Defense Practice had to intervene to direct that "The emails questioning someone's ability to represent clients solely based on identity or lived experience are to immediately stop." *Tina Luongo officewide email to The Legal Aid Society*, Nov. 16, 2023.

131. On a different email thread, another ALAA member wrote:

> Agreeing with Monica and others - how about you stand up for Black and Brown folk in the same way? Because now I'm starting to worry about all of your clients, especially those who could be arrested today. I certainly wouldn't want you representing me

*Saara Ashid officewide email to The Legal Aid Society*, Oct. 13, 2023.

132. Another example is the accusation that "Jewish donations" caused ALAA employers to issue their denunciatory statements:

> "Corporate interests, & whatever Jewish donations you fear losing, does not justify this horrific, narrow, and dehumanizing statement."

*Rachel Pecker officewide email to CEO Twyla Carter, Attorney-in-Chief and Chief Executive Officer of The Legal Aid Society*, Nov. 16, 2023.

133. There were also personal attacks against specific Jewish ALAA members who objected to either the resolution or their employers' response to the October 7th massacre:

> I imagine it is possible to be okay with the concept of Israel as a state while not being okay with the current *GENOCIDE AND ETHNIC CLEANSING* that's going on with the full-throated support of the U.S. governnment.
>
> How is that you ain't got shit to say about roughly 4,000-5,000 innocent children intentionally murdered by the Israeli government, that is committing *GENOCIDE AND ETHNIC CLEANSING* out of a sense of nothing more than vengeance and bloodlust? How are you, as a thinking human being, more concerned with "the right kind of Jewish person" rather than the facts I just presented? How in the entire fuck do you sleep at night?

*Jonathan McCoy email on Gaggle to a Jewish ALAA member who expressed objection to the resolution*, Nov. 10, 2023.

> I am very grateful that people who are accepting of ethnic cleansing, settler-colonialism and frankly, apartheid, can so easily out themselves to everyone, but saddened that people cannot distinguish what is and isn't a religious conflict.

*Saara Ashid officewide email to The Legal Aid Society*, Oct. 10. 2023, (responding to a Jewish ALAA member who expressed objection to the resolution).

> White fragility gonna do white fragility.

*Jonathan McCoy email on Gaggle*, Oct. 27, 2023 (responding to Jewish employees objecting to the posting of anti-Semitic comments on the union Gaggle forum).

134. Other ALAA members relentlessly using the term "Zionist" as an epithet, even though "Eight-in-ten U.S. Jews say caring about Israel is an important or essential part of what being Jewish means to them," according to a 2020 survey of conducted by the Pew Research Center, *Jewish Americans in 2020*, Pew Research Center, May 11, 2021:

> I will never have camaraderie with zionists.

*Yosmin Badie email on Gaggle*, Nov. 16, 2023.

**The Anti-Semitic ALAA Resolution**

135. The anti-Semitic resolution which plaintiffs ultimately sought to block embraced and embodied this anti-Semitic crusade.

136. Preceding it, however, were two statements issued by ALAA chapters in the Bronx and Brooklyn, both of which were extensively shared and lauded in the ALAA's member communication channel.

137. The first was a statement adopted on October 20, 2023, by the ALAA chapter at The Bronx Defenders organization that is breathtaking in its anti-Semitism:

      a.      it ignores the Hamas attack entirely except to (1) question the veracity of the reports of the attack's brutality and how many children were actually beheaded, and (2) reiterate the chapter's support for Hamas' "resistance under occupation";

      b.      it calls for the end of the Jewish state of Israel, which in the current context of the Israel/Hamas war and in the context of the statement itself celebrating Hamas' "resistance under occupation" can only be interpreted as a call for further violence against Jewish Israelis;

      c.      it repeats definitively discredited blood libels accusing Israel of deliberately attacking non-combatants and falsely accuses the Jewish state of genocide;

      d.      it holds the Jewish state to double standards that no state would be expected to endure in defense of its citizens; and

      e.      it fully embraces the anti-Semitic Boycott/Divestment/Sanctions movement to socially, economically, diplomatically, culturally, and academically strangle the Jewish state, its non-Israeli supporters, and often just Jews whether they have anything to do with Israel or not.

138. The second statement was issued by the ALAA chapter at CAMBA, Inc., in Brooklyn, five days later, on October 25, 2023, which was similar in substance and tone to the one issued by the Bronx Defenders.

139. On or about November 13, 2023, ALAA's Recording Secretary emailed the ALAA membership the notice of a Joint Council meeting scheduled for the next day, November 14, 2023, at 6:00 p.m., and included on the agenda a discussion and vote on a proposed resolution, "Resolution Calling for a Ceasefire in Gaza, an End to the Israeli Occupation of Palestine."

140. At the November 14, 2023, evening meeting of the Joint Council, upon a motion made by a delegate from the ALAA's Bronx Defenders chapter, the resolution was sent to the full membership for a vote to be conducted two days later, from 9:00 a.m. until 5:00 p.m., on November 17, 2023, via an online voting platform.

141. The ALAA resolution, like the statements before it, was a model of modern anti-Semitism, amounting to a 1,147-word diatribe against the existence of the Jewish state replete with deceitful blood libels designed to arouse the most ancient anti-Semitic hatreds, wherein the Hamas massacre, the most devastating pogrom against Jews since the Holocaust, merited only seven words of passing mention as "the violent tragedy on October 7, 2023."


**Plaintiffs' Lawsuit to Enjoin the ALAA**

142. On November 16, 2023, plaintiffs were parties to the Lawsuit filed in state court, *Clarke, et al. vs The Association of Legal Aid Attorneys, et al*., Index No. 618764/2023 (Sup. Ct. Nassau Cnty., Nov 16, 2023), claiming that the ALAA resolution violated the ALAA's duty of fair representation and breached plaintiffs' contractual rights. The Lawsuit sought a temporary restraining order ("TRO") halting the vote on the ALAA resolution.

