UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ILANA KOPMAR, DIANE T. CLARKE, AND ISAAC ALTMAN,<br><br>                                   Plaintiffs,<br><br>                        v.<br><br>THE ASSOCIATION OF LEGAL AID ATTORNEYS AMALGAMATED LOCAL UNION 2325 OF THE INTERNATIONAL UNION, UNITED AUTOMOBILE AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW), AFL-CIO, and DANIELLE WELCH, GERALD KOCH, EVA STEVENSON, CANDACE GRAFF, LISA OHTA, BRET J. TAYLOR, EMILY C. EATON, MARTYNA KAZNOWSKI, JEREMY BUNYANER, IOANA CALIN, GILLIAN R. KRESS, PUJA PAUL, JACQUELINE AGUILAR, BABATUNDE AREMU, CASEY BOHANNON, MICHAEL GIBBONS, ALEXANDER HU, KELSEY LAING, MARTHA MENENDEZ, HALLIE MITNIK, SEAN T. PARMENTER, IAN SPIRIDIGLIOZZI, DOROTHY SUMMERS, TANNER WIELAND, TORI ROSEMAN, ANDREW SPENCE, COLLEEN FOLEY, and JULIA JENKINS,<br><br>                                   Defendants. | Case No.<br>1:24-cv-05158-JPO |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Levy Ratner, P.C.
80 Eighth Avenue, Floor 8
New York, NY 10011-7127
(212) 627-8100
(212) 627-8182 (fax)


On the Brief:    Jessica I. Apter
                 Allyson L. Belovin
                 Alexis S. Boyd

i

# **TABLE OF CONTENTS**

**Page(s)**

PRELIMINARY STATEMENT ................................................................................. 1

FACTS ................................................................................................................ 2

    The Parties ................................................................................................ 2
    The Resolution .......................................................................................... 3
    The TRO Action ........................................................................................ 3
    The Internal Union Disciplinary Charges ................................................ 4
    The Federal Court Dissolution of the TRO and the Union's Passage of the Resolution.... 5
    Plaintiffs' Challenges to the the Article 31 Charges ................................ 6

ARGUMENT ...................................................................................................... 7

I.     PLEADING STANDARD FOR STATING A CLAIM ................................ 7

II.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE LMRDA. ............. 8

    A.     Plaintiffs fail to state a claim for retaliatory discipline under §609 Because there has been no discipline. ................................................. 9

    B.     The individual defendants are not liable. ................................................. 10

        1.     The Rank-and-File Defendants did not file the Charges on behalf of the Union. ................................................. 10

        2.     The AC Defendants reviewed the Charges in a good faith effort to discharge their Constitutional duties................................................. 11

    C.     Plaintiffs fail to state a free speech claim under §101(a)(2). ................ 12

        1.     Lawsuits are not the kind of 'speech' protected by §101(a)(2). .............. 13

        2.     The TRO Action violated Plaintiffs' responsibility to the Union............. 14

    D.     Plaintiffs fail to state a right-to-sue claim under §101(a)(4)................. 17

        1.     The LMRDA should not be weaponized against free speech.................. 17

        2.     There is no LMRDA right to gratuitously and recklessly dox a fellow Union member, even in a lawsuit. ................................................. 18

III.   PLAINTIFFS FAIL TO STATE A CLAIM FOR RETALIATION UNDER FEDERAL, STATE, OR LOCAL DISCRIMINATION LAWS........................................... 18

    A.     Plaintiffs fail to make out a prima facie retaliation claim against the ALAA. ................................................. 19

        1.     Plaintiffs did not engage in protected activity. ........................................ 20

        2.     The Union has taken no adverse action against Plaintiffs. ...................... 22

B.     The Union had a legitimate, non-retaliatory reason to process the Charges. ....... 23

C.     The NYCHRL does not apply to Plaintiffs' Long Island employment ................ 24

D.     Plaintiffs fail to state a NYCHRL claim against the individual defendants. ........ 25

E.     Plaintiffs fail to state a NYSHRL claim against the individual defendants.......... 25

CONCLUSION ..................................................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Agosto v. Corr. Officers Benev. Ass'n,
   107 F. Supp. 2d 294 (S.D.N.Y. 2000)............................................................... 19, 23

Ashcroft v. Iqbal,
   556 U.S. 662 (2009)................................................................................................ 7

Badlam v. Reynolds Metals Co.,
   46 F. Supp. 2d 187 (N.D.N.Y. 1999)................................................................... 22

Bell Atl. Corp. v. Twombly,
   550 U.S. 544 (2007)................................................................................................ 7

Berg v. Watson,
   417 F. Supp. 806 (S.D.N.Y. 1976)....................................................................... 11

Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6,
   493 U.S. 67 (1989)................................................................................................. 9

Chambers v. Time Warner, Inc.,
   282 F.3d 147 (2d Cir. 2002).................................................................................. 8

Commer v. McEntee,
   121 F. Supp. 2d 388 (S.D.N.Y. 2000)................................................................. 12

Cruz v. Coach,
   202 F.3d 560 (2d Cir.2000)................................................................................. 19

DiFolco v. MSNBC Cable LLC,
   622 F.3d 104 (2d Cir. 2010)................................................................................... 7

Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,
   282 F.3d 83 (2d Cir. 2002).................................................................................... 9

Falchenberg v. New York State Dep't of Educ.,
   338 F. App'x 11 (2d Cir. 2009)............................................................................ 25

Farrell v. Hellen,
   No. 03 CIV. 4083 (JCF), 2004 WL 433802 (S.D.N.Y. Mar. 10, 2004) ................................. 10

Franza v. Int'l Bhd. of Teamsters, Loc. 671,
   869 F.2d 41 (2d Cir. 1989).................................................................................. 14

Fried v. LVI Servs., Inc.,
   No. 10 Civ. 9308(JSR), 2011 WL 4633985 (S.D.N.Y. Oct. 4, 2011) ..................................... 23

Helmer v. Briody,
   759 F.Supp. 170 ................................................................................................. 12

Hoffman v. Parade Publications,
   15 N.Y.3d 285 (2010) ...................................................................................... 23, 24

Johnson v. Frank,
   828 F.Supp. 1143 (S.D.N.Y.1993)....................................................................... 22

Johnson v. Palma,
   931 F.2d 203 (2d Cir.1991)................................................................................. 19