143. Among other things, plaintiffs claimed that the Resolution constituted "extreme, rank antisemitism," *Complaint, ¶ 33*, which would, among other things, make it difficult for them as public defenders to provide adequate representation to Jewish clients who would be rightfully hesitant to trust attorney members of a union who produced "such a venomously antisemitic statement/Resolution." *Complaint, ¶ 40.*

144. Consistent with N.Y. C.P.L.R. § 6301, plaintiffs argued that a TRO was warranted because (1) ultimately their claims were likely to succeed on the merits, (2) the harm to plaintiffs, if the resolution were allowed to pass, would be irreparable, and (3) the balance of the equities favored plaintiffs. *Complaint, ¶¶ 38-48.*

145. The next day, November 17, 2023, in further support of their application for a TRO, plaintiffs submitted evidence – quotes and exhibits -- of retaliatory anti-Semitic discriminatory expressions on the union's Gaggle Mail system in response to the Lawsuit, which plaintiffs argued demonstrated the need for a TRO. *Supplemental Affirmation in Support of Emergency Order to Show Cause,* David A. Smith, Esq., Nov. 17, 2023, *Clarke, et al. vs The Association of Legal Aid Attorneys, et al*., Index No. 618764/2023 (Sup. Ct. Nassau Cnty., Nov 16, 2023) (emphasis in original):

> ¶10. In short order after the filing of the pleadings herein on 16 November 2023, by Gaggle messages sent as early as 3:50 p.m. that same day, the ALAA's "safe space" was used by several members of ALAA to spread further hate and derision, cementing the allegations in Plaintiffs' pleadings as to the fetid, putrid and rank antisemitism spewed by the ALAA's members and leadership. First, one Michael Letwin used the Gaggle app "safe space" to accuse Israel of being on an "extermination" campaign against Palestinians (See, Exhibit B hereto). Invoking Holocaust imagery against Jewish people is a classic, internationally recognized form of antisemitism.

> ¶11. Further demonstrating the status-based nature of the Gaggle app as a "safe space" depending on ALAA members' backgrounds,

one Yasmin Badie, by Gaggle message sent at 4:57 p.m. in response to another member's message expressing a desire for more camaraderie and compassion, stated, verbatim, as follows: "I will never have camaraderie with Zionists." (See, Exhibit C hereto). In all likelihood, Ms. Badie had yet to actually see a copy of the Complaint in this action, as it was pointed out early and prominently therein (See, Complaint at paragraph 5) that one common form of antisemitism is to refer to all people of Jewish descent as "Zionists", and to use the word "Zionist" as pejorative and antisemitic slur.

¶12. Once again, it's clear that the ALAA leadership and many of its members view the Gaggle communications app not as a "safe space" as that term is generally understood and commonly used, but instead a "safe space for virulent antisemitism to be directed at our Jewish members and those who stand in support and 'solidarity' with them."

¶13. As if to underscore the above and remove all doubt as to how the Gaggle communication app is used by ALAA leadership and many members, via Gaggle message sent at 7:14 p.m. the very night that this action was filed containing a screenshot of the link to this case taken from the NYSCEF E-Filing system, one Zachery Nowosadzki spread the following venom for ALAA's Jewish members and those who stand in "solidarity" with them:

"FYI - Looks like the Zionists are running scared and know the resolution will overwhelmingly pass and so have filed an OSC to try to enjoin the vote tomorrow y'all" . . .

¶14. As if to remove all doubt as to the hate-filled nature of the ALAA's "safe space" and the fact that it isn't safe in the slightest for its Jewish members and those who stand in "solidarity" with them, by Gaggle message sent at 9:19 a.m. this morning, 17 November 2023, one Katherine Pecore sent the following message: "From the river to the sea!"

¶15. "From the river to the sea!" happens to be considered by many scholars who have studied the history of antisemitism and hate movements in general to be a call for the genocide of Jewish people and the complete and utter destruction of the nation of Israel.

¶16. It is respectfully asserted that the foregoing additional context, facts and circumstances only serve to underscore the allegations set forth in the Complaint as to the overtly antisemitic nature of the proposed Resolution at issue in the instant matter. **In fact, they couldn't have done a better job of bolstering the credibility of**

**the claims made by Plaintiffs in the Complaint if they were affirmatively, proactively attempting to do so.**

146. In the late afternoon on November 17, 2023, after a conference call conducted by the court which included counsel for plaintiffs and the ALAA, the court issued a TRO blocking completion of the vote on the resolution (which had already commenced that morning) and ordered a further hearing on the matter on November 21, 2023.

147. At the conclusion of the hearing held on November 21, 2023, the court extended the TRO pending further decision by the court, which was promised within thirty days.

148. Thus, the state court twice found enough merit in plaintiffs' claims to impose and maintain a TRO blocking the anti-Semitic ALAA resolution.

149. Before the state court could rule any further, however, the ALAA removed the matter to federal court pursuant to 28 U.S.C. § 1441, owing to the fact that the claim alleging that the ALAA breached its duty of fair representation arising under the National Labor Relations Act could originally have been brought in federal court. *Clarke, et. al. vs The Association of Legal Aid Attorneys, et.ai.,* 2:23-CV-8869 (E.D.N.Y. Dec 1, 2023).

150. While plaintiffs' litigation was still pending and the TRO restraining the ALAA from completing voting on the resolution remained intact, the UAW International Executive Board, on December 1, 2023, adopted a position on the Israel/Hamas war in the form of a petition circulating among some unions in the United States, "The US Labor Movement Calls for Ceasefire in Israel and Palestine."

151. In contrast to the ALAA's vitriolic tirade against the Jewish state and Jewish self-determination, the position adopted by the International Executive Board expressed mourning for "the loss of life in Israel and Palestine [and] solidarity with all workers and our common desire for peace in Palestine and Israel," and articulated three fairly even-handed demands that didn't

ignore, minimize or rationalize the murder of Jews or call for the Jewish state to be extinguished (emphasis in original):

> **The basic rights of people must be restored.** Water, fuel, food, and other humanitarian aid must be allowed into Gaza, power must be restored, and foreign nationals and Palestinians requiring medical care must be allowed out of Gaza.
>
> **The Israeli hostages taken by Hamas must be immediately released.** Both Hamas and Israel must adhere to standards of international law and Geneva Convention rules of warfare concerning the welfare and security of civilians.
>
> **There must be a ceasefire in Gaza.** The cycle of violence must stop so that negotiations for an enduring peace proceed.

152. The federal court held a hearing and decided to dissolve the TRO on December 15, 2023. Despite the relatively moderate position adopted by the International Executive Board on December 1, 2024, once the federal court dissolved plaintiffs' TRO the ALAA membership passed its completely different – and completely incompatible – anti-Semitic resolution on December 19, 2023.

153. Given the passage of the Resolution, plaintiffs then voluntarily dismissed the Lawsuit (by then, in federal court) without prejudice.

154. At no point during the pendency of plaintiffs' Lawsuit did the ALAA assert as a defense to the Lawsuit that plaintiffs improperly failed to exhaust their internal union remedies before commencing the Lawsuit.