Johnson v. Rockhold,
   293 F. Supp. 1016 (E.D.N.Y. 1968) ..................................................................... 14

iv

Kazolias v. IBEWLU 363,
   806 F.3d 45 (2d Cir. 2015).................................................................................... 15, 16
Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.,
   716 F.3d 10 (2d Cir. 2013)........................................................................................ 19
Knight v. City of New York,
   303 F. Supp. 2d 485 (S.D.N.Y. 2004)...................................................................... 20
Lacy v. Highway & Motor Freight Emps., Loc. 667,
   No. C-74-454, 1978 WL 1735 (W.D. Tenn. Apr. 3, 1978) ................................. 12, 13
Lacy v. Highway & Loc. Motor Freight Emps. Loc. Union No. 667,
   620 F.2d 303 (6th Cir. 1980) .................................................................................... 12
Leavey v. Int'l Bhd. of Teamsters--Theatrical Teamsters Loc. Union No. 817,
   No. 13-CV-0705 NSR, 2015 WL 5802901 (S.D.N.Y. Oct. 5, 2015) ................. 12, 13
Lenzi v. Systemax, Inc.,
   944 F.3d 97 (2d Cir. 2019)........................................................................................ 19
Loekle v. Hansen,
   551 F. Supp. 74 (S.D.N.Y. 1982).............................................................................. 14
Monaco v. Smith,
   No. 00 CIV. 5845 (RMB), 2004 WL 203009 (S.D.N.Y. Feb. 2, 2004) ................... 13
Morrissey v. Nat'l Mar. Union of Am.,
   544 F.2d 19 (2d Cir. 1976)........................................................................................ 11
Newell v. Wisconsin Teamsters Joint Council No. 39,
   No. 05-C-552, 2008 WL 2356097, at *6 (E.D. Wis. Feb. 21, 2008).......................... 14
Perez v. Loc. Union No. 30,
   No. 98-CV-362 (ILG), 1999 WL 684156 (E.D.N.Y. July 12, 1999) ....................... 18
Regan v. Ohio Barge Line, Inc.,
   227 F. Supp. 1013 (S.D.N.Y. 1964).......................................................................... 10
Rivera v. Feinstein,
   636 F. Supp. 159 (S.D.N.Y. 1986).............................................................................. 9
Salzhandler v. Caputo,
   316 F.2d 445, 450 (2d Cir. 1963)....................................................................... 14, 18
Santucci v. Veneman,
   No. 01 CIV. 6644 (CBM), 2002 WL 31255115 (S.D.N.Y. Oct. 8, 2002)............... 20
Schermerhorn v. Local 100, Transp. Workers Union of Am.,
   91 F.3d 316 (2d Cir 1996).......................................................................................... 9
Sheet Metal Workers' Intern. Ass'n v. Lynn,
   488 U.S. 347 (1989)............................................................................................ 14, 17
Sotomayor v. City of New York,
   862 F. Supp. 2d 226 (E.D.N.Y. 2012) ...................................................................... 19
Thompson v. New York Cent. R. Co.,
   361 F.2d 137 (2d Cir. 1966)...................................................................................... 10
Toner v. United Bhd. of Carpenters,
   No. 96 Civ. 0023, 1999 WL 638602 (S.D.N.Y. Mar. 30, 1999) ......................... 12, 13
Torres v. Pisano,
   116 F.3d 625 (2d Cir. 1997)...................................................................................... 22
Turner v. Air Transp. Lodge 1894 of Int'l Ass'n of Machinists,
   No. 77-C-1146, 1978 WL 1664, at *4 (E.D.N.Y. Mar. 31, 1978), aff'd, 590 F.2d 409

(2d Cir. 1978) .................................................................................................... 15

United Steelworkers of Am., AFL–CIO-CLC v. Sadlowski,
  457 U.S. 102 (1982) .................................................................................... 14, 17

Vangas v. Montefiore Med. Ctr.,
  823 F.3d 174 (2d Cir. 2016) ............................................................................. 23

Vietnam Ass'n. for Victims of Agent Orange v. Dow Chem. Co.,
  517 F.3d 104 (2d Cir. 2008) ............................................................................... 7

Wimmer v. Suffolk Cnty. Police Dep't,
  176 F.3d 125 (2d Cir. 1999) ............................................................................. 21

Yerdon v. Henry,
  91 F.3d 370 (2d Cir. 1996) .............................................................. 19, 21, 22

## Statutes

29 U.S.C. § 411 ............................................................................................ *passim*

29 U.S.C. § 412 .................................................................................................. 10

29 U.S.C. § 529 ................................................................................................... 8

42 U.S.C. § 2000e–3 .................................................................................... *passim*

N.Y. Exec. L. § 296 ............................................................................... 18, 19, 25

N.Y.C. Admin. Code § 8-107(7) .................................................................. 18, 22

## Rules

Federal Rule of Civil Procedure ("FRCP") 12(b)(6) ............................................ 1, 7

Federal Rule of Evidence 201 .............................................................................. 2

## Other Sources

Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/dox
  (Accessed 10/15/2024) ....................................................................................... 2

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ILANA KOPMAR, DIANE T. CLARKE, AND ISAAC ALTMAN,<br><br>                             Plaintiffs,<br>                v.<br><br>THE ASSOCIATION OF LEGAL AID ATTORNEYS AMALGAMATED LOCAL UNION 2325 OF THE INTERNATIONAL UNION, UNITED AUTOMOBILE AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW), AFL-CIO, and DANIELLE WELCH, GERALD KOCH, EVA STEVENSON, CANDACE GRAFF, LISA OHTA, BRET J. TAYLOR, EMILY C. EATON, MARTYNA KAZNOWSKI, JEREMY BUNYANER, IOANA CALIN, GILLIAN R. KRESS, PUJA PAUL, JACQUELINE AGUILAR, BABATUNDE AREMU, CASEY BOHANNON, MICHAEL GIBBONS, ALEXANDER HU, KELSEY LAING, MARTHA MENENDEZ, HALLIE MITNIK, SEAN T. PARMENTER, IAN SPIRIDIGLIOZZI, DOROTHY SUMMERS, TANNER WIELAND, TORI ROSEMAN, ANDREW SPENCE, COLLEEN FOLEY, and JULIA JENKINS,<br><br>                             Defendants. | Case No.<br>1:24-cv-05158-JPO |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

The Association of Legal Aid Attorneys Amalgamated Local Union 2325 of the International Union, United Automobile Aerospace and Agricultural Implement Workers of America (UAW), AFL-CIO ("**ALAA**" or "**Union**"), and the individual defendants (together with the Union, "**Defendants**") submit this memorandum of law in support of their Motion pursuant to Federal Rule of Civil Procedure ("**FRCP**") 12(b)(6) to dismiss the Second Amended Complaint ("**Complaint**").

## PRELIMINARY STATEMENT

Plaintiffs are three Union members who tried and failed to interfere with Union democracy and chill Union members' protected speech.  In November 2023, Plaintiffs sought a

temporary restraining order to block an ALAA membership vote on a proposed Resolution Calling for a ceasefire in Gaza, an End to the Israeli Occupation of Palestine, and Support for Workers' Political Speech ("**Resolution**"), gratuitously including the names and contact information of Union members who supported the Resolution, and labeling them antisemites. In response, four Union members filed internal union disciplinary charges asserting that Plaintiffs' conduct violated the Union's Constitution, and Union officers processed the charges as required by that Constitution. No determination on the charges has been made.

Plaintiffs now seek to turn the pro-democracy Labor Management Recording and Disclosures Act, 29 U.S.C. § 411 et seq. ("**LMRDA**") on its head, by asserting protection for a legal action that had, as its sole purpose, the frustration of and interference with Union members' rights to free speech and democracy, and which gratuitously doxed[1] fellow rank-and-file Union members. They also claim retaliation under antidiscrimination laws, attempting to recast their 2023 lawsuit, post-hoc, as having alleged employment discrimination.

Plaintiffs fail to allege facts sufficient to support any of their claims and, accordingly, this lawsuit should be dismissed in its entirety.

## FACTS[2]

### The Parties

Plaintiffs are attorneys employed by the Legal Aid Society of Nassau County. 2d. Am. Compl. ¶¶ 27-29, ECF No. 47 ("**Compl.**"). Defendant ALAA is a labor union representing

---

[1] Doxing is "to publicly identify or publish private information about someone especially as a form of punishment or revenge." "Dox," Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/dox. Accessed 10/15/2024.