**The Retaliatory Expulsion**

155. In response to plaintiffs exercising their legal rights to seek protection from the anti-Semitic resolution and the anti-Semitic firestorm surrounding it, plaintiffs were subjected to a

barrage of unlawful retaliatory conduct, culminating in upholding charges and setting a hearing to expel them from the ALAA entirely.

156. An example of the retaliatory conduct was, on or about the day when the TRO was granted, the ALAA Gaggle thread was deluged with attacks on plaintiffs, including the menacing accusation branding them as "snitches":

> Even if someone agreed with them on the substantive, political issue. This is disgusting, anti-democratic, anti comradarie, **snitching** behavior.
>
> Sad!!!!

*David Tobias email on Gaggle*, Nov. 17, 2023 (emphasis added).

> Careful, **snitches** are in this thread, they might **snitch** on you and air strike your home with your family in it.

*Enmanuel Garcia email on Gaggle*, Nov. 17, 2023 (emphasis added).

> If you are a **snitch** please do us a favor and kill yourself.

*Reid Murdoch email on Gaggle,* Nov. 17, 2023 (emphasis added).

> also whoever did **snitch** — a genocide is happening and your first instinct is to spread screenshots of a union listserve. what do you gain from that? are you that desperate for validation from someone that you decided to anonymously broadcast internal communications between fellow workers? wrestle with that and reflect on how pathetic your life must be. don't be a coward. if you have an issue with what's being said, own it (as other colleagues have — to my inbox's despair).
>
> from the river to the sea.

*Eleanor Khiralla email on Gaggle*, Nov. 17, 2023

157. Other comments were similarly filled with retaliatory animus:

> To all the losers who did this, just know this - you will always be a loser. And if you want to cry about being called a loser, I am sorry you do not like to exist in reality, because factually, you are a loser. You lost on Tuesday. I am sure you lost this vote. And Palestine will

be free from this apartheid nation state that you all seem to love more deeply than your colleagues and your union.

*Sophia Gurule email on Gaggle*, Nov. 17, 2023.

It is disgusting, embarrassing behavior by these plaintiffs and this judge. Shame.

*Amy Armstrong email on Gaggle*, Nov. 17, 2023.

Since it will never come from those responsible for this shameful action, I apologize to all our members of Palestinian descent, those who have empathically fought along side our marginalized members and clients, and anyone who otherwise has had their humanity reduced over the last month to whataboutisms, all lives matterification, and this culmination in a fearful, childish restraining order.

Your humanity is far more than these ridiculous stunts and I hope you know that.

Palestine will be free, this genocide will end, and shame and regret will forever fill the hearts and minds of those who have chosen to be an impediment to that within this union.

*Michael Gradess email on Gaggle*, Nov. 17, 2023.

Like other people mentioned, whoever leaked our emails and also filed this motion to stifle our democratic vote, y'all pathetic losers and definitely have no business with advocates. Y'all are the lamest of the lame, and hope y'all can never live with yourselves because again because y'all really dictators in training lol. We will never be silenced!

*Enmanuel Garcia email on Gaggle*, Nov. 17, 2023.

… the Zionist ghouls who filed this case in the first place are on this listserv and are surely planning to use any information gleaned in service of their despicable assault on the first amendment and labor rights. In fact, I expect that those miserable creeps are reading these very words.

*Andrew Reisman email on Gaggle*, Nov. 20, 2023.

158. It should be no surprise, then, that the retaliatory expulsion effort at issue here was launched with a brazen disregard for plaintiffs' rights to engage in protected activity, and a clear and unambiguous retaliatory purpose:

Good afternoon all:

We'd like to update everyone regarding the suit being brought against ALAA. A few of us have filed Article 31 union charges against the deeply anti-democratic "members" who brought the 11/16/23 suit. Article 31 charges were filed days after the TRO was initially issued, and we believe it is important for everyone to know that members are fighting back to defend ourselves and our union. The 11/16/23 suit has incorporated emails from this list including personal names and contact information (which is the definition of doxing), and makes repugnant accusations against both our fellow members and our union as a whole. Simply put, being pro-Palestine is not antisemitic. Full stop.

We must defend ourselves and fight these anti-democratic measures, just as we must fight the union busting from management that this bilious suit only helps to further entrench. We hope that the AC will vote on the propriety of our Article 31 charges tonight, which would allow the trial process to move forward, but regardless of when that happens, please know that you are not alone in your outrage, and we will not be cowed by fear of frivolous legal actions.

Until the Article 31 charges proceed, those of us bringing them are refraining from commenting on the specifics of it on an unsafe listserv.

In solidarity and rage,

Jerry, Eva, Candace, and Dani

PS: Hello to any judges for whom this becomes an exhibit.

*Jerry Koch email on Gaggle*, Dec. 12, 2023.

**ALAA's Charges to Expel Plaintiffs**

159. As indicated in the email above, these charges were filed by Defendants Danielle Welch, Gerald Koch, Eva Stevenson, and Candace Graff days after the TRO was issued, specifically, on November 21, 2023.

160. The charges allege that, "by seeking judicial injunctive relief to interrupt a democratic process on an internal union matter and, in the process, baselessly and publicly smearing their fellow union siblings as antisemitic, these individuals violated core tenants of our union's mission and behaved in ways that demand official consequences."

161. The charges are purportedly founded on four particular accusations ("There are at least four separate ways in which the above members have conducted themselves in ways unbecoming of a union member"):

(1) plaintiffs "us[ed] the courts to contravene internal union decisions";

(2) the Lawsuit "has the obvious and intentional effect of chilling free speech";

(3) the Lawsuit papers (a) included other ALAA members' personal information (names and email addresses) in the Gaggle emails cited therein, and (b) "unfairly characterizes the shared emails as espousing antisemitic views," and

(4) plaintiffs failed to exhaust the union's internal remedies before commencing a Lawsuit.

162. Upon information and belief, sometime between the filing of the charges on November 21, 2023, and the vote by the Amalgamated Council on January 2, 2024, the ALAA Constitutional Officers, defendants Lisa Ohta, Bret J. Taylor, Emily C. Eaton, Martyna Kaznowski, Jeremy Bunyaner, Ioana Calin, Gillian R. Kress, and Puja Paul, approved forwarding the charges to the Amalgamated Council for approval.