[2] These Facts are drawn from the non-conclusory allegations of the Complaint, which are accepted as true solely for the purpose of this Motion; documents incorporated by reference in or integral to the Complaint; and matters of public record of which judicial notice may be taken under Rule 201 of the Federal Rules of Evidence. Defendants deny and specifically reserve the right to challenge any or all of the Complaint's allegations if this Motion is denied.

approximately 3,000 attorneys and other legal services workers including Plaintiffs. Compl. ¶¶ 27-31. At all relevant times, Defendants Danielle Welch, Gerald Koch, Eva Stevenson and Candace Graff were rank-and-file ALAA members ("**Rank-and-File Defendants**"). Compl. ¶¶ 34, 37, 40, 43. Defendants Lisa Ohta, Bret J. Taylor, Emily C. Eaton, Martyna Kaznowski, Jeremy Bunyaner, Ioana Calin, Gilliam R. Kress, Puja Paul, Jacqueline Aguilar, Babatunde Aremu, Casey Bohannon, Michael Gibbons, Alexander Hu, Kelsey Lang, Martha Menendez, Hallie Mitnick, Sean T. Parameter, Ian Spiridigliozzi, Dorothy Summers, Tanner Wieland, Tori Roseman, Andrew Spence, Colleen Foley and Julia Jenkins were or are ALAA officers and members of the ALAA's Amalgamated Council ("**AC Defendants**"). Compl. ¶¶ 46-107.

<u>The Resolution</u>

In November 2023, the ALAA's Joint Council[3] put the proposed Resolution to a membership vote. Compl. ¶¶ 139-41. The Resolution was a response to Palestinian trade unions' call "for unionists worldwide to pressure governments to stop all military funding for Israel, to take action against companies involved in Israel's brutal and illegal siege, and to pass motions … to this effect." <u>See</u> Apter Aff., Ex. 2, at 1. The intra-Union debate about the Resolution included, along with fierce advocacy in support of the Resolution, statements that were pro-Israel, anti-Hamas, and anti-Resolution (<u>e.g.</u>, Compl. ¶¶ 8, 126-27, 129, 133, 145, 172). Plaintiffs do not allege that they engaged in this debate. All ALAA members, including Plaintiffs, were invited to vote on November 17, 2023 on whether the Union should adopt the Resolution. Compl. ¶ 140.

<u>The TRO Action</u>

---

[3] The ALAA's Joint Council is comprised of the Union's eight Constitutional Officers and representatives of each chapter of the Union and is the Union's highest governing body after the membership. Apter Aff. Ex. 7, Art. VI.

On November 16, 2023, Plaintiffs filed an Order to Show Cause With Temporary Restraining Order and Prayer for Injunctive Relief in state court, seeking to prevent the membership vote ("**TRO Action**"). Compl. ¶ 142. Without hearing substantive argument, Justice Hon. Felice J. Muraca issued the Temporary Restraining Order ("**TRO**") the next day, stopping the vote while in progress. Compl. ¶¶ 146, 150. Justice Muraca extended the TRO on November 21, 2023, without issuing findings. Compl. ¶ 147.

In the TRO Action, Plaintiffs conceded that the "Resolution is indistinguishable from similar previously-issued statements by other Unions, organizations and individuals," but argued that a Union-wide vote on the Resolution would irreparably harm their reputations and relationships. Apter Aff. Ex. 1, at ¶¶ 5, 20, 26. Plaintiffs illogically asserted these harms would occur "regardless of the Plaintiffs' vehement personal disagreement with" the Resolution, Id., at ¶ 42. Plaintiffs (now asserting claims under a statute that has at its core the *protection* of union democracy) sought to *enjoin* Union democracy, i.e., "distributing [the Resolution] for a vote to the membership." Apter Aff. Ex. 1, at 5. In the TRO Action, Plaintiffs quoted pro-Palestinian, anti-Israel and anti-Zionist statements made by fellow members and—in addition to labeling said members as antisemitic—recklessly included their unredacted names and contact information. Apter Aff. Ex. 1.

The Internal Union Disciplinary Charges

On or about November 21, 2023, the four Rank-and-File Defendants filed internal Union charges against the Plaintiffs for Conduct Unbecoming of a Union Member ("**Charges**") under

Article 31 of the Constitution of the International Union, UAW ("**UAW Constitution**").[4] Compl. ¶¶ 34, 37, 40, 43. Apter Aff. Ex. 3. The Charges alleged that "by seeking judicial injunctive relief to interrupt a democratic process on an internal union matter and, in the process, baselessly and publicly smearing their fellow union siblings as antisemitic, these individuals violated core tenants [sic] of our union's mission and behaved in ways that demand official consequences." Apter Aff. Ex. 3. Article 31 of the UAW Constitution ("**Article 31**") provides that "[u]pon charges being submitted, it is mandatory that a trial be held unless the charges are withdrawn by the accuser or considered by the Union to be improper under this Article [31]." Apter Aff. Ex. 4, Art. 31(3). It also provides the five bases for finding that charges are improper: they (a) "do not state the exact nature of the alleged offense"; (b) "are untimely"; (c) do "not sustain a charge of a violation of the Constitution or conduct unbecoming a member of the Union"; (d) "involve a question which should be decided by the membership at a membership meeting and not by the trial procedure"; or (e) are not "supported by substantial direct evidence, as well as the evidence of at least one (1) corroborating witness, which if not rebutted, would establish all elements of the charge(s)." Id. On January 2, 2024, the Union's Amalgamated Council ("**AC**")[5] reviewed the Charges and determined that they were proper. Compl. ¶¶ 46-107; Apter Aff. Ex. 9(a)-(c).

The Federal Court Dissolution of the TRO and the Union's Passage of the Resolution

On December 15, 2023, a federal court dissolved the TRO, explaining that it "plainly targets the union's speech by preventing the union and its leadership from distributing the resolution to the full membership for a vote so that it may adopt the resolution as the union's

---

[4] ALAA's By-laws provide that "[t]he Constitution of this union is the Constitution of the International Union, UAW." Apter Aff. Ex. 7, Art. II.

[5] The AC is composed of eight Constitutional Officers and representatives of each Chapter of the Union, and has the power to make certain enumerated and unenumerated decisions for the Union. Compl. ¶ 117-18.

speech." Compl. ¶ 152; Apter Aff. Ex. 5, at 50-51. The court noted that "all members of the union, including the plaintiffs, could participate in the deliberations concerning the proposed resolution and have the opportunity to vote on it" (Apter Aff. Ex. 5, at 68) and found no authority to justify a government restraint on the Union's speech. Specifically, the court held that "a reasonable lawyer would not conclude that any and every member of the union supports the [R]esolution," or even that any such "imputed support for the resolution … constitutes an interest the attorney would represent in the course of defending a client, such as a Jewish client … within the meaning of Rule 1.7(a)." Id., at 50-55, 58. The court also found that Plaintiffs' arguments did "not raise a serious question on the merits" of their claims. Id., at 66-79.

On December 19, 2023, the Union-wide vote on the Resolution resumed and resulted in the Union's adoption of the Resolution. Compl. ¶ 152. Plaintiffs made no further effort to prosecute any of their claims and "voluntarily dismissed the Lawsuit." Compl. ¶ 153.