163. On January 2, 2024, the ALAA Amalgamated Council "found that they are proper and a trial will be held."

164. Upon information and belief, defendants Babatunde Aremu, Casey Bohannon, Michael Gibbons, Alexander Hu, Kelsey Laing, Martha Menendez, Hallie Mitnik, Sean T. Parmenter, Ian Spiridigliozzi, Dorothy Summers, Tanner Wieland, and Tori Roseman are members of the Amalgamated Council.

165. Each voted to approve the charges against plaintiffs.

166. Following the Amalgamated Council's approval of the charges, direction that a trial should be held, and service of the charges on plaintiffs, the Joint Council scheduled a meeting for January 23, 2024, whereat the process of selecting a Trial Committee (the jury) to hear the charges against plaintiffs would begin.

167. However, on January 22, 2024, pursuant to the UAW constitution, plaintiffs filed an appeal with the UAW International Executive Board challenging the validity of the charges based substantially on the grounds stated in this complaint.

168. On June 26, 2024, in furtherance of its retaliation, the UAW International Executive Board affirmed that the charges were properly submitted and set a trial to determine the guilt or innocence of the plaintiffs.

169. The chilling of plaintiffs' full exercise of their anti-discrimination union rights has continued to the present day.

170. The pending proceeding hanging over plaintiffs' heads has had the effect of chilling plaintiffs' engaging in protected activity in opposing the ALAA's continued discriminatory anti-Semitic environment.

171. Plaintiffs have limited their involvement in ALAA communications and activities, and have been browbeaten, threatened, and/or harassed into rationing the exercise of their rights to participate in the ALAA's democratic processes and speak their mind on matters before the ALAA for fear of further jeopardizing their expulsion.

172. For example, on May 7, 2024, those opposed to the ALAA's anti-Semitic campaign proposed a resolution to the ALAA Joint Council denouncing Hamas and calling for Hamas to release the hostages still in its custody:

> Resolution Calling for the Release of Hostages
>
> Whereas, on October 7, 2023, Hamas, an internationally designated terrorist organization, whose charter calls for the destruction of the State of Israel, abducted 252 people from Israel, including children, women and elderly people.
> Whereas, following a temporary ceasefire in November, 2023, 105 civilians were released from captivity.
>
> To date, approximately 130 hostages, including 8 Americans, have not been released, with at least 34 hostages presumed deceased.
>
> Whereas, Common Article 3 of the Geneva Conventions prohibits the taking of hostages. Further, under the Statute of the International Criminal Court, the taking of hostages constitutes a war crime in both international and non-international armed conflicts. Hamas is in violation of the Geneva Conventions and the International Criminal Court. Hamas has committed war crimes by the abduction of hostages.
>
> Whereas Hamas has continued to refuse to release the hostages without conditions, we forcefully
>
> 1) Condemn Hamas for its brutal attack on Israel;
> 2) Condemn Hamas for taking hostages;
> 3) Condemn Hamas for refusing to unconditionally release the hostages.
>
> Whereas, be it resolved, the rank and file members of UAW ALAA 2325 call on the safe and immediate release of all hostages taken by Hamas.

173. Plaintiffs limited their involvement in advocating for the passage of this resolution.

174. Incredibly, the ALAA Joint Council *voted against* the resolution calling on Hamas to release the hostages.

175. Moreover, defendants continue to do everything in their power to maintain these blatantly illegal expulsion proceedings as a means of diminishing plaintiffs' ability to exercise their protected anti-discrimination rights and engage in protected activities.

176. For example, the ALAA and defendant OHTA claimed, in their March 25, 2024, response to a congressional subpoena issued by the House Committee on Education and Labor dated March 8, 2024, that "there exist no documents responsive to" the subpoena's request for "documents and communications referring or related to any formal disciplinary action taken by Local 2325 against any member who opposed the consideration or adoption of the Resolution," despite the written charges filed against plaintiffs, the minutes of the Amalgamated Council meeting where the charges were approved, substantial correspondence concerning the charges on the ALAA's Gaggle email thread and what has to be substantial email correspondence amongst the ALAA's elected officers and Amalgamated Council members concerning the charges, and plaintiffs' written appeal to the UAW International Board and, upon information and belief, the ALAA's response.

177. Defendants further retaliated against plaintiffs when the ALAA intentionally excluded them from receiving notice regarding a proposed resolution and a Joint Council Meeting.

178.  Specifically, on or about September 10, 2024, the ALAA introduced a resolution titled "Solidarity With Workers In a Better NYLAG and UAW Local 4811 Organizing for Palestinian Liberation and Against Management Repression" at a Joint Council Meeting.

179. To date, plaintiffs are active members of the ALAA and continue to pay their dues.[1]

180. As dues paying members of the ALAA, plaintiffs are entitled to advanced notice via email regarding Joint Council meetings and proposed resolutions to participating in the voting process.

181. However, the ALAA intentionally failed to provide plaintiffs with requisite notice of the proposed resolution, or at minimum, notice of the Joint Council Meeting, thereby interfering with plaintiffs right to participate in the decision-making process and further chilling their right to engage in protected activity.

## COUNT I
### *(Retaliation and Infringement of Plaintiffs' "Right to Sue" in Violation of the LMRDA, 29 U.S.C. §§ 411(a)(4) and 412, Against All Defendants)*

182. Plaintiffs repeat and reallege the allegations of the preceding paragraphs as though fully stated herein.

183. The ALAA is a labor organization as defined by the LMRDA.

184. Plaintiffs and the individual defendants are all members of the ALAA.

185. Plaintiffs' Lawsuit claimed that their rights as union members were violated due to the anti-Semitic resolution and the campaign of anti-Semitic hatred, harassment, and retaliation surrounding it, and that this discrimination violated the ALAA's duty of fair representation to plaintiffs and breached its contract with plaintiffs.

---

[1] The ALAA environment became increasingly characterized by retaliatory behavior and a pervasive atmosphere of hostility. As a result, Plaintiff Altman will be resigning from the Nassau County Legal Aid Society to safeguard his professional integrity and well-being.

186. Plaintiffs had a good faith, reasonable belief that the aforesaid anti-Semitic expressions, conduct, and harassment which plaintiffs opposed in the Lawsuit are practices made unlawful by the LMRDA.

187. Expressly in retaliation against plaintiffs for filing the Lawsuit, defendants Danielle Welch, Gerald Koch, Eva Stevenson, and Candace Graff filed charges against plaintiffs to seek their expulsion from the union.