<u>Plaintiffs' Challenges to the Article 31 Charges</u>

On or about January 22, 2024, Plaintiffs appealed the AC's determination that the Charges were "proper" to the UAW International Executive Board ("**IEB**"). Compl. ¶ 167. On or about June 4, 2024, they filed Equal Employment Opportunity Commission ("**EEOC**") charges against the Union, alleging that the Article 31 Charges were retaliatory. Compl. ¶ 25. The EEOC issued right to sue letters on August 1, 2024. Compl. ¶ 26.

On or about June 24, 2024, the IEB denied Plaintiffs' appeal, explaining that the AC's "function is to determine if the charges, as submitted, are proper pursuant to Article 31, Sections 3(a), (b), (c), (d) and (e) which is controlling." Apter Aff. Ex. 6. The IEB noted:

> **It bears repeating, this decision is not an indication of guilt or innocence.** We have determined that the Article 31 charge filed against Appellant meets the criteria necessary to proceed to trial by the membership.

Id. (emphasis in original).

The UAW Constitution provides that "[i]f … there is an appeal concerning the propriety of the charge, no such trial shall be held until … the final body hearing the appeal has issued a decision." Apter Aff. Ex. 4. Plaintiffs do not and cannot plead that any trial board has been selected, that a hearing has been held or that punishment has been imposed.

Plaintiffs filed a first complaint in this matter on July 9, 2024 [ECF No. 1] and amended it on July 26, 2024 and September 13, 2024 [ECF Nos. 5, 47].

## ARGUMENT

## I.    PLEADING STANDARD FOR STATING A CLAIM

To survive a motion to dismiss brought pursuant to FRCP 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Facial plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). "[T]he pleading standard Rule 8 announces … demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555).

While a court deciding a motion to dismiss pursuant to Rule 12(b)(6) "must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party," Vietnam Ass'n. for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008) (citation omitted), this tenet "is inapplicable to legal conclusions." Iqbal, 556 U.S. at

677. "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" Id. at 678 (quoting Twombly, 550 U.S. at 555, 557).

Additionally, in cases involving a motion to dismiss pursuant to Rule 12(b)(6), a district court may consider "documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 111 (2d Cir. 2010). Even "where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, [thereby] render[ing] the document integral to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (internal quotations omitted).

As set forth more fully below, the Plaintiffs have failed to plead facts sufficient to state claims under Sections 101(a)(2) and (a)(4) of the Labor Management Reporting and Disclosures Act, 29 U.S.C. § 411(a)(2), (a)(4), or federal, state, or local laws barring discrimination in employment. Accordingly, the Complaint should be dismissed in its entirety.

## II.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE LMRDA.

With the goal of safeguarding union democracy, the LMRDA protects union members from interference with, and retaliation for engaging in, free speech amongst fellow members (§ 101(a)(2)) and filing lawsuits and administrative complaints (§ 101(a)(4)). Plaintiffs' claims for retaliatory discipline under § 609 must be dismissed because there has not been, and may never be, discipline. Plaintiffs' LMRDA claims against the individual defendants also fail because Plaintiffs do not and cannot allege either that the Rank-and-File Defendants who filed the Charges acted on the Union's behalf or that the AC Defendants abused their authority in processing the Charges. Finally, Plaintiffs do not state a claim under the LMRDA for interference with the right to file a lawsuit, because their TRO Action was neither "speech"

within the meaning of §101(a)(2), nor the kind of lawsuit that should be protected by §101(a)(4). For all these reasons, the Court should dismiss Counts I through IV of the Complaint.

### A.   Plaintiffs Fail to State a Claim for Retaliatory Discipline Under § 609 Because There Has Been No Discipline.

Plaintiffs fail to state claims for unlawful discipline in violation of LMRDA § 609, 29 U.S.C. § 529, which makes it unlawful for unions to discipline members for exercising LMRDA-protected rights, because they do not and cannot allege that any discipline has been imposed. Prohibited discipline "denote[s] only punishment authorized by the union as a collective entity to enforce its rules." Schermerhorn v. Local 100, Transp. Workers Union of Am., 91 F.3d 316, 326 (2d Cir. 1996) (quoting Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6, 493 U.S. 67, 91 (1989)). "[T]he leveling of charges and hearing … is neither discipline within the meaning of [the LMRDA] nor does it give rise to irreparable injury to speech rights, because it is merely an investigation of [a plaintiff's] activities and not punishment for the exercise of those rights." Rivera v. Feinstein, 636 F. Supp. 159, 164 (S.D.N.Y. 1986).[6]

Here, like in Rivera, Plaintiffs anticipate potential discipline that may or may not be imposed. Plaintiffs do not and cannot allege that a trial board has been selected or that hearings are underway, let alone that discipline has been imposed; under the UAW Constitution, no "trial shall be held until … the final body hearing the appeal has issued a decision." Apter Aff. Ex. 4. Accordingly, Plaintiffs' claims in Counts II and IV of the Complaint should be dismissed.

---

[6] Similarly, these claims are unripe, involving only "abstract disagreements that are premature for review because the injury is merely speculative and may never occur, depending on the final administrative resolution." Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 90 (2d Cir. 2002), abrogated on other grounds.

**B.**     <u>The Individual Defendants are Not Liable Under the LMRDA.</u>

Neither the Rank-and-File Defendants nor the AC Defendants are liable for any violation of the LMRDA.  The Rank-and-File Defendants did not act on behalf of the Union or its officers when they filed the Charges.  The AC Defendants reviewed the Charges as required by the UAW Constitution. Accordingly, all LMRDA claims must be dismissed as against them.

**1.**     <u>The Rank-and-File Defendants Did Not File Charges on the Union's Behalf.</u>

The Court should dismiss the LMRDA claims against the Rank-and-File Defendants because Plaintiffs do not allege any facts to establish that they acted on the ALAA's behalf. "The uniform current of authority in this Circuit has been to limit the jurisdiction of the District Courts under the Labor-Management Reporting and Disclosure Act to suits based upon allegations that a labor organization or officer or agent thereof acting in his official capacity violated the terms of the Act." <u>Thompson v. New York Cent. R. Co.</u>, 361 F.2d 137, 145 (2d Cir. 1966). "A union member's Section 101 free speech and due process rights are enforceable pursuant to 29 U.S.C. § 412, which has been interpreted as providing a right of action against individuals as well as labor organizations, but only where the individual defendant is an "officer or agent [of the union] acting in his official capacity." <u>Farrell v. Hellen</u>, No. 03 CIV. 4083 (JCF), 2004 WL 433802, at *5 (S.D.N.Y. Mar. 10, 2004) (finding union attorney not liable) (quoting <u>Thompson</u> 361 F.2d, at 145); <u>see also</u>, <u>Regan v. Ohio Barge Line, Inc.</u>, 227 F. Supp. 1013, 1014 (S.D.N.Y. 1964) (holding that "no cause of action is asserted since they are not alleged to have acted … in the capacity of agents for [the union]").

Plaintiffs allege the Rank-and-File Defendants violated the LMRDA simply by filing the Charges. Notwithstanding Plaintiffs' conclusory assertion that the Charges were filed "under color of authority" of the Union (Compl. ¶ 18, 39, 42, 45), Plaintiffs acknowledge that the Rank-and-File Defendants are Union members with no official or representative role, Compl. ¶¶ 34, 37, 40, 42. Plaintiffs assert no facts that would establish that the Rank-and-File Defendants filed the Charges as agents of the Union or at the behest of a Union official. The mere fact that the UAW Constitution gives members the right to file internal charges does not, without facts demonstrating agency, expose members exercising that right to LMRDA liability. Apter Aff. Ex. 4. Because the Rank-and-File Defendants were not officers or agents of the Union, their conduct toward the Plaintiffs is not governed by the LMRDA and the LMRDA claims asserted against them must be dismissed.