188. Upon information and belief defendants ALAA Constitutional Officers Lisa Ohta, Bret J. Taylor, Emily C. Eaton, Martyna Kaznowski, Jeremy Bunyaner, Gillian R. Kress, Ioana Calin, and Puja Paul approved submitting the charges to the Amalgamated Council for consideration and participated in the Amalgamated Council's deliberation of the charges against plaintiffs.

189. Upon information and belief, defendants Amalgamated Council members Jacqueline Aguilar, Babatunde Aremu, Casey Bohannon, Michael Gibbons, Alexander Hu, Kelsey Laing, Martha Menendez, Hallie Mitnik, Sean T. Parmenter, Ian Spiridigliozzi, Dorothy Summers, Tanner Wieland, Tori Roseman, Andrew Spence, Colleen Foley, and Julia Jenkins voted to approve the charges.

190. The accusation in the charges against plaintiffs is that "by seeking judicial injunctive relief to interrupt a democratic process on an internal union matter and, in the process, baselessly and publicly smearing their fellow union siblings as antisemitic, these individuals violated core tenants of our union's mission and behaved in ways that demand official consequences."

191. The charges and disciplinary proceeding seeking plaintiffs' expulsion are in express retaliation for plaintiffs' lawsuit opposing the ALAA's discriminatory resolution and alleging that the ALAA violated plaintiffs' rights.

192. The charges and disciplinary proceeding are an infringement of plaintiffs' protection of the right to sue under the LMRDA, 29 U.S.C. § 411(a)(4), in violation of the LMRDA, 29 U.S.C. § 412, on the part of all the Defendants.

193. As a result of the foregoing, plaintiffs have suffered, and continue to suffer, substantial damages in an amount to be determined at trial.

194. Plaintiffs are also entitled to appropriate injunctive relief under the LMRDA permanently enjoining any effort to expel or otherwise discipline plaintiffs for having commenced the Lawsuit.

195. The instant action confers a substantial benefit on the union's general membership and plaintiffs are entitled to attorneys' fees and costs.

## COUNT II
### *(Retaliation and Prohibited Discipline in Violation of Plaintiffs' "Right to Sue"*
### *Provided in the LMRDA, 29 U.S.C. §§ 411(a)(4) and 529, Against All Defendants)*

196. Plaintiffs repeat and reallege the allegations of the preceding paragraphs as though fully stated herein.

197. The ALAA is a labor organization as defined by the LMRDA.

198. Plaintiffs and the individual defendants are all members of the ALAA.

199. Plaintiffs' Lawsuit claimed that their rights as union members were violated due to the anti-Semitic resolution and the campaign of anti-Semitic hatred, harassment, and retaliation surrounding it, and that this discrimination violated the ALAA's duty of fair representation to plaintiffs and breached its contract with plaintiffs.

200. Plaintiffs had a good faith, reasonable belief that the aforesaid anti-Semitic expressions, conduct, and harassment which plaintiffs opposed in the Lawsuit are practices made unlawful by the LMRDA.

201. Expressly in retaliation against plaintiffs for filing the Lawsuit, defendants Danielle Welch, Gerald Koch, Eva Stevenson, and Candace Graff filed charges against plaintiffs to seek their expulsion from the union.

202. Upon information and belief defendants ALAA Constitutional Officers Lisa Ohta, Bret J. Taylor, Emily C. Eaton, Martyna Kaznowski, Jeremy Bunyaner, Gillian R. Kress, Ioana Calin, and Puja Paul approved submitting the charges to the Amalgamated Council for consideration and participated in the Amalgamated Council's deliberation of the charges against plaintiffs.

203. Upon information and belief, defendants Amalgamated Council members Jacqueline Aguilar, Babatunde Aremu, Casey Bohannon, Michael Gibbons, Alexander Hu, Kelsey Laing, Martha Menendez, Hallie Mitnik, Sean T. Parmenter, Ian Spiridigliozzi, Dorothy Summers, Tanner Wieland, Tori Roseman, Andrew Spence, Colleen Foley, and Julia Jenkins voted to approve the charges.

204. The accusation in the charges against plaintiffs is that "by seeking judicial injunctive relief to interrupt a democratic process on an internal union matter and, in the process, baselessly and publicly smearing their fellow union siblings as antisemitic, these individuals violated core tenants of our union's mission and behaved in ways that demand official consequences."

205. The charges and disciplinary proceeding seeking plaintiffs' expulsion are in express retaliation for plaintiffs' lawsuit opposing the ALAA's discriminatory resolution and alleging that the ALAA violated plaintiffs' rights.

206. The charges and disciplinary proceeding are a form of discipline against plaintiffs for exercising their "right to sue" under the LMRDA, 29 U.S.C. § 411(a)(4), in violation of the LMRDA, 29 U.S.C. § 529, on the part of all the Defendants.

207. The charges and disciplinary proceedings were brought and are being conducted in bad faith.

208. As a result of the foregoing, plaintiffs have suffered, and continue to suffer, substantial damages in an amount to be determined at trial.

209. Plaintiffs are also entitled to appropriate injunctive relief under the LMRDA permanently enjoining any effort to expel or otherwise discipline plaintiffs for having commenced the Lawsuit.

210. The instant action confers a substantial benefit on the union's general membership and plaintiffs are entitled to attorneys' fees and costs.

### COUNT III
***(Retaliation and Infringement of Plaintiffs' "Freedom of Expression" in Violation of the LMRDA, 29 U.S.C. §§ 411(a)(2) and 412, Against All Defendants)***

211. Plaintiffs repeat and reallege the allegations of the preceding paragraphs as though fully stated herein.

212. The ALAA is a labor organization as defined by the LMRDA.

213. Plaintiffs and the individual defendants are all members of the ALAA.

214. Plaintiffs' Lawsuit claimed that their rights as union members were violated due to the anti-Semitic resolution and the campaign of anti-Semitic hatred, harassment, and retaliation surrounding it, and that this discrimination violated the ALAA's duty of fair representation to plaintiffs and breached its contract with plaintiffs.

215. Plaintiffs had a good faith, reasonable belief that the aforesaid anti-Semitic expressions, conduct, and harassment which plaintiffs opposed in the Lawsuit are practices made unlawful by the LMRDA.

216. Expressly in retaliation against plaintiffs for filing the Lawsuit, defendants Danielle Welch, Gerald Koch, Eva Stevenson, and Candace Graff filed charges against plaintiffs to seek their expulsion from the union.