### 2.    The AC Defendants Reviewed the Charges in a Good Faith Effort to Discharge their Constitutional Duties.

Union officers may only be sued for interference with LMRDA rights, in their individual capacities, for official acts that are taken "in abuse of" their authority; they are not subject to liability when they "act in a good faith effort to discharge their duties." Berg v. Watson, 417 F. Supp. 806, 812 (S.D.N.Y. 1976) (citing Morrissey v. Nat'l Mar. Union of Am., 544 F.2d 19, 24 (2d Cir. 1976)). Plaintiffs allege the AC Defendants violated the LMRDA by processing the Charges and determining them "proper" under the UAW Constitution. Because Plaintiffs plead no facts to show that the AC Defendants abused their authority in doing so, their claims fail.

The UAW Constitution required the AC Defendants to process the Charges and determine whether they are sufficiently "proper" to proceed to a trial on their merits. Apter Aff. Ex. 4, Art. 31(3) ("Upon charges being submitted, it is mandatory that a trial be held unless the

charges are withdrawn by the accuser or considered by the Union to be improper under this Article"). Article 31 provides an exhaustive list of the five bases for finding that charges are improper, and "[p]rior to the notification to a member that charges have been filed against them, the Local Union Executive Board … shall review the charges [for impropriety]" on those bases. Id. The AC reviewed the charges, found them proper and, as mandated by the Constitution, determined they should proceed to trial. Compl. ¶ 163. The IEB upheld that determination on appeal, explaining that the Charges were not "improper" under any of the five grounds set forth in the UAW Constitution.[7] Apter Aff. Ex. 6. When Plaintiffs' irrelevant and inflammatory accusations are put aside, what remains is completely devoid of facts remain showing any abuse of authority by the AC Defendants, who carried out their ministerial duty of reviewing the Charges.

### C.    Plaintiffs Fail To State A Free Speech Claim Under § 101(a)(2).

To successfully state a claim for retaliation in violation of the LMRDA, a plaintiff must establish that: "(1) his conduct constituted 'speech' under the LMRDA; (2) that the speech was a cause for the Union taking action against him; and (3) damages." Leavey v. Int'l Bhd. of Teamsters--Theatrical Teamsters Loc. Union No. 817, No. 13-CV-0705 NSR, 2015 WL 5802901, at *8 (S.D.N.Y. Oct. 5, 2015); Commer v. McEntee, 121 F. Supp. 2d 388, 396 (S.D.N.Y. 2000), aff'd, 15 F. App'x 21 (2d Cir. 2001). Plaintiffs fail to satisfy the first element of an LMRDA free speech claim: that they engaged in, or tried to engage in, LMRDA-protected speech. The only purported "speech" Plaintiffs allege is the TRO Action itself. Lawsuits, however, are not speech protected by LMRDA § 101(a)(2). Lacy v. Highway & Motor Freight

---

[7] Notably, Plaintiffs have not alleged that the IEB's decision violates the LMRDA or is otherwise unlawful.

Emps., Loc. 667, No. C-74-454, 1978 WL 1735, at *4 (W.D. Tenn. Apr. 3, 1978), aff'd sub nom.

Lacy v. Highway & Loc. Motor Freight Emps. Loc. Union No. 667, 620 F.2d 303 (6th Cir.

1980). Moreover, even if lawsuits were generally protected by § 101(a)(2), the TRO Action

would not be. Accordingly, the Court should dismiss Counts III and IV of the Complaint.

### 1.    Lawsuits are not the Kind of 'Speech' Protected By Section 101(a)(2).

The LMRDA's free speech provisions "are designed to protect speech in the context of

the union democratic process, *i.e.*, political speech primarily addressed to other union members,

rather than free speech at large." Helmer v. Briody, 759 F.Supp. 170, 176–77 (S.D.N.Y. 1991),

(holding that communication with outside authorities is "not the type of expression protected by

the LMRDA"); Toner v. United Bhd. of Carpenters, No. 96 Civ. 0023, 1999 WL 638602, at *7

(S.D.N.Y. Mar. 30, 1999) (finding no LMRDA retaliation where plaintiffs "present[ed] no

evidence that they ha[d] ever voiced their beliefs in the corruption of the union's leaders to the

membership"); Monaco v. Smith, No. 00 CIV. 5845 (RMB), 2004 WL 203009, at *9 (S.D.N.Y.

Feb. 2, 2004) ("statement directed solely to [one' supervisor is not the type of speech that Title I

of the LMRDA was designed to protect"); Leavey, 2015 WL 5802901, at *9 ("Plaintiff has

failed to present any evidence that his complaints, letters, and grievances, or the substance

thereof, were communicated to other union members"). Another court also noted that a lawsuit

does not fall within the protection of Section 101(a)(2). See Lacy, 1978 WL 1735, at *4 ("The

remarks of the president … that the plaintiff's former suit interfered with the performance by the

union of its legal or contractual obligations seem irrelevant to § 411(a)(2) because § 411(a)(4)

deals with the right of a member to sue"). Accordingly, to demonstrate interference with or

retaliation based on a right protected by § 101(a)(2), Plaintiffs must allege that they tried to

engage in speech directed at fellow members.

Nothing in the Complaint alleges that Plaintiffs engaged or attempted to engage in any speech with fellow members. The TRO Action, like the speech found unprotected in <u>Toner</u>, <u>Helmer</u>, and <u>Monaco</u>, was directed solely at an audience outside of the Union. While Plaintiffs quote at length other members' intra-Union statements in favor of the Resolution—some of which acknowledge other speech in opposition to it[8]—they do not describe a single utterance of their own having formed the basis of any retaliation by the Union or its officers. Plaintiffs cannot sustain a claim of interference with their right to speak freely to fellow members, or retaliation for exercising that right, when they have not alleged ever trying to engage in protected speech. Because Plaintiffs cannot establish even the first element of a free speech claim, Counts III and IV should be dismissed.

### 2.    The TRO Action Violated Plaintiffs' Responsibility to the Union.

The Supreme Court has recognized that the "overriding objective" of the LMRDA is "democratic union governance." <u>Sheet Metal Workers' Int'l. Ass'n v. Lynn</u>, 488 U.S. 347, 644 (1989); <u>see also</u> <u>United Steelworkers of Am., AFL-CIO-CLC v. Sadlowski</u>, 457 U.S. 102 (1982). But, while the LMRDA provides protections for individual union members' rights, "the institutional interest in union self-governance-free of undue government oversight or interference-sometimes outweighs the free speech rights of union members." <u>Franza v. Int'l Bhd. of Teamsters, Loc. 671</u>, 869 F.2d 41, 44 (2d Cir. 1989). Thus, "despite the broad interpretation of § 101(a)(2), when a court confronts a case in which a union member has been disciplined for …