217. Upon information and belief defendants ALAA Constitutional Officers Lisa Ohta, Bret J. Taylor, Emily C. Eaton, Martyna Kaznowski, Jeremy Bunyaner, Gillian R. Kress, Ioana Calin, and Puja Paul approved submitting the charges to the Amalgamated Council for its consideration and participated in the Amalgamated Council's deliberation of the charges against plaintiffs.

218. Upon information and belief, defendants Amalgamated Council members Jacqueline Aguilar, Babatunde Aremu, Casey Bohannon, Michael Gibbons, Alexander Hu, Kelsey Laing, Martha Menendez, Hallie Mitnik, Sean T. Parmenter, Ian Spiridigliozzi, Dorothy Summers, Tanner Wieland, Tori Roseman, Andrew Spence, Colleen Foley, and Julia Jenkins voted to approve the charges.

219. The accusation in the charges against plaintiffs is that "by seeking judicial injunctive relief to interrupt a democratic process on an internal union matter and, in the process, baselessly and publicly smearing their fellow union siblings as antisemitic, these individuals violated core tenants of our union's mission and behaved in ways that demand official consequences."

220. The charges and disciplinary proceeding seeking plaintiffs' expulsion are in express retaliation for plaintiffs' lawsuit opposing the ALAA's discriminatory resolution and alleging that the ALAA violated plaintiffs' rights.

221. The charges and disciplinary proceeding are an infringement of plaintiffs' "freedom of expression" under the LMRDA, 29 U.S.C. § 411(a)(2), in violation of the LMRDA, 29 U.S.C. § 412, on the part of all the Defendants.

222. As a result of the foregoing, plaintiffs have suffered, and continue to suffer, substantial damages in an amount to be determined at trial.

223. Plaintiffs are also entitled to appropriate injunctive relief under the LMRDA permanently enjoining any effort to expel or otherwise discipline plaintiffs for having commenced the Lawsuit.

224. The instant action confers a substantial benefit on the union's general membership and plaintiffs are entitled to attorneys' fees and costs.

### COUNT IV
*(Retaliation and Prohibited Discipline in Violation of Plaintiffs' "Freedom of Expression" Provided in the LMRDA, 29 U.S.C. §§ 411(a)(2) and 529, Against All Defendants)*

225. Plaintiffs repeat and reallege the allegations of the preceding paragraphs as though fully stated herein.

226. The ALAA is a labor organization as defined by the LMRDA.

227. Plaintiffs and the individual defendants are all members of the ALAA.

228. Plaintiffs' Lawsuit claimed that their rights as union members were violated due to the anti-Semitic resolution and the campaign of anti-Semitic hatred, harassment, and retaliation surrounding it, and that this discrimination violated the ALAA's duty of fair representation to plaintiffs and breached its contract with plaintiffs.

229. Plaintiffs had a good faith, reasonable belief that the aforesaid anti-Semitic expressions, conduct, and harassment which plaintiffs opposed in the Lawsuit are practices made unlawful by the LMRDA.

230. Expressly in retaliation against plaintiffs for filing the Lawsuit, defendants Danielle Welch, Gerald Koch, Eva Stevenson, and Candace Graff filed charges against plaintiffs to seek their expulsion from the union.

231. Upon information and belief defendants ALAA Constitutional Officers Lisa Ohta, Bret J. Taylor, Emily C. Eaton, Martyna Kaznowski, Jeremy Bunyaner, Gillian R. Kress, Ioana Calin, and Puja Paul approved submitting the charges to the Amalgamated Council for consideration and participated in the Amalgamated Council's deliberation of the charges against plaintiffs.

232. Upon information and belief, defendants Amalgamated Council members Jacqueline Aguilar, Babatunde Aremu, Casey Bohannon, Michael Gibbons, Alexander Hu, Kelsey Laing, Martha Menendez, Hallie Mitnik, Sean T. Parmenter, Ian Spiridigliozzi, Dorothy Summers, Tanner Wieland, Tori Roseman, Andrew Spence, Colleen Foley, and Julia Jenkins voted to approve the charges.

233. The accusation in the charges against plaintiffs is that "by seeking judicial injunctive relief to interrupt a democratic process on an internal union matter and, in the process, baselessly and publicly smearing their fellow union siblings as antisemitic, these individuals violated core tenants of our union's mission and behaved in ways that demand official consequences."

234. The charges and disciplinary proceeding seeking plaintiffs' expulsion are in express retaliation for plaintiffs' lawsuit opposing the ALAA's discriminatory resolution and alleging that the ALAA violated plaintiffs' rights.

235. The charges and disciplinary proceeding are a form of discipline against plaintiffs for exercising their "freedom of expression" under the LMRDA, 29 U.S.C. § 411(a)(2), in violation of the LMRDA, 29 U.S.C. § 529, on the part of all the Defendants.

236. As a result of the foregoing, plaintiffs have suffered, and continue to suffer, substantial damages in an amount to be determined at trial.

237. Plaintiffs are also entitled to appropriate injunctive relief under the LMRDA permanently enjoining any effort to expel or otherwise discipline plaintiffs for having commenced the Lawsuit.

238. The instant action confers a substantial benefit on the union's general membership and plaintiffs are entitled to attorneys' fees and costs.

### COUNT V
*(Retaliation in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-3(a), Against the ALAA*

239. Plaintiffs repeat and reallege the allegations of the preceding paragraphs as though fully stated herein.

240. The ALAA is a labor organization as defined by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(d).

241. Plaintiffs and the individual defendants are all members of the ALAA.

242. Plaintiffs' Lawsuit claimed in good faith that their rights as union members were violated due to the anti-Semitic resolution and the campaign of anti-Semitic hatred, harassment, and retaliation surrounding it, and that this discrimination violated the ALAA's duty of fair representation to plaintiffs and breached its contract with plaintiffs.

243. The aforesaid anti-Semitic expressions, conduct, and harassment which plaintiffs opposed in the Lawsuit, and the resolution itself, are practices made unlawful by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(c).

244. Expressly in retaliation against plaintiffs for filing the Lawsuit which opposed practices made unlawful by Title VII, defendants Danielle Welch, Gerald Koch, Eva Stevenson, and Candace Graff filed charges against plaintiffs seeking their expulsion from the union.

245. Upon information and belief, defendants ALAA Constitutional Officers Lisa Ohta, Bret J. Taylor, Emily C. Eaton, Martyna Kaznowski, Jeremy Brunyaner, Gillian R. Kress, Iona Calin, and Puja Paul approved submitting the charges to the Amalgamated Council for consideration and participated in the Amalgamated Council's deliberation of the charges against plaintiffs.