---

[8] <u>See</u> Compl. ¶¶ 8 (members spoke against "the anti-Semitic rhetoric and resolution"), 126 (members responded to those who "keep talking about [violence against Israelis]" and called for denunciation of Hamas and "concern about the hostages"), 127 (a member responded to statement(s) that "this fight is unrelated to the work we do everyday"), 129 (describing a "challenge[] by Jewish attorneys in the Gaggle Mail forum"), 133 (describing responses to "ALAA members who [had] objected to either the resolution or their employers' response to the October 7th massacre"), 145 (a member "express[ed] a desire for more camaraderie and compassion"), 172 (describing a resolution proposed by those "opposed to the ALAA's anti-Semitic campaign").

violating his responsibility to the union as an institution, a balancing must be carried out—the union member's interest in free and untrammeled speech must be weighed against the interests of the union as an institution." Loekle v. Hansen, 551 F. Supp. 74, 80 (S.D.N.Y. 1982); see also Newell v. Wisconsin Teamsters Joint Council No. 39, No. 05-C-552, 2008 WL 2356097, at *6 (E.D. Wis. Feb. 21, 2008) ("statements that undermine the responsibility of every member toward the organization as an institution…are disciplinable" (quoting Salzhandler v. Caputo, 316 F.2d 445, 450 (2d Cir. 1963))); Johnson v. Rockhold, 293 F. Supp. 1016, 1017–18 (E.D.N.Y. 1968) ("discipline may be invoked when the union members' exercise of free speech … is a violation of the responsibility of every member toward the organization").[9]

Here, the Union's interest in internal democracy and its members' free expression of ideas clearly outweigh Plaintiffs' interest in "speech" that sought to interfere with that democracy and chill that expression. Plaintiffs sought to block the Union's ability to hold a democratic vote, publicly exposed the names and contact information of fellow rank-and-file Union members, and publicly labeled those members antisemites because they spoke out against Israel and Zionism. In doing so, *Plaintiffs* sought to infringe upon and chill *those* members' political and protected speech. It is these actions that are alleged to have undermined union democracy and violated Plaintiffs' responsibility towards the Union, and for which they now face potential discipline.

Guided by the Supreme Court's emphasis on the LMRDA's goal of "safeguarding union democracy," the Second Circuit has said that the "LMRDA was designed to protect the integrity

---

[9] The facts here are distinguishable from those in Turner v. Air Transp. Lodge 1894 of Int'l Ass'n of Machinists, AFL-CIO, where the district court found that expulsion of a member for "express[ing] his communist beliefs … controversial, unpopular views," when that *did not "say or do anything that could be considered harmful to the union*," violated Section 101(a)(2). No. 77-C-1146, 1978 WL 1664, at *4 (E.D.N.Y. Mar. 31, 1978), aff'd, 590 F.2d 409 (2d Cir. 1978) (emphasis added).

of union governance, not to turn nearly every criticism by a union member regarding an official's conduct ... into a federal case." Kazolias v. IBEWLU 363, 806 F.3d 45, 52–53 (2d Cir. 2015) (internal quotations omitted). In Kazolias, the court explored the line between LMRDA-protected and unprotected speech, in the context of a union hiring hall:

> We have no doubt that the administration of a union's hiring hall is a subject of vital interest to the full membership, and that in certain circumstances complaints about the improper administration of the hiring hall can constitute speech that is protected from retaliation by Title I. On the other hand, we do not think that every personal grievance premised on an allegation of an inappropriate job referral necessarily qualifies as protected speech under Title I . . . [I]n making their complaints to the NLRB and the EEOC, Plaintiffs sought only redress for their personal grievances and made no attempt to publicize their grievances *among the membership in an effort to change union practices*.

Kazolias v. IBEWLU 363, 806 F.3d 45, 52 (2d Cir. 2015) (emphasis added).

As Kazolias makes clear, the LMRDA does not protect self-serving speech directed to an outside audience. Like the hiring hall in Kazolias, the *Resolution* was a matter of unionwide concern; Plaintiffs' TRO Action, however—like the agency complaints deemed unprotected in Kazolias—sought personal redress of Plaintiffs' desire to block the vote on the Resolution because they disagreed with it. This is so notwithstanding Plaintiffs' decidedly[10] unreasonable claim that the Resolution would negatively affect all Union members who would be perceived by colleagues, judges, and future clients as having each individually supported the Resolution. Accordingly, even if Plaintiffs re ultimately disciplined for filing the TRO Action, that lawsuit falls outside the scope of § 102(a)(2)'s protections, which exist to safeguard union democracy.

---

[10] In dissolving the TRO, the district court rejected Plaintiffs' arguments that the Resolution vote would negatively affect all union members and found that "a reasonable lawyer would not conclude that any and every member of the union supports the [R]esolution," or "that an attorney's imputed support for the resolution by virtue of the union's vote on that resolution constitutes an interest the attorney would represent in the course of defending a client, such as a Jewish client, such that the attorney would be representing different interests" Apter Aff. Ex. 5, at 57- 58.

**D.**     **Plaintiffs Fail to State a Right-to-Sue Claim Under LMRDA § 101(a)(4).**

The LMRDA was enacted to *protect* Union democracy and *proscribe* conduct that would chill union members' free speech. Not surprisingly then, undersigned counsel could not find a case anywhere in the country applying the LMRDA's protection to a lawsuit to enjoin a membership vote because of plaintiffs' disagreement with the content of the question being put to the membership. Nor could counsel find a case holding that a lawsuit defaming, let alone doxing, fellow Union *members*—as opposed to one critical of Union *officers*—is protected by §101(a)(4). The Court should not extend the holdings of other LMRDA right-to-sue cases to this one; doing so would turn the LMRDA on its head by providing a shield to those who would enlist a court to obstruct democratic processes and chill fellow union members' speech. Because both the act of filing the TRO Action and the use of it to dox other Union members and chill their speech are antithetical to the purposes of the LMRDA, the Court should find that it is not protected by § 101(a)(4), and dismiss Counts I and II of the Complaint.

**1.**     **The LMRDA should not be weaponized against free speech.**

The Court should dismiss the §101(a)(4) claims and hold that a lawsuit brought for the sole purpose of preventing Union democracy and chilling free speech is not protected under LMRDA Title I. See Sheet Metal Workers' Int'l Ass'n, 488 U.S. at 357; United Steelworkers of Am., AFL-CIO-CLC v. Sadlowski, 457 U.S. 102 (1982). Plaintiffs filed the TRO Actio to block a membership vote that would, and ultimately did, give Union members the opportunity to express their position on the Resolution.  They did so because of Plaintiffs' own political and moral positions about its content. Plaintiffs' singular, self-serving focus on blocking a democratic vote on the Resolution is made clear by their admission that "[g]iven the passage of the Resolution, [they] voluntarily dismissed the Lawsuit." Compl. ¶ 153. The LMRDA's

fundamental purpose of protecting Union democracy and members' free speech would be frustrated if the statute could be used to protect union members who sue to bar fellow members' free speech simply because they disagree with the content of that speech.

        2.        **There is no LMRDA right to gratuitously and recklessly dox fellow Union members, even in a Lawsuit.**

The Court should similarly reject Plaintiffs' attempts to use the LMRDA as a shield against the consequences of doxing fellow rank-and-file Union members merely because that doxing was embedded—gratuitously—within the body of a request for judicial intervention. The act of doxing fellow members by baselessly labeling them antisemites and publishing their names and contact information in a publicly available document undeniably threatens robust and open debate on a matter important to the Union. When Plaintiffs inevitably cite those cases holding that lawsuits are protected by § 101(a)(4) even when they slander, libel, or defame Union officers, see, e.g., Perez v. Loc. Union No. 30, No. 98-CV-362 (ILG), 1999 WL 684156, at *5 (E.D.N.Y. July 12, 1999) (quoting Salzhandler, 316 F.2d at 451 ("[f]reedom of expression would be stifled if those in power could claim that any charges against them were libelous")), this Court should decline the invitation to extend those holdings to protect the *doxing* of fellow *rank-and-file* Union members merely because it is contained in a lawsuit that may otherwise be LMRDA-protected.