246. Upon information and belief, defendants Amalgamated Council members Jacqueline Aguilar, Babatunde Aremu, Casey Bohannon, Michael Gibbons, Alexander Hu, Kelsey Laing, Martha Menendez, Hallie Mitnik, Sean T. Parmenter, Ian Spiridigliozzi, Dorothy Summers, Tanner Wieland, Tori Roseman, Andrew Spence, Colleen Foley, and Julia Jenkins voted to approve the charges.

247. The charges and expulsion proceedings against plaintiffs constitute a materially adverse action which plaintiffs reasonably consider to be a deterrent from exercising their rights, and other ALAA members would as well.

248. Subjecting plaintiffs to union charges and disciplinary proceedings for opposing practices made unlawful by Title VII is a plain violation of Title VII's anti-retaliation provision 42 U.S.C. §2000e-3(a), on the part of the ALAA.

249. As a result of the foregoing, plaintiffs have suffered, and continue to suffer, substantial damages in an amount to be determined at trial.

250. Plaintiffs are also entitled to appropriate injunctive relief under Title VII permanently enjoining any effort to expel or otherwise retaliate against plaintiffs for having opposed practices made unlawful by Title VII.

251. Plaintiffs are entitled to attorneys' fees and costs pursuant to 42 U.S.C. §2000e-5(k).

## COUNT VI
### (Entity Retaliation in Violation of the New York State Human Rights Law, N.Y. Exec. Law § 296(1)(e), Against the ALAA)

252. Plaintiffs repeat and reallege the allegations of the preceding paragraphs as though fully stated herein.

253. The ALAA is a labor organization as defined by the New York State Human Rights Law ("NYS-HRL"), N.Y. Exec. Law §292(3).

254. Plaintiffs and the individual defendants are all members of the ALAA.

255. Plaintiffs' Lawsuit claimed that their rights as union members were violated due to the anti-Semitic resolution and the campaign of anti-Semitic hatred, harassment, and retaliation surrounding it, and that this discrimination violated the ALAA's duty of fair representation to plaintiffs and breached its contract with plaintiffs.

256. Plaintiffs had a good faith, reasonable belief that the aforesaid anti-Semitic expressions, conduct, and harassment which plaintiffs opposed in the Lawsuit are practices also made unlawful by the NYS-HRL, N.Y Exec Law § 296(1)(c).

257. Expressly in retaliation against plaintiffs for filing the Lawsuit which opposed practices that are also made unlawful by the NYS-HRL, defendants Danielle Welch, Gerald Koch, Eva Stevenson, and Candace Graff filed charges against plaintiffs instituting proceedings for their expulsion from the union.

258. Upon information and belief defendants ALAA Constitutional Officers Lisa Ohta, Bret J. Taylor, Emily C. Eaton, Martyna Kaznowski, Jeremy Bunyaner, Gillian R. Kress, Ioana Calin, and Puja Paul approved submitting the charges to the Amalgamated Council for consideration and participated in the Amalgamated Council's deliberation of the charges against plaintiffs.

259. Upon information and belief, defendants Amalgamated Council members Jacqueline Aguilar, Babatunde Aremu, Casey Bohannon, Michael Gibbons, Alexander Hu, Kelsey Laing, Martha Menendez, Hallie Mitnik, Sean T. Parmenter, Ian Spiridigliozzi, Dorothy Summers, Tanner Wieland, Tori Roseman, Andrew Spence, Colleen Foley, and Julia Jenkins voted to approve the charges.

260. The charges and expulsion proceedings against plaintiffs constitute an adverse action, which plaintiffs reasonably consider to be a deterrent from exercising their rights, and other ALAA members would as well.

261. Subjecting plaintiffs to union discipline for opposing practices made unlawful by the NYS-HRL is a plain violation of the NYS-HRL's organizational anti-retaliation provision, N.Y Exec Law § 296(1)(e)), on the part of the ALAA.

262. As a result of the foregoing, plaintiffs have suffered, and continue to suffer, substantial damages, including, but not limited to emotional distress damages, statutory penalties, and punitive damages, in an amount to be determined at trial.

263. Plaintiffs are also entitled to appropriate injunctive relief under the NYS-HRL permanently enjoining any effort to expel or otherwise retaliate against plaintiffs for having opposed practices made unlawful by the NYS-HRL.

264. Plaintiffs are entitled to attorneys' fees and costs and expert fees pursuant to N.Y. Exec. Law § 297(10).

## COUNT VII

***(Individual Retaliation in Violation of the New York State Human Rights Law,
N.Y. Exec. Law § 296(6), Against All Defendants Except the ALAA)***

265. Plaintiffs repeat and reallege the allegations of the preceding paragraphs as though fully stated herein.

266. The ALAA is a labor organization as defined by the New York State Human Rights Law ("NYS-HRL"), N.Y. Exec. Law §292(3).

267. Plaintiffs and the individual defendants are all members of the ALAA.

268. Plaintiffs' Lawsuit claimed that their rights as union members were violated due to the anti-Semitic resolution and the campaign of anti-Semitic hatred, harassment, and retaliation surrounding it, and that this discrimination violated the ALAA's duty of fair representation to plaintiffs and breached its contract with plaintiffs.

269. Plaintiffs had a good faith, reasonable belief that the aforesaid anti-Semitic expressions, conduct, and harassment which plaintiffs opposed in the Lawsuit are practices also made unlawful by the NYS-HRL, N.Y Exec Law §296(1)(c).

270. Expressly in retaliation against plaintiffs for filing the Lawsuit which opposed practices that are also made unlawful by the NYS-HRL, defendants Danielle Welch, Gerald Koch, Eva Stevenson, and Candace Graff filed charges against plaintiffs instituting proceedings for their expulsion from the union.

271. Upon information and belief defendants ALAA Constitutional Officers Lisa Ohta, Bret J. Taylor, Emily C. Eaton, Martyna Kaznowski, Jeremy Bunyaner, Gillian R. Kress, Ioana Calin, and Puja Paul approved submitting the charges to the Amalgamated Council for consideration and participated in the Amalgamated Council's deliberation of the charges against plaintiffs.

272. Upon information and belief, defendants Amalgamated Council members Jacqueline Aguilar, Babatunde Aremu, Casey Bohannon, Michael Gibbons, Alexander Hu, Kelsey Laing, Martha Menendez, Hallie Mitnik, Sean T. Parmenter, Ian Spiridigliozzi, Dorothy Summers, Tanner Wieland, Tori Roseman, Andrew Spence, Colleen Foley, and Julia Jenkins voted to approve the charges.