## III.    PLAINTIFFS FAIL TO STATE A CLAIM FOR RETALIATION UNDER FEDERAL, STATE, OR LOCAL ANTIDISCRIMINATION LAWS.

Plaintiffs' claims for retaliation under federal, State, and City antidiscrimination laws are meritless, and the Court should dismiss Counts V through VIII of the Complaint. Plaintiffs fail to make prima facie claims against the Union under Title VII of the Civil Rights Act of 1964 ("**Title VII**"), 42 U.S.C. § 2000e-3(a), the New York State Human Rights Law ("**NYSHRL**"),

N.Y. Exec. Law § 296(1)(e), or the New York City Human Rights Law ("**NYCHRL**"), N.Y.C. Admin. Code § 8-107(7), because Plaintiffs did not have a good faith belief that the TRO Action was protected activity and they have not suffered any adverse employment action.  Even if Plaintiffs could make out a prima facie claim of retaliation, Defendants had legitimate, non-retaliatory reasons for filing and processing the Charges.   Moreover, the NYCHRL is plainly inapplicable to Plaintiffs' Long Island employment, and Plaintiffs do not allege Defendants' conduct has had an impact on them in New York City. Finally, because Plaintiffs cannot prove a retaliation claim against the Union, their New York State aiding and abetting claim against the individual Defendants also fails.

### A.    Plaintiffs Fail to make out a prima facie retaliation claim against the ALAA.

Plaintiffs do not make out a prima facie case against the ALAA for Title VII, NYSHRL, or NYCHRL retaliation. To state a claim under Title VII, a plaintiff "must show participation in protected activity known to the [Union]…a union action by which she was disadvantaged as well as a causal connection between that action and the protected activity." Yerdon v. Henry, 91 F.3d 370, 377 (2d Cir. 1996) (citing Johnson v. Palma, 931 F.2d 203, 207 (2d Cir.1991)). Even when a plaintiff proves a prima facie case of retaliation, if a defendant union provides a legitimate, non-discriminatory reason for its actions, the burden shifts back to the plaintiff to show that the stated reason was pretextual. Agosto v. Corr. Officers Benev. Ass'n, 107 F. Supp. 2d 294, 309 (S.D.N.Y. 2000) (quoting Cruz v. Coach, 202 F.3d 560, 567 (2d Cir.2000) (superseded on other grounds)). The same burden-shifting framework is used to determine whether a defendant has retaliated within the meaning of the NYSHRL, see, e.g., Lenzi v. Systemax, Inc., 944 F.3d 97, 107 n.7 (2d Cir. 2019), and, with certain differences discussed below, under the NYCHRL,

Sotomayor v. City of New York, 862 F. Supp. 2d 226, 252 (E.D.N.Y. 2012), aff'd, 713 F.3d 163 (2d Cir. 2013).

### 1.    Plaintiffs did not engage in protected activity.

Plaintiffs do not allege facts sufficient to suggest that they engaged in protected activity. "'[P]rotected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." Agosto, 107 F. Supp. at 309; see 42 U.S.C. § 2000e–3; N.Y. Exec. L. § 296(7); NYCHRL § 8–107(7). A plaintiff is "required to have had a good faith, reasonable belief that [she] was opposing an employment practice made unlawful by Title VII," Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 14 (2d Cir. 2013) (quoting McMenemy v. City of Rochester, 241 F.3d 279 (2d Cir. 2001)), the NYSHRL and/or the NYCHRL, Knight v. City of New York, 303 F. Supp. 2d 485, 496 (S.D.N.Y. 2004), aff'd, 147 F. App'x 221 (2d Cir. 2005). Plaintiffs' objective reasonableness is "evaluated from the perspective of a reasonable similarly situated person." Kelly, 716 F.3d at 17 (finding of protected activity precluded where plaintiff had "made no complaints that suggested a belief that she was being discriminated against on the basis of any trait, protected or otherwise"); see also, e.g., Santucci v. Veneman, No. 01 CIV. 6644 (CBM), 2002 WL 31255115, at *3 (S.D.N.Y. Oct. 8, 2002) (dismissing retaliation claim where plaintiff alleged their whistleblower complaint was protected activity but had not stated how the underlying action of his employer discriminated against him as a member of a protected class). No reasonable attorney could, in good faith, believe that the TRO Action challenged—or even described[11]—any act made unlawful by any applicable employment discrimination statute.

---

[11] The NYCHRL defines protected activity somewhat more broadly, including, "commenc[ing] a civil action alleging" an act of discrimination. § 8-107(7)(iii).

Plaintiffs did not file the TRO Action "to protest or oppose statutorily prohibited discrimination" against employees or union members of any class, protected or otherwise, and it did not allege any act of unlawful discrimination. Rather, the TRO Action included only two claims: (1) breach of contract and (2) breach of the Union's duty of fair representation. In making those claims, Plaintiffs did not allege that the Resolution itself violated any anti-discrimination statute. Notably, Plaintiffs did not even seek to prohibit *the ALAA leadership* from adopting the Resolution; they sought only to enjoin the full Union membership from voting on it.[12] The crux of Plaintiffs' argument was that adoption of the Resolution through a unionwide vote would alienate Jewish *clients* and harm *all* ALAA members' reputations because judges and other attorneys would automatically impute to them support for the Resolution. See Apter Aff. Ex. 1, at ¶ 33. Plaintiffs did not identify themselves in the TRO Action as belonging to a protected class, nor did they allege disparate treatment; in fact, they did just the opposite: they asserted that *all* ALAA members would be *equally* impacted by the adoption of the Resolution through a democratic vote. Moreover, alleging that an action will offend *clients* does not constitute a protest of statutorily prohibited employment discrimination. See Wimmer v. Suffolk Cnty. Police Dep't, 176 F.3d 125, 135-36 (2d Cir. 1999) (finding protesting discrimination against the public is not protected activity). While Plaintiffs point to their affirmation in support of the TRO Action as containing purported "evidence – quotes and exhibits -- of…anti-Semitic discriminatory expressions on the union's Gaggle Mail system," they do not allege that the affirmation was submitted to challenge any conduct made unlawful by an antidiscrimination

---

[12] In the TRO Action, Plaintiffs argued that they were not "seeking to enjoin the union from disseminating ... anything it wants, but only to restrict it from affecting through a vote the adoption of this resolution on behalf of the membership." Apter Aff. Ex. 5, at ¶¶ 27-31.

statute (let alone that any such expressions were uttered by a representative of the Union). Instead, they concede it was "in further support of their application for a TRO." Compl. ¶ 145.

Plaintiffs—attorneys who are themselves represented by competent counsel—showed that they know how to challenge perceived violations of human rights laws when they filed complaints with the EEOC, obtained right-to-sue letters, and initiated this case alleging causes of action for retaliation under the applicable laws. See, e.g., Compl. ¶¶ 24-26.[13] Because Plaintiffs never sought relief from any suspected or actual violation of employment discrimination laws, and Plaintiffs do not allege taking any other action to oppose such discrimination, they have not pled the first element of a retaliation claim under any applicable antidiscrimination law. Therefore, their retaliation claims must be dismissed on that ground alone.