273. The charges and expulsion proceedings against plaintiffs constitute an adverse action which plaintiffs reasonably consider to be a deterrent to exercising their rights, and other ALAA members would as well.

274. Subjecting plaintiffs to charges and union discipline for opposing practices made unlawful by the NYS-HRL is a plain violation of the NYS-HRL's individual anti-retaliation provision, N.Y Exec Law § 296(6), on the part of all the individual defendants.

275. As a result of the foregoing, plaintiffs have suffered, and continue to suffer, substantial damages, including, but not limited to emotional distress damages, statutory penalties, and punitive damages, in an amount to be determined at trial.

276. Plaintiffs are also entitled to appropriate injunctive relief under the NYS-HRL permanently enjoining any effort to expel or otherwise retaliate against plaintiffs for having opposed practices made unlawful by the NYS-HRL.

277. Plaintiffs are entitled to attorneys' fees and costs and expert fees pursuant to N.Y. Exec. Law § 297(10).

**COUNT VIII**
***(Retaliation in Violation of the New York City Human Rights Law,***
***N.Y.C. Admin. Code § 8-107(7)), Against All Defendants)***

278. Plaintiffs repeat and reallege the allegations of the preceding paragraphs as though fully stated herein.

279. The ALAA is a labor organization as defined by the New York City Human Rights Law ("NYC-HRL"), N.Y.C. Admin. Code § 8-102.

280. Plaintiffs and the individual defendants are all members of the ALAA.

281. Plaintiffs' Lawsuit claimed that their rights as union members were violated due to the anti-Semitic resolution and the campaign of anti-Semitic hatred, harassment, and retaliation surrounding it, and that this discrimination violated the ALAA's duty of fair representation to plaintiffs and breached its contract with plaintiffs.

282. Plaintiffs had a good faith, reasonable belief that the aforesaid anti-Semitic expressions, conduct, and harassment which plaintiffs opposed in the Lawsuit are practices made unlawful by the NYC-HRL, N.Y.C. Admin. Code § 8-107(1)(c).

283. Expressly in retaliation against plaintiffs for filing the Lawsuit which opposed practices that are also made unlawful by the NYC-HRL, defendants Danielle Welch, Gerald Koch, Eva Stevenson, and Candace Graff filed charges against plaintiffs instituting proceedings for their expulsion from the union.

284. Upon information and belief defendants ALAA Constitutional Officers Lisa Ohta, Bret J. Taylor, Emily C. Eaton, Martyna Kaznowski, Jeremy Bunyaner, Gillian R. Kress, Ioana Calin, and Puja Paul approved submitting the charges to the Amalgamated Council for consideration and participated in the Amalgamated Council's deliberation of the charges against plaintiffs.

285. Upon information and belief, defendants Amalgamated Council members Jacqueline Aguilar, Babatunde Aremu, Casey Bohannon, Michael Gibbons, Alexander Hu, Kelsey Laing, Martha Menendez, Hallie Mitnik, Sean T. Parmenter, Ian Spiridigliozzi, Dorothy Summers, Tanner Wieland, Tori Roseman, Andrew Spence, Colleen Foley, and Julia Jenkins voted to approve the charges.

286. The charges and expulsion proceedings against plaintiffs are reasonably likely to deter a person from engaging in protected activity.

287. Subjecting plaintiffs to union discipline for opposing practices also made unlawful by the NYC-HRL is a plain violation of the NYC-HRL's individual anti-retaliation provision, N.Y.C. Admin. Code § 8-107(7), including the express prohibition against retaliation against plaintiff because they "commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter," N.Y.C. Admin. Code § 8-107(7)(iii), on the part of all the defendants.

288. As a result of the foregoing, plaintiffs have suffered, and continue to suffer, substantial damages, including, but not limited to emotional distress damages, statutory penalties, and punitive damages, in an amount to be determined at trial.

289. Plaintiffs are also entitled to appropriate injunctive relief under the NYC-HRL permanently enjoining any effort to expel or otherwise retaliate against plaintiffs for having opposed practices made unlawful by the NYC-HRL.

290. Plaintiffs are entitled to attorneys' fees and costs and expert fees pursuant to N.Y.C. Admin. Code § 8-502(g).

## JURY TRIAL DEMANDED

291. Plaintiffs hereby demand a jury trial for all issues so triable.


## RELIEF REQUESTED

**WHEREFORE**, plaintiffs Ilana Kopmar, Diane T. Clarke, and Isaac Altman demand that a judgment be entered in each of their favor, and against defendants the ALAA, Danielle Welch, Gerald Koch, Eva Stevenson, Candace Graff, Lisa Ohta, Bret J. Taylor, Emily C. Eaton, Martyna Kaznowski, Jeremy Bunyaner, Ioana Calin, Gillian R. Kress, Puja Paul, Jacqueline Aguilar, Babatunde Aremu,  Casey Bohannon, Michael Gibbons, Alexander Hu, Kelsey Laing, Martha Menendez, Hallie Mitnik, Sean T. Parmenter,  Ian Spiridigliozzi, Dorothy Summers, Tanner Wieland, Tori Roseman, Andrew Spence, Colleen Foley, and Julia Jenkins, awarding plaintiffs:

i.   Injunctive relief enjoining defendants and their agents from expelling or otherwise disciplining plaintiffs;

ii.  Compensatory damages, including emotional distress damages, statutory penalties, and punitive damages in amounts to be determined at trial;

iii. Reasonable attorneys' fees, costs, expert fees, and expenses;

iv.  Pre-judgment interest and post-judgment interest at the maximum rate allowable by the law; and

v.   Such other and further relief as the Court deems just and proper.

Dated: New York, New York
        September 13, 2024

Respectfully submitted,
*Attorneys for Plaintiffs*

THE LOUIS D. BRANDEIS CENTER
FOR HUMAN RIGHTS UNDER LAW

By: */s/ Rory Lancman*
        1717 Pennsylvania Avenue, N.W.
        Washington, D.C. 20006
        917-3639004
        rlancman@brandeiscenter.com

LIEB AT LAW, P.C.

By:  /s/Andrew M. Lieb
        Andrew M. Lieb
        Cheryl L. Berger
        308 W. Main St., Suite 100
        Smithtown, NY 11787
        (646) 216-8009
        cheryl@liebatlaw.com
        andrew@liebatlaw.com