### 2.    The Union has taken no adverse action against Plaintiffs.

For purposes of Title VII and the NYSHRL, "[a]n adverse action is one that affects the terms, privileges, duration, or conditions of employment." Yerdon v. Henry, 91 F.3d at 378 (2d Cir. 1996) (quoting Johnson 828 F. Supp. at 1153 (S.D.N.Y.1993)); see also Badlam v. Reynolds Metals Co., 46 F. Supp. 2d 187 (N.D.N.Y. 1999) (citing Torres v. Pisano, 116 F.3d 625 (2d Cir. 1997)). The Second Circuit held in Yerdon that internal union charges filed against a union member "did not constitute retaliation because the charges had not yet been adjudicated." 91 F.3d at 378. Plaintiffs do not and cannot allege that the Charges have been heard and decided or that discipline has been imposed and, accordingly, they fail to satisfy the second element of a prima facie case of retaliation under federal or state law.

---

[13] For the avoidance of all doubt, Defendants do not argue that this legal process is the only kind of protected activity. Plaintiffs' failure to engage in that process, however, underscores that the singular aim of the TRO Action was to block a union-wide vote, not to challenge purported discrimination.

While New York City law defines an "adverse action" more broadly as one that is "reasonably likely to deter a person from engaging in protected activity," see N.Y.C. Admin. Code § 8-107(7), the Charges against Plaintiffs are so narrowly tailored that they would not reasonably chill Union members from challenging an actual act of employment discrimination. The Charges condemn only the "interrupt[ion of] a democratic process on an internal union matter and, in the process, [the] baseless[] and public[] smearing [of] fellow union siblings as antisemitic" because of their political opinions. Apter Aff. Ex. 1. Charges of such specificity would not deter a reasonable ALAA member from opposing or challenging any actual—or actually perceived—violation of a human rights law; indeed, the Charges did not deter Plaintiffs themselves from filing EEOC charges or this lawsuit. Because Plaintiffs did not suffer any adverse action, it follows that they cannot allege a causal connection between an adverse action and their alleged protected activity. Thus, Plaintiffs fail to make out the second and third elements of a prima facie case for discrimination against the ALAA.

**B.    <u>The Union had a legitimate, non-retaliatory reason to process the Charges.</u>**

Even if the Plaintiffs could prove a prima facie case, their retaliation claims would fail because the AC had a legitimate, non-retaliatory reason for processing the Charges. The AC was required to do so under the terms of Article 31, which provides that "[u]pon charges being submitted, it is *mandatory* that a trial be held unless the charges are withdrawn by the accuser or considered by the Union to be improper under this Article [31]." Apter Aff. Ex. 4, Art. 31(3) (emphasis added). Article 31 provides an exhaustive list of five bases upon which the Union can decline to process charges, which otherwise must be tried. Id. The AC reviewed the Charges and determined that they were proper, i.e., that they "meet[] the criteria necessary to proceed to trial by the membership." Compl. ¶¶ 46, etc.; Apter Aff. Ex. 6; see also supra, § II(B)(2). Indeed, if

23

the AC had failed to review the Charges or to process them once determining they were proper, they would have been in direct violation of the UAW Constitution.

Therefore, if Plaintiffs were somehow able to satisfy the elements of a prima facie case—which they are not—the retaliation claims must still be dismissed because Defendants had a legitimate, non-discriminatory reason for processing the Charges. See, 107 F. Supp. at 309.

### C.    The NYCHRL does not apply to Plaintiffs' Long Island Employment.

Even if Plaintiffs could otherwise state a claim under the NYCHRL, their claims nevertheless fail because they do not allege any conduct by Defendants that impacted them in New York City. The NYCHRL does not protect employees who do not work in the City, unless the impact of the allegedly unlawful conduct was felt within the City. Hoffman v. Parade Publications, 15 N.Y.3d 285, 290 (2010) (refusing to expand "the territorial reach" of the NYCHRL "to cover any plaintiff who is terminated pursuant to a decision made by an employer from its New York City headquarters regardless of where the plaintiff works"); Vangas v. Montefiore Med. Ctr., 823 F.3d 174, 183 (2d Cir. 2016) ("the impact of the employment action must be felt by the plaintiff in NYC" (emphasis omitted)); Fried v. LVI Servs., Inc., No. 10 Civ. 9308(JSR), 2011 WL 4633985, at *13 (S.D.N.Y. Oct. 4, 2011) ("[Plaintiff] must prove that the decision to terminate his employment impacted him in New York City"), aff'd, 500 Fed. App'x. 39 (2d Cir.2012). In Hoffman, the Court of Appeals held that it was irrelevant that the decision to terminate the plaintiff's employment had been made in New York City, and that the plaintiff had attended quarterly meetings at the employer's City headquarters; neither fact was sufficient to establish that he had felt the impact of discrimination within City bounds. 15 N.Y.3d, at 288-92. It follows that union membership based upon employment outside New York City, is similarly not governed by the NYCHRL even where union headquarters are within the city. Plaintiffs

24

work in Nassau County (Compl. ¶¶ 27-29) and have not pled that any allegedly unlawful act impacted them in New York City. Accordingly, Count VIII must be dismissed.

   **D.      Plaintiffs fail to state a NYCHRL claim against any individual defendant.**

   Plaintiffs' NYCHRL claim against the individual defendants fails for the same reasons as their claims against the ALAA: First, the NYCHRL is not applicable to employment in Long Island. See supra, § III(C). Second, Plaintiffs fail to plead that they engaged in protected activity because they never identified any act they reasonably believed was unlawful under the NYCHRL. See supra, § III(A)(1). Third, even if Plaintiffs engaged in protected activity, the Rank-and-File Defendants articulated legitimate, non-discriminatory bases for the Charges (Plaintiffs undermined Union democracy and doxed fellow members), and the AC Defendants had a legitimate, non-discriminatory reason for processing them (the UAW Constitution's mandate to review and process charges unless "improper" thereunder). See supra, § III(B)(3). For all these reasons, the Court should dismiss Count VIII as against the individual defendants.

   **E.      Plaintiffs fail to state a NYSHRL claim against any individual defendant.**

   Plaintiffs also fail to state aiding and abetting claims against the individual defendants under the NYSHRL, N.Y. Exec. Law § 296(6) (making it unlawful for "any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this article, or to attempt to do so"). [A]iding and abetting is only a viable theory where an underlying violation has taken place." Falchenberg v. New York State Dep't of Educ., 338 F. App'x 11, 14 (2d Cir. 2009). Because Plaintiffs have not made out a claim against the Union for retaliation, they also have not adequately pled aiding and abetting liability on the part of any of the individual defendants, and the Court should dismiss Count VII.

## <u>CONCLUSION</u>

For all these reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety and with prejudice.

Dated:     October 28, 2024
           New York, New York                        LEVY RATNER, P.C.

                                        By:    Allyson L. Belovin
                                               Attorneys for Defendants
                                               80 Eighth Avenue, 8th Floor
                                               New York, New York 10011
                                               (212) 627-8100
                                               (212) 627-8182 (fax)
                                               abelovin@levyratner.com