## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

ILANA KOPMAR, DIANE T. CLARKE, and
ISAAC ALTMAN,

                                    Plaintiffs,

                                                      Case No.

-against-                                          1:24-cv-05158 (JPO)

THE ASSOCIATION OF LEGAL AID ATTORNEYS
AMALGAMATED LOCAL UNION 2325 OF THE
INTERNATIONAL UNION, UNITED AUTOMOBILE
AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA (UAW), AFL-CIO, and DANIELLE
WELCH, GERALD KOCH, EVA STEVENSON, CANDACE
GRAFF, LISA OHTA, BRET J. TAYLOR, EMILY C. EATON,
MARTYNA KAZNOWSKI, JEREMY BUNYANER, IOANA
CALIN, GILLIAN R. KRESS, PUJA PAUL, JACQUELINE
AGUILAR, BABATUNDE AREMU, CASEY BOHANNON,
MICHAEL GIBBONS, ALEXANDER HU, KELSEY LAING,
MARTHA MENENDEZ, HALLIE MITNIK, SEAN T.
PARMENTER, IAN SPIRIDIGLIOZZI, DOROTHY
SUMMERS, TANNER WIELAND, TORI ROSEMAN,
ANDREW SPENCE, COLLEEN FOLEY, and JULIA JENKINS,

                                    Defendants.

-------------------------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Paul Eckles
Rory Lancman
THE LOUIS D. BRANDEIS CENTER
FOR HUMAN RIGHTS UNDER LAW
1330 Avenue of the Americas, 23rd Fl.
New York, NY 10019
peckles@brandeiscenter.com
(917) 488-7025
rlancman@brandeiscenter.com
(917) 363-9004

*Counsel for Plaintiffs*

# **Table of Contents**

Page

Table of Authorities..................................................................................................... ii

PRELIMINARY STATEMENT.................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 2

    A.   The ALAA's Anti-Semitic Environment .............................................................. 2

    B.   Plaintiffs' State Court Lawsuit .............................................................................. 3

    C.   Defendants' Retaliation ......................................................................................... 4

    D.   Plaintiffs' UAW Appeal and EEOC Charge.......................................................... 5

ARGUMENT ................................................................................................................. 6

I.         PLAINTIFFS STATE CLAIMS UNDER THE LMRDA ...................................... 6

    A.   The LMRDA's "Right to Sue" Applies to the State Court Lawsuit................................ 6

    B.   The LMRDA's Right to "Freedom of Expression" Applies to the State Court Lawsuit. 7

        1.   "Freedom of Expression" Includes Speech Within Lawsuits ..................................... 8

        2.   The State Court Lawsuit Did Not Violate Any Duty to the UAW ............................... 9

        3.   The ALAA Violated its Duty to the UAW ...............................................................11

    C.   The Expulsion Proceeding Against Plaintiffs is Both "Discipline" and an Infringement of their Rights Under the LMRDA ................................................................................ 12

        1.   Plaintiffs Have Alleged Prohibited Discipline................................................. 12

        2.   Plaintiffs Have Alleged Infringement of Their Rights ...................................... 14

    D.   The Individual Defendants are Liable.................................................................... 15

        1.   The Charging Defendants Acted Under Color of Union Authority ........................ 15

        2.   The Amalgamated Council Defendants Were Not Ministerial Actors..................... 16

II.        PLAINTIFFS STATE CLAIMS FOR RETALIATION UNDER FEDERAL, STATE, AND LOCAL ANTI-DISCRIMINATION LAWS .................................................... 18

    A.   Plaintiffs Engaged in Protected Activity................................................................ 19

    B.   The Disciplinary Proceeding is a Materially Adverse Employment Action that Would Dissuade a Reasonable Union Member from Making or Supporting a Charge of Discrimination ........................................................................................................ 21

    C.   Plaintiffs Allege "Impact" Within NYC Under the NYC-HRL.................................... 23

    D.   Plaintiffs State NYS-HRL and NYC-HRL Claims Against the Individual Defendants 24

CONCLUSION................................................................................................................ 25

Table of Authorities

Page(s)

**Statutes**

28 U.S.C. § 1441 ........................................................................................................4

29 U.S.C. § 411 ..........................................................................................................6

29 U.S.C. § 411(a)(2) .................................................................................................8

29 U.S.C. § 411(a)(2), § 412 and § 529 ....................................................................2

29 U.S.C. § 411(a)(4) .............................................................................................2, 7

29 U.S.C. (§ 412) ...................................................................................................14,15

29 U.S.C. (§ 529) ...................................................................................................14,15

42 U.S.C. § 2000e-3(a) .............................................................................................18

**Cases**

*AFL-CIO-CLC v. Sadlowski*,
    457 U.S. 102 (1982) ............................................................................................ 7

*Albunio v. City of New York*,
    16 N.Y.3d 472 (2011) ........................................................................................ 19

*Berg v. Watson*,
    417 F. Supp. 806 (S.D.N.Y. 1976) .................................................................... 17

*Brenner v. Loc. 514, United Bhd. of Carpenters & Joiners of Am.*,
    927 F.2d 1283 (3d Cir. 1991) ............................................................................ 14

*Buon v Spindler*,
    65 F.4th 64 (2d Cir. 2023) ................................................................................. 19

*Burgos v. City of New York*,
    2019 WL 1299461 (S.D.N.Y. Mar. 21, 2019) .................................................. 22

*Burlington N. & Santa Fe Ry. Co. v. White*,
    548 U.S. 53 (2006) ............................................................................................. 22

*Campbell v. New York City Transit Auth.*,
    93 F. Supp. 3d 148 (E.D.N.Y. 2015), aff'd, 662 F. App'x 57 (2d Cir. 2016) ............ 22

*Clarke, et al. vs The Association of Legal Aid Attorneys, et al.*,
    Index No. 618764/2023 (Sup. Ct. Nassau Cnty., Nov 16, 2023) .................... 3

*Clarke, et al. vs The Association of Legal Aid Attorneys, et.al.*,
    2:23-CV-8869 (E.D.N.Y. Dec 1, 2023) ............................................................. 4

*Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*,
    555 U.S. 271 (2009) ........................................................................................... 20

*Dodd v. City Univ. of New York*,
  489 F. Supp. 3d 219 (S.D.N.Y. 2020)................................................................ 22

*Doe v. Bloomberg, L.P.*,
  36 N.Y.3d 450 (2021) ........................................................................................ 24

*Falchenberg v. New York State Dep't of Educ.*,
  338 F. App'x 11 (2d Cir. 2009)......................................................................... 24

*Farrell v. Hellen*,
  2004 WL 433802 (S.D.N.Y. Mar. 10, 2004) ................................................... 15

*Franza v. Int'l Bhd. of Teamsters, Loc. 671*,
  869 F.2d 41 (2d Cir. 1989) ............................................................................... 10

*Grant v. Commc'ns Workers of Am., Loc.* 1101,
  2018 WL 1626167 (S.D.N.Y. Mar. 29, 2018) ................................................. 13

*Helmer v. Briody*,
  759 F. Supp. 170 (S.D.N.Y. 1991)...................................................................... 9

*Hoffman v. Parade Publications*,
  15 N.Y.3d 285 (2010)........................................................................................ 23

*Johnson v. Univ. of Cincinnati*,
  215 F.3d 561 (6th Cir. 2000) ............................................................................ 20

*Kazolias v. IBEWLU 363*,
  806 F.3d 45 (2d Cir. 2015) ............................................................................... 10

*Lacy v. Highway & Loc. Motor Freight Emps. Loc. Union No. 667*,
  620 F.2d 303 (6th Cir. 1980) .............................................................................. 8

*Lacy v. Highway & Motor Freight Emps., Loc. 667*,
  1978 WL 1735 (W.D. Tenn. Apr. 3, 1978) ........................................................ 8

*Leavey v. Int'l Bhd. of Teamsters--Theatrical Teamsters Loc. Union No.* 817,
  2015 WL 5802901 (S.D.N.Y. Oct. 5, 2015) ...................................................... 9

*Loekle v. Hansen*,
  551 F. Supp. 74 (S.D.N.Y. 1982)...................................................................... 10

*Maxwell v. United Auto., Aerospace & Agr. Implement Workers of Am. (UAW), Loc. No. 1306*,
  489 F. Supp. 745 (C.D. Ill. 1980)..................................................................... 16

*McMenemy v. City of Rochester*,
  241 F.3d 279 (2d Cir. 2001).............................................................................. 21

*Morrissey v. Nat'l Mar. Union of Am.*,
  544 F.2d 19 (2d Cir. 1976)................................................................................ 15

*Newell v. Wisconsin Teamsters Joint Council No. 39*,
  2008 WL 2356097 (E.D. Wis. Feb. 21, 2008)................................................. 10

*Nezaj v. PS450 Bar & Rest.*,
  719 F. Supp. 3d 318 (S.D.N.Y. 2024)................................................... 18, 22, 24

*Pearson v. Massachusetts Bay Transp. Auth.*,
   723 F.3d 36 (1st Cir. 2013) .................................................................... 20

*Petramale v. Loc. No. 17 of Laborers Int'l Union of N. Am.*,
   736 F.2d 13 (2d Cir. 1984). ...................................................................... 8

*Regan v. Ohio Barge Line, Inc.*,
   227 F. Supp. 1013 (S.D.N.Y. 1964) ........................................................ 15

*Rivera v. Feinstein*,
   636 F. Supp. 159 (S.D.N.Y. 1986) .......................................................... 13

*Rodonich v. House Wreckers Union Loc. 95 of Laborers' Int'l Union*,
   817 F.2d 967 (2d Cir. 1987) ............................................................... 8, 17

*Rosario v. Amalgamated Ladies' Garment Cutters' Union, Loc. 10*, I.L.G.W.U.,
   605 F.2d 1228 (2d Cir. 1979) .......................................................... 13, 16

*Salzhandler v Caputo*,
   316 F.2d 445 (2d Cir. 1963) ............................................................... 6, 8

*Scalercio-Isenberg v. Morgan Stanley Services Group, Inc.*,
   2019 WL 6916099 (S.D.N.Y. Dec. 19, 2019) ......................................... 23

*Scarbrough v. Bd. of Trustees Fla. A&M Univ.*,
   504 F.3d 1220 (11th Cir. 2007) .............................................................. 20

*Schermerhorn v. Loc. 100, Transp. Workers Union of Am., AFL-CIO*,
   91 F.3d 316 (2d Cir. 1996) ..................................................................... 12

*Schonfeld v. Penza*,
   477 F.2d 899 (2d Cir. 1973) ................................................................... 14

*Semancik v. United Mine Workers of Am. Dist. No. 5*,
   466 F.2d 144 (3d Cir. 1972) ..................................................................... 8

*Sheet Metal Workers' Intern. Ass'n v Lynn*,
   488 US 347 (1989) .................................................................................... 7

*Swiderski v. Urban Outfitters, Inc.*,
   2017 WL 6502221 (S.D.N.Y. Dec. 18, 2017) .................................... 21, 25

*Syeed v. Bloomberg L.P.*,
   41 N.Y.3d 446 (2024) .............................................................................. 23

*Thompson v. New York Cent. R. Co.*,
   361 F.2d 137 (2d Cir. 1966) ................................................................... 15

*Toner v. United Bhd. of Carpenters*,
   1999 WL 638602 (N.D. Ill. Mar. 30, 1999) .............................................. 9

*UAW Local Union 2865, et al. in the Matter of Brumbaugh v. UAW Local Union 2865 Joint
   Council*, PRB Case No. 1747 (May 16, 2016) ........................................ 11

*United Steelworkers of Am., AFL-CIO-CLC v. Sadlowski*,
   457 U.S. 102 (1982) .................................................................................. 7

*Vaca v. Sipes*,
  386 U.S. 171 (1967) .................................................................................. 20

*Vega v Hempstead Union Free School Dist.*,
  801 F.3d 72 (2d Cir. 2015) ...................................................................... 19

*Yerdon v. Henry*,
  91 F.3d 370 (2d Cir. 1996) ...................................................................... 21

**Other Authorities**

N.Y. Exec. Law § 296(6) ...................................................................... 18, 24

N.Y. Exec. Law § 296(7) ...................................................................... 18, 24

N.Y.C. Admin Code § 8-107(7) ........................................................... 18, 22

N.Y.C. Admin. Code § 8–130(a) ............................................................... 19

## PRELIMINARY STATEMENT

Plaintiffs are attorneys employed by the Legal Aid Society of Nassau County and during the events described herein members of UAW Local 2325, the Association of Legal Aid Attorneys ("the ALAA"), who are unlawfully facing expulsion from the union in retaliation for their having successfully petitioned a New York state court to block a vote on a blatantly anti-Semitic resolution concerning the Israel/Hamas war proposed amidst a deeply anti-Semitic hostile environment at the ALAA.[1]

Significantly, the relevant facts are largely undisputed. In their motion to dismiss, Defendants do not seriously contest the anti-Semitic conduct at the heart of this dispute. Nor do they contest that they retaliated against Plaintiffs for seeking judicial relief. Indeed, the retaliatory animus behind the expulsion effort was not hidden, but rather proudly, gleefully, and contemptuously expressed by the ALAA members who, under color of the authority granted them by Article 31 of the UAW International Constitution, filed charges against Plaintiffs immediately after Plaintiffs commenced their lawsuit. Defendants instead seek to obfuscate the issues by proffering their bigoted, discriminatory resolution (which they had no authority under the UAW Constitution to vote upon) as the real free speech at issue.

Contrary to Defendants' arguments, the Second Amended Complaint ("SAC") states valid claims for violations of the Labor-Management Reporting and Disclosure Act ("the LMRDA") which protects union members from retaliation for (i) suing to protect their labor rights, 29

---

[1] Plaintiffs Kopmar and Altman are no longer ALAA or UAW members but seek damages for the harm they suffered. Plaintiff Clarke remains an ALAA member, as does nonparty David Rosenfeld, who also faces expulsion on the same grounds. As described herein, Clarke and Rosenfeld, are both appealing the charges against them within the UAW's appeal process.

U.S.C. § 411(a)(4), and (ii) exercising their freedom to express their opposition to discriminatory conduct within their union, 29 U.S.C. § 411(a)(2), § 412 and § 529. The filing of expulsion charges in response to Plaintiffs' State Court Lawsuit clearly constitutes prohibited retaliation within the meaning of the LMRDA.

The SAC also states valid claims under federal (Title VII), state, and city anti-discrimination statutes, which also prohibit retaliation for opposing discrimination. Plaintiffs have plausibly alleged that (a) they engaged in protected activity in filing the State Court Lawsuit, and (b) Defendants took adverse action against them in retaliation in instituting expulsion proceedings, which is all that is required to be pled to defeat a motion to dismiss.

## STATEMENT OF FACTS

### A. The ALAA's Anti-Semitic Environment

The ALAA represents approximately 3,000 legal services professionals, including Plaintiffs, at approximately thirty non-profit legal services providers in the New York City area, including Plaintiffs' employer, the Legal Aid Society of Nassau County. *SAC* ¶¶ 27-31.

Immediately after the October 7, 2023, terrorist attack by Hamas in southern Israel, a campaign against the Jewish state of Israel began within the ALAA. The campaign came to permeate the ALAA's "Gaggle Mail" system (an electronic platform for intra-union communication), the ALAA's public pronouncements, and its social media. The campaign of hate created an anti-Semitic hostile environment for Jewish ALAA members for whom Zionism is an essential part of their Jewish identity. The campaign also came directly at individual Jewish ALAA members who opposed the anti-Semitic onslaught, challenging their fitness to serve the marginalized clients that they have collectively served for decades.

As alleged in painful detail in the SAC, the anti-Semitic expressions within the ALAA represented a cornucopia of classic and modern anti-Semitism. *SAC* ¶¶ 120-133. The culmination

of this anti-Semitic campaign was a resolution in the form of an 1,147-word diatribe against Israel, including accusing it of "colonial apartheid occupation," "the ethnic cleansing and dispossession of the Palestinian people" and "genocide," and calling for "the right of all Palestinian refugees to return to their homeland." Apter Aff. [ECF 55] at Ex. 2 The Hamas massacre merited only seven words of passing mention as "the violent tragedy on October 7, 2023." *SAC* ¶¶ 134-141.

The ALAA's various anti-Semitic resolutions and statements astonished even the non-profit legal services providers employing ALAA's members. The resolutions and statements were denounced and disavowed by The Legal Aid Society, The Bronx Defenders organization, the New York Legal Assistance Group, and Plaintiffs' own employer, the Legal Aid Society of Nassau County. *SAC* ¶¶ 11-14.

Nonetheless, at a meeting of the Joint Council on the evening of November 14, 2023, the resolution was passed forward for a membership vote on November 17, 2023. *SAC* ¶¶ 113-140.

**B.  Plaintiffs' State Court Lawsuit**

On November 16, 2023, Plaintiffs filed suit in state court, *Clarke, et al. vs The Association of Legal Aid Attorneys, et al.*, Index No. 618764/2023 (Sup. Ct. Nassau Cnty., Nov. 16, 2023) (the "State Court Lawsuit"), alleging that the ALAA resolution violated the ALAA's duty of fair representation and breached Plaintiffs' contractual rights.

Plaintiffs also sought a temporary restraining order ("TRO") halting the vote on the ALAA resolution. *SAC* ¶ 142. Among other things, Plaintiffs alleged that the resolution constituted "extreme, rank antisemitism," *SAC* ¶ 143, and would, if passed, impair their ability to satisfy their obligations as public defenders to provide adequate representation to Jewish clients who would be rightfully hesitant to trust attorney members of a union who produced "such a

venomously antisemitic statement/Resolution." *SAC* ¶ 143.

The next day, November 17, 2023, in support of their application for a TRO, Plaintiffs submitted evidence to the court in the form of quotes and exhibits illustrating the anti-Semitic discriminatory expressions on the union's Gaggle Mail system. *SAC* ¶ 145. Later that afternoon, after a conference call conducted by the court which included counsel for both sides, the court issued a TRO blocking completion of the vote on the resolution (which had already commenced that morning) and ordered a further hearing on the matter on November 21, 2023. *SAC* ¶ 146.

At the conclusion of the hearing on November 21, 2023, the court extended the TRO pending further decision by the court, which was promised within thirty days. Thus, the state court twice sided with Plaintiffs in imposing and maintaining a TRO blocking the anti-Semitic ALAA resolution from being considered. *SAC* ¶¶ 147-148.

Before the state court could rule any further, however, the ALAA removed the matter to federal court pursuant to 28 U.S.C. § 1441. *Clarke, et al. vs The Association of Legal Aid Attorneys, et.ai.,* 2:23-CV-8869 (E.D.N.Y. Dec 1, 2023). After a hearing, the federal court dissolved Plaintiffs' TRO and the ALAA membership passed the resolution on December 19, 2023, with approximately a third of those voting opposing the resolution. *SAC* ¶ 152.[2]

Given the passage of the resolution, Plaintiffs then voluntarily dismissed their suit without prejudice. *SAC* ¶ 153.

C. **Defendants' Retaliation**

In response to Plaintiffs' State Court Lawsuit, Plaintiffs were subjected to a barrage of

---

[2] Although the federal court disagreed with the state court's conclusion that the resolution was necessarily motivated by discriminatory animus, it "acknowledge[d] the plaintiffs' feelings of deep, deep hurt, offense, disgust, by the content and the viewpoint of the proposed resolution. The Court understands that plaintiffs vehemently disagree with the resolution. Those are intense and <u>sincere</u> feelings." Apter Aff., Ex. 5 at 67 (emphasis added). While Plaintiffs disagree with the court's non-binding conclusion about the resolution, as demonstrated below, the fact that Plaintiffs indisputably acted in good faith in filing the State Court Complaint, means that Defendants were prohibited from retaliating against them under the LMRDA and federal, state, and city anti-discrimination laws.

unlawful retaliatory conduct, including frequent accusations that Plaintiffs were "snitching," culminating in the current effort to expel them from the ALAA entirely. *SAC* ¶¶ 152-157.

The retaliatory animus behind the expulsion was not hidden, but rather proudly, gleefully, and contemptuously expressed by the four ALAA members (Danielle Welch, Gerald Koch, Eva Stevenson, and Candace Graff, hereinafter, "the Charging Defendants") who, under color of the authority granted them by Article 31 of the UAW International Constitution, filed charges against Plaintiffs immediately after Plaintiffs commenced the State Court Lawsuit. *SAC* ¶¶ 158-161.

Despite the patent unlawfulness of the charges as rank retaliation against Plaintiffs, the ALAA Amalgamated Council, and in particular, Amalgamated Council members Defendants Lisa Ohta, Bret J. Taylor, Emily C. Eaton, Martyna Kaznowski, Jeremy Bunyaner, Ioana Calin, Gillian R. Kress, Puja Paul, Jacqueline Aguilar, Babatunde Aremu, Casey Bohannon, Michael Gibbons, Alexander Hu, Kelsey Laing, Martha Menendez, Hallie Mitnik, Sean T. Parmenter, Ian Spiridigliozzi, Dorothy Summers, Tanner Wieland, Tori Roseman, Andrew Spence, Colleen Foley, and Julia Jenkins ("the Amalgamated Council Defendants"), approved the charges and directed that a trial of Plaintiffs be held. *SAC* ¶¶ 162-166.

**D.  <u>Plaintiffs' UAW Appeal and EEOC Charge</u>**

Plaintiffs appealed the decision to the UAW International Executive Board ("IEB") which had the effect of staying the trial process pending resolution of Plaintiffs' appeal. *SAC* ¶ 167. Plaintiffs filed charges with the Equal Employment Opportunity Commission ("EEOC") on June 4, 2024, and immediately requested "right to sue" letters enabling them to commence this lawsuit. *SAC* ¶¶ 24-26.

On or about June 25, 2024, the EEOC served Plaintiffs' charges on the ALAA, and suddenly, the next day, June 26, 2024, the UAW IEB summarily denied Plaintiffs' appeal in a

cursory decision that failed to address *any* of Plaintiffs' allegations that the charges violate the LMRDA, Title VII, the NYS-HRL, and the NYC-HRL.

Plaintiffs appealed the IEB's decision to the UAW Public Review Board ("PRB") (the highest arbiter within the UAW), which has scheduled a hearing on January 31, 2025.

But significant damage has already been done to Plaintiffs and others who might contemplate opposing unlawful discrimination at the ALAA as the effort to expel Plaintiffs is a powerful deterrent to exercising their rights (which, indeed, is the openly admitted purpose behind the charges against Plaintiffs).

## ARGUMENT

## I.    PLAINTIFFS STATE CLAIMS UNDER THE LMRDA

The LMRDA contains a "Bill of rights" for union members. 29 U.S.C. § 411. Among other rights, it guarantees union members (i) the right to sue their union and its officers (§ 411(a)(4)) and (ii) freedom of speech and assembly (§ 411(a)(2)). Further, the LMRDA "makes doubly secure the protection of the members in the exercise of their rights" by prohibiting unions from seeking to "fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this Act." *Salzhandler v Caputo*, 316 F.2d 445, 449 (2d Cir. 1963).

### A.    The LMRDA's "Right to Sue" Applies to the State Court Lawsuit

The LMRDA, in a section labeled "Protection of the right to sue," provides in relevant part that "No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding." 29 U.S.C. § 411(a)(4). Here, the SAC alleges retaliatory conduct based on Plaintiffs' filing of the State Court Lawsuit. Defendants concede that the expulsion charges

against Plaintiffs are in response to the State Court Lawsuit.

As a result, Defendants make only the rhetorical argument that "[t]he LMRDA should not be weaponized against free speech." (Defs. Mem. at 17.) Neither case Defendants cite remotely supports their argument. *Sheet Metal Workers' Intern. Ass'n v Lynn*, 488 US 347 (1989), supports Plaintiffs' claims, as the Supreme Court there held that (a) union official's statements made at a union meeting opposing a dues increase sought by the union trustee constituted free speech and (b) removing the official in retaliation for those statements violated the LMRDA. *United Steelworkers of Am., AFL-CIO-CLC v. Sadlowski,* 457 U.S. 102, 121 (1982), has no relevance here, as that case concerned the reasonableness of a union rule prohibiting candidates for union office from accepting campaign contributions from individuals who are not members of the union.

Defendants also offer the *ipse dixit* that "even in a lawsuit" "[t]here is no LMRDA right to gratuitously and recklessly dox fellow Union members [as antisemitic.]" (Defs. Mem. at 18.) Defendants' argument is not only absurd but also contrary to law. If naming someone as a defendant in a discrimination lawsuit and submitting evidence supporting the claim constitutes "doxing," then all plaintiffs in discrimination lawsuits are guilty of doxing. Nor is purported "doxing" a defense to any of the claims at bar. It is unsurprising, then, that Defendants cite no authority for their argument.

**B.** **The LMRDA's Right to "Freedom of Expression" Applies to the State Court Lawsuit**

In addition to the right to sue, Plaintiffs have also stated claims (Counts III and IV) for retaliation and infringement of their freedom of expression under the LMRDA. 29 U.S.C. § 411(a)(2) ("Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions"). Union members

are given the strongest protection possible against union retaliation for the content of their speech criticizing the union, its officials, and its policies, "and that leeway for the expression of strongly held views in emotional terms, even when they amount to slander." *Petramale v. Loc. No. 17 of Laborers Int'l Union of N. Am.*, 736 F.2d 13, 17 (2d Cir. 1984). *See also Rodonich v. House Wreckers Union Loc. 95 of Laborers' Int'l Union*, 817 F.2d 967, 975 (2d Cir. 1987) ("There is no question that discipline of a union member for even libelous speech is a violation of the LMRDA."); *see also Salzhandler v Caputo*, 316 F.2d 445, 446 (2d Cir. 1963).

Defendants make two arguments as to why Plaintiffs' "freedom of expression" claims should be dismissed. They argue that (i) the LMRDA does not protect speech within lawsuits, and (ii) Plaintiffs' speech within the State Court Action violated a duty to the UAW. As demonstrated below, both arguments are irrefutably wrong, and it was the ALAA Resolution that Plaintiffs sought to block that violated a duty to the UAW.

### 1.   **"Freedom of Expression" Includes Speech Within Lawsuits**

Defendants erroneously argue that speech within lawsuits is not protected speech under 101(a)(2), and that the LMRDA protects speech only "in the context of the union democratic process, i.e. political speech primarily addressed to other union members, rather than free speech at large." (Def. Mem. at 13.) But Defendants' argument is belied by the very cases they cite. *See e.g., Lacy v. Highway & Motor Freight Emps., Loc. 667*, 1978 WL 1735, at *3 (W.D. Tenn. Apr. 3, 1978), *aff'd sub nom. Lacy v. Highway & Loc. Motor Freight Emps. Loc. Union No. 667*, 620 F.2d 303 (6th Cir. 1980) ("[W]hen a union member seeks to invoke judicial or administrative processes guaranteed to him under the labor laws of the United States, the union cannot punish the member for the speech involved in those acts."). *Lacy* itself relied on *Semancik v. United Mine Workers of Am. Dist. No. 5*, 466 F.2d 144 (3d Cir. 1972), where the union brought

disciplinary charges against a member for allegedly harmful assertions made in a claim against the union before the NLRB. The *Semancik* court affirmed an injunction against the union's disciplinary proceedings because "when [the union member] seeks to invoke judicial or administrative processes guaranteed to him under the labor laws of the United States, the union cannot punish the speech involved in those appeals." *Id.* at 153.

None of the other cases cited by Defendants involves public speech within a lawsuit; to the contrary, they all involve private speech made during an outside investigation of the union or as a complaint to one's boss. *See e.g. Helmer v. Briody*, 759 F. Supp. 170, 177 (S.D.N.Y. 1991) (union member's cooperation with authorities investigating corruption is not speech protected by LMRDA where there was "[n]o evidence . . . that he ever voiced his belief in the corruption . . . to his fellow members"); *Toner v. United Bhd. of Carpenters*, 1999 WL 638602, at *7 (N.D. Ill. Mar. 30, 1999) (member's "statements detrimental to the union to a court-appointed union monitor" are not protected by the LMRDA); *Monaco v. Smith*, 2004 WL 203009 (S.D.N.Y. Feb. 2, 2004) (member's criticism of the union to his supervisor is not protected by LMRDA); *Leavey v. Int'l Bhd. of Teamsters--Theatrical Teamsters Loc. Union No. 817*, 2015 WL 5802901, at *9 (S.D.N.Y. Oct. 5, 2015) (member's "complaints, letters, and grievances" to the union's executive board is not free speech protected by the LMRDA).

Here, Defendants seek to punish Plaintiffs for public speech on union affairs made in a lawsuit seeking judicial relief against the union. That falls squarely within LMRDA protection.

## 2.  <u>The State Court Lawsuit Did Not Violate Any Duty to the UAW</u>

Defendants argue that under some circumstances an individual members' free speech rights can be outweighed by the interests of the union as an institution. (Def. Mem. at 14-15.) But the cases cited by Defendants do not support this argument, particularly in the given

circumstances, for the very sensible reason that doing so would eviscerate the LMRDA. They involve efforts to extend the LMRDA's protections outside the realm of protecting union rights, speech that was knowingly false, or speech that merely expressed union members' personal grievances toward union officials who mistreated them. *See, e.g., Franza v. Int'l Bhd. of Teamsters, Loc. 671*, 869 F.2d 41, 48 (2d Cir. 1989) (distinguishing between union membership, which the LMRDA protects, and union (or pension fund plan) employment, which the LMRDA does not); *Loekle v. Hansen*, 551 F. Supp. 74, 82 (S.D.N.Y. 1982) (recognizing exception to principle that even slanderous speech is protected under the LMRDA for speech that constitutes "knowingly false or misleading statements of fact"); *Newell v. Wisconsin Teamsters Joint Council No. 39*, 2008 WL 2356097, at *8 (E.D. Wis. Feb. 21, 2008) ("permitting unions to discipline union members for filing frivolous charges will not undermine the protections that Congress sought to establish for union members when it passed the LMRDA"); *Kazolias v. IBEWLU 363*, 806 F.3d 45, 51 (2d Cir. 2015) (distinguishing between plaintiffs' claims of personal wrongs done to them and only them, which the LMRDA was not designed to protect, from "speech that concerns union governance and union affairs," which is at the core of LMRDA's protection).

None of the principles cited in Defendants' case law applies here at all, much less at the pleading stage. Defendants do not argue that Plaintiffs made any false statements in their State Court Lawsuit, much less knowingly false statements. Nor have Defendants ever contended that the State Court Lawsuit was frivolous. Indeed, the court granted Plaintiffs' initial application and then extended the TRO after a full hearing on the matter. And Plaintiffs' claims undeniably represent "speech that concerns union governance and union affairs."

### 3.  <u>The ALAA Violated its Duty to the UAW</u>

It is well established that a local union may not adopt an official position that is contrary to the position of the UAW itself. *UAW Local Union 2865, et al. in the Matter of Brumbaugh v. UAW Local Union 2865 Joint Council*, PRB Case No. 1747 (May 16, 2016) (hereinafter "*Brumbaugh*") (available at https://prbuaw.org/wp-content/uploads/2020/02/1747.pdf) (holding that UAW Constitution prohibits "a local union, acting in response to a motion presented at a membership meeting, [from] adopt[ing] its own official position on an issue that is contrary to one endorsed by an International Union President and affirmed by the Regional Director as the official position of the UAW."). *Brumbaugh* addressed this issue in the context of a pro-BDS resolution adopted by a local union, much like the ALAA Resolution at issue here. A union member objected on grounds very similar to those raised by Plaintiffs here – that the resolution amounted to "discrimination and vilification."

The IEB granted the objector's appeal, finding that "it is our unanimous belief that the notion of BDS, credibly, espouses discrimination and vilification against Israelis and UAW members who are of Jewish lineage," and nullified the resolution. The local union appealed the decision to the PRB (the highest arbiter within the UAW). The PRB affirmed the decision because the local union's pro-BDS resolution conflicted with the official position of the UAW. *Id.* at 26 ("The motion adopted by the local union purporting to give UAW backing to the BDS movement was beyond the authority of Local Union 2865 and so was properly nullified by the IEB.").[3]

Significantly, the UAW has never announced any change in its position on the BDS movement since *Brumbaugh*. Further, the UAW issued a statement on the current Israel-Palestine

---

[3] The UAW's unequivocal position opposing both the BDS movement and the right of local unions to formulate their own policies and positions, which was accepted by the PRB, is explained on pages 16-20 of *Brumbaugh*.

conflict that materially conflicts with the ALAA Resolution. *"UAW Statement on Israel and Palestine,"* https://uaw.org/uaw-statement-israel-palestine/ *(which links to "The US Labor Movement Calls for Ceasefire in Israel and Palestine,"* https://secure.everyaction.com/w1qW7B3pek2rTtv9ny5bqw2 (accessed on Dec. 19, 2024). Contrary to the ALAA Resolution and consistent with the UAW's longstanding position, the UAW International statement (i) fails to support the BDS movement, (ii) fails to call on employers to support the BDS movement, (iii) fails to condemn Israel or refer to it as an apartheid state, and (iv) instead articulates an even-handed stance on the conflict that expresses mourning for the loss of life in both Israel and Palestine and calls for both the release of all hostages and a ceasefire. *Id.*

Thus, Defendants are effectively arguing that their bigoted *ultra vires* resolution that conflicts with the UAW's position somehow trumps Plaintiffs' federal rights under the LMRDA.

## C.  The Expulsion Proceeding Against Plaintiffs is Both "Discipline" and an Infringement of their Rights Under the LMRDA

Defendants also argue that Plaintiffs' LMRDA claims should be dismissed because the disciplinary proceedings are still ongoing and have not yet culminated in "discipline." (Defs. Mem. at 9.) In fact, as demonstrated below, the expulsion proceeding itself constitutes discipline under the LMRDA. Defendants also wholly ignore that, while Plaintiffs' second (right to sue) and fourth (freedom of expression) claims, are based on prohibited *discipline*, Plaintiffs' first (right to sue) and third (freedom of expression) claims, are based on an *infringement* of Plaintiffs' rights, which it also actionable under the LMRDA.

### 1.  Plaintiffs Have Alleged Prohibited Discipline

Defendants seek support in *Schermerhorn v. Loc. 100, Transp. Workers Union of Am., AFL-CIO*, 91 F.3d 316 (2d Cir. 1996), which considered whether a reprimand issued at the

conclusion of a disciplinary process counted as discipline under § 529 (it does). Defendants also cite *Rivera v. Feinstein*, 636 F. Supp. 159 (S.D.N.Y. 1986), which considered whether a union member could preliminarily enjoin a disciplinary proceeding (he could not). The *Rivera* decision was based heavily on the fact that the plaintiff was seeking an injunction; the court found that the plaintiff had not alleged "irreparable injury to speech rights" and that the defendants "did express a colorable concern, based on [plaintiff's] own evasiveness, that the organizers of [an internal union faction] were engaging in dual unionism." *Rivera*, 636 F. Supp. at 163. As a result, there was no basis to enjoin the proceedings from continuing.

Defendants ignore that damages claims do not depend on the outcome of the disciplinary process where the disciplinary charges are pursued in bad faith. *See, e.g., Rosario v. Amalgamated Ladies' Garment Cutters' Union, Loc. 10, I.L.G.W.U.*, 605 F.2d 1228, 1245 (2d Cir. 1979) (internal citations omitted) ("if the charges were prosecuted in bad faith or for an improper motive such as retaliation, [union member may recover damages] for harm attributable to the prosecution itself, even if the member was acquitted or his conviction was reversed on appeal within the union or to a court."); *see also Grant v. Commc'ns Workers of Am., Loc. 1101*, 2018 WL 1626167, at *5, n.2 (S.D.N.Y. Mar. 29, 2018) (citing *Rosario*) ("The National Union's reversing and vacating the decision and penalties is not an impediment to Grant's damages claims in this action.").

Plaintiffs here expressly allege that "[t]he charges and disciplinary proceedings were brought and are being conducted in bad faith" in violation of their rights under the LMRDA. *SAC.* ¶ 207. Plaintiffs' claim of bad faith is supported by overwhelming factual allegations, including the anti-Semitic environment in which these charges were filed and the vitriolic hatred directed at Plaintiffs for bringing the State Court Lawsuit. This includes demonizing Plaintiffs as

"snitches," "losers," "disgusting," "dictators in training," and, of course, "Zionist ghouls." *SAC* ¶ 156-57. Significantly, Defendants conspicuously do not argue that the complaint fails adequately to allege bad faith within the meaning of the LMRDA. Thus, even if Plaintiffs ultimately prevail in their appeal to the Public Review Board, that does not eliminate their right to recover damages for Defendants' bad faith charges.

## 2.   Plaintiffs Have Alleged Infringement of Their Rights

Defendants wholly ignore Plaintiffs' first and third claims based on an *infringement* (§ 412) of their rights, which requires less than a member being *disciplined* (§ 529) for exercising that right. Indeed, courts have been explicit that failing to show § 529 "discipline" does not preclude prevailing under § 412, which "provides a cause of action to any person whose rights secured by the provisions of Title I of the LMRDA have been infringed by any violation of Title I." *Brenner v. Loc. 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1298 (3d Cir. 1991). Thus, courts have recognized § 412 infringement claims without any formal disciplinary action against the union member asserting the claim. *See, e.g., Schonfeld v. Penza*, 477 F.2d 899, 903–04 (2d Cir. 1973) ("federal courts need not necessarily wait to intervene until some sanction is directly imposed on union dissidents, for once suppressed 'the democratic spirit' within a union 'may not soon be revived.'"). Indeed, where, as here, the charges are pretextual, they impede or infringe upon a union member's protected free expression rights:

> Moreover, these allegations are supplemented by those in the Schonfeld complaint that the charges against Schonfeld were pretextual, that they were brought for the purpose of suppressing opposition and dissent within the union, and that they were "an expression of an anti-democratic policy and practice pursued over the past twenty years" which included a policy of "bringing charges or causing charges to be brought against those who exercise freedoms of speech, press, and assembly in their opposition."

*Schonfeld*, 477 F.2d at 903.

Here, whether characterized as discipline under § 529 or an infringement under § 412, Plaintiffs may seek damages for the bad faith charges pending against them. There is no requirement that they receive punishment before exercising their rights under the LMRDA.

**D. The Individual Defendants are Liable**

**1. The Charging Defendants Acted Under Color of Union Authority**

Legal accountability for breaches of the LMRDA extends beyond the union itself to reach individuals "acting under color of union authority." *Morrissey v. Nat'l Mar. Union of Am.*, 544 F.2d 19, 24 (2d Cir. 1976). Defendants' reliance on *Thompson v. New York Cent. R. Co.*, 361 F.2d 137 (2d Cir. 1966), *Farrell v. Hellen*, 2004 WL 433802 (S.D.N.Y. Mar. 10, 2004) and *Regan v. Ohio Barge Line, Inc.*, 227 F. Supp. 1013 (S.D.N.Y. 1964), are misplaced as none supports the proposition that an individual "acting under color of union authority" must *also* be either a union official or an individual acting on the union's behalf (i.e., as the union's agent).

*Thompson* stands for the proposition that the LMRDA "regulates only the relationship between the union and its members and not that between an employer and his employees." 361 F.2d at 145. Similarly, the court in *Farrell* held that it would be improper to characterize the general counsel as an agent of the union because, rather than exercising union authority, his role was to advise union officers on how *they* should exercise *their* union authority. *2004 WL 433802 at \*5.*[4] *Regan* makes a passing reference that eight "officers, agents and authorized representatives" of the union could not be sued individually under the LMRDA "since they are

---

[4] *Farrell* did consider the general counsel's potential liability under the LMRDA for a single bit of conduct that could not be characterized as merely rendering advice, i.e., where he was "alleged to have acted outside his capacity as counsel … when he purportedly directed Executive Board members to circulate a leaflet describing the charges against the dissidents." *Id.* at \*6. The court considered the merits of this claim of individual liability despite having already concluded that the general counsel was neither a union official nor an agent of the union because, as Plaintiffs argue here, being neither a union official nor an agent of the union is not a bar to individual LMRDA liability. The claim against the general counsel was dismissed only because the court concluded that his actions directing the distribution of a leaflet could not have the requisite "purpose or effect of stifling the free speech of union members" to make out a viable LMRDA claim. *Id.*

not alleged to have acted to plaintiffs' detriment in the capacity of agents for District 50." 227 F.
Supp. at 1013-1014 (emphasis added). There is no mention of whether any were acting under
"color of union authority."

Defendants' proposed limitation also makes no sense. Union officials are potentially
liable for all their wrongful acts, including those beyond the scope of their authority. *See Rosario
v. Amalgamated Ladies' Garment Cutters' Union, Loc. 10, I.L.G.W.U.*, 605 F.2d 1228, 1246 (2d
Cir. 1979) ("[n]or, in the case of union officials, should liability be limited to their acts within the
scope of their authority").

The "acting under color of union authority" language thus exists to extend liability to
non-union officials. For example, in *Maxwell v. United Auto., Aerospace & Agr. Implement
Workers of Am. (UAW), Loc. No. 1306*, 489 F. Supp. 745 (C.D. Ill. 1980), in addition to LMRDA
claims being held proper against two union officers, claims were also sustained against five so-
called rank-and-file union members who served on the trial committee that reached a guilty
verdict against the plaintiffs. The court found they were acting under the color of union authority
because "[t]he manner in which the trial committee was selected and the procedure it followed
were established by the UAW International and Local constitutions." *Id.* at 747.

Here, exercising union authority is exactly what the Charging Defendants did: the UAW
constitution authorized them as union members to file charges and commence disciplinary
proceedings against Plaintiffs, and they exercised that power and authority. If they had not been
acting under color of union authority, Plaintiffs would not be facing expulsion from the union.

**2.  The Amalgamated Council Defendants Were Not Ministerial Actors**

Defendants seek to evade the Amalgamated Council Defendants' individual responsibility
by characterizing their role in approving the charges filed by the Charging Defendants as a mere

"ministerial duty," evidence of their "act[ing] in a good faith effort to discharge their duties." (Defs. Mem. at 12.)

Defendants simply ignore Plaintiffs' detailed allegations that the Amalgamated Council Defendants *did* act in bad faith in an atmosphere of undisguised and publicly expressed hostility to Plaintiffs and their cause. *SAC* ¶¶ 120-181, 207. Defendants' own authority demonstrates why their defense cannot be resolved at the pleading stage. *See Berg v. Watson*, 417 F. Supp. 806, 812 (S.D.N.Y. 1976) (summary judgment denied where, regarding "plaintiff's assertions regarding the motivations behind the individual defendants' actions in this matter, it can easily be seen that the question is fraught with contested issues of material fact").

The Amalgamated Council Defendants' approval of the charges necessarily included the exercise of judgment, including whether the alleged misconduct can properly "sustain a charge of . . . conduct unbecoming a member of the Union," or, as Plaintiffs allege, is expressly permitted by law.[5] This discretion and the obligation to exercise sound judgment is evident in the fact that the Amalgamated Council Defendants did not vote in lockstep to sustain the validity of each the four accusations underlying the charge, with some voting no on some of the four accusations that together purport to establish the charge of conduct unbecoming a union member. Indeed, some Amalgamated Council members voted against all the accusations and the charges against Plaintiffs *in toto*, and they are thus not named defendants in this lawsuit.

---

[5] The UAW International Executive Board's denial of Plaintiffs' appeal (which is itself under review now by the Public Review Board) does not sanitize the Amalgamated Council's decision. The decision cannot establish as a matter of federal law that the Amalgamated Council Defendants acted in good faith in approving the charges against Plaintiffs and Defendants cite no authority in support of that position. The LMRDA and other federal labor law rights of union members and the federal policies animating those rights would be fatally undermined if claims could be foreclosed from judicial scrutiny merely because one level of union leadership put its imprimatur on the alleged misconduct of a lower level of union leadership. *See, e.g.*, *Rodonich v. House Wreckers Union Local 95 of Laborers' Int'l Union*, 817 F.2d 967, 976 (2d Cir. 1987) ("[parent union] is liable for having ratified Local 95's action with full knowledge of its unlawful character because the charges of slander were violative of the LMRDA on their face").

II.   **PLAINTIFFS STATE CLAIMS FOR RETALIATION UNDER FEDERAL, STATE, AND LOCAL ANTI-DISCRIMINATION LAWS**

Plaintiffs claim that the ALAA violated federal, state, and local anti-discrimination laws (counts five, six and eight of the SAC), and that the individual Defendants violated state and local anti-discrimination laws (counts seven and eight of the SAC), in retaliating against Plaintiffs for filing the State Court Lawsuit.

Title VII (count five) makes it "an unlawful employment practice ... for a labor organization to discriminate against any member ... because he has opposed any practice made an unlawful employment practice by" Title VII. 42 U.S.C. § 2000e-3(a).

The NYS-HRL (counts six and seven) makes it "an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article," N.Y. Exec. Law § 296(7), and such claims are analyzed under the same standard as Title VII claims, *Nezaj v. PS450 Bar & Rest.*, 719 F. Supp. 3d 318, 334–35 (S.D.N.Y. 2024), except that, unlike Title VII, individual liability is recognized both directly, N.Y. Exec. Law § 296(7), and in the form of the statute's "aiding and abetting" provision. N.Y. Exec. Law § 296(6).

The NYC-HRL (count eight) makes it "an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter [or] (ii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter." N.Y.C. Admin Code § 8-107(7). The NYC-HRL is "construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so

construed." N.Y.C. Admin. Code § 8–130(a). Its provisions must be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Albunio v. City of New York*, 16 N.Y.3d 472, 477–78 (2011).

To state a retaliation claim, a plaintiff "must plausibly allege that:  (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega v Hempstead Union Free School Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). Further, at the pleading stage, plaintiff is not required to "demonstrate" or "establish" an adverse employment action. *Id*. He is "required only to *plead* a claim upon which relief could be granted." *Id*. (emphasis in original). *See also Buon v Spindler*, 65 F.4th 64, 79 (2d Cir. 2023) ("a 'prima facie case ... is an evidentiary standard, not a pleading requirement.'") (internal citations omitted).

Because the Charging Defendants proudly attributed their expulsion charges to Plaintiffs having commenced the State Court Lawsuit, the "because" or causation element of Plaintiffs' retaliation claims (*i.e.,* the motivation for the charges) is not in dispute. Defendants' motion focuses only on (i) whether Plaintiffs engaged in protected activity when they sued to stop the ALAA Resolution in an atmosphere soaked with anti-Semitism, and (ii) whether Defendants' retaliation constitutes the kind of "materially adverse employment action" that is prohibited.

As established below, Plaintiffs' allegations readily satisfy both elements.

A. **Plaintiffs Engaged in Protected Activity**

Defendants argue that Plaintiffs have not met their "protected activity" burden because the State Court Action purportedly did not seek to remedy discrimination (Defs. Mem. at 20-21), and because Plaintiffs purportedly never opposed or challenged any discrimination (*id.* at 22). Both arguments simply ignore Plaintiffs' allegations.

*First,* at the heart of Plaintiffs' state court claims was that the ALAA resolution, and the process leading up to the vote at the time the TRO was sought, constituted "extreme, rank antisemitism." *SAC* ¶ 143. Plaintiffs' "Breach of Duty of Fair Representation" cause of action was specifically framed as opposing the ALAA's "discriminatory" conduct:

> ¶19. Defendants have breached, and imminently will continue to breach, that duty by virtue of the conduct set forth above, which was, and imminently will continue to be, arbitrary, discriminatory, and/or in bad faith.

> ¶20. As a result of Defendants' arbitrary, discriminatory, and bad faith misconduct, Plaintiffs have suffered and/or imminently will suffer harm in their relationship with their employer NCLAS, their employer's continued ability to employ them, their relationships with current and/or future clients, their professional standing, and their reputation among potential future employers.

Apter Aff. (ECF 55) Ex. A, Verified Complaint in the State Court Lawsuit, ¶¶ 19-20.

*Second*, the Supreme Court has held that the term "oppose" in Title VII warrants the broadest, most sympathetic interpretation to achieve Title VII's remedial objective to stamp out discrimination in the workplace. *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009) ("The term 'oppose,' . . . carries its ordinary meaning, . . .:'[t]o resist or antagonize ...; to contend against; to confront; resist; withstand'") (internal citations omitted) (alterations in original). *See also Scarbrough v. Bd. of Trustees Fla. A&M Univ.*, 504 F.3d 1220, 1222 (11th Cir. 2007) (a "call to the police constituted protected activity under Title VII"); *Pearson v. Massachusetts Bay Transp. Auth.*, 723 F.3d 36, 42 (1st Cir. 2013) (writing to one's legislator is protected conduct); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 580 (6th Cir. 2000) (complaint to a co-worker, newspaper reporter, or anyone else about alleged discrimination).

Here, Plaintiffs filed claims in state court, including a claim that the ALAA breached its duty of fair representation under the National Labor Relations Act, which prohibits discrimination toward union members. S*ee e.g. Vaca v. Sipes*, 386 U.S. 171, 177 (1967) ("the

exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination"). A lawsuit opposing the anti-Semitic discriminatory actions and environment of the ALAA falls well within the type of activity protected under Title VII, the NYS-HRL, and the NYC-HRL.

Moreover, and regardless, a plaintiff need not show that the underlying employment practice *actually* violated Title VII. *See McMenemy v. City of Rochester*, 241 F.3d 279, 285 (2d Cir. 2001). Instead, to plead protected activity, plaintiffs must allege only that they, in complaining, *had a good faith and reasonable belief* that they were opposing an unlawful employment practice. *McMenemy,* 241 F.3d at 285 ("an employment practice need not actually violate Title VII for the protected activities element of a retaliation claim to be satisfied [as] [t]he plaintiff is only required to have had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII"). *See also Swiderski v. Urban Outfitters, Inc.*, 2017 WL 6502221, at *11 (S.D.N.Y. Dec. 18, 2017) (Oetken, J.) ("plaintiff in a retaliation case 'need not establish that the conduct he opposed was *in fact* a violation of [the NYSHRL and NYCHRL]").

As discussed above, while Plaintiffs disagree with the Eastern District of New York's decision to dissolve the TRO, the court's conclusion that Plaintiffs clearly acted in good faith in filing the State Court Lawsuit means that Defendants were prohibited from retaliating against Plaintiffs under the LMRDA and federal, state, and city anti-discrimination laws.

**B.** **The Disciplinary Proceeding is a Materially Adverse Employment Action that Would Dissuade a Reasonable Union Member from Making or Supporting a Charge of Discrimination**

Defendants cite *Yerdon v. Henry*, 91 F.3d 370 (2d Cir. 1996), for the proposition that internal union disciplinary charges cannot constitute an adverse action until the charges have

been fully adjudicated, Defs. Mem. at 22, because "[a]n adverse action is one that affects the terms, privileges, duration, or conditions of employment." 91 F.3d at 378.

But *Yerdon* is no longer good law. It was decided ten years before the Supreme Court in *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006), decided to "reject the standards applied in the Courts of Appeals that . . . have limited actionable retaliation to so-called 'ultimate employment decisions,'" and to instead interpret Title VII to require only that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 67–68 (citations omitted).[6]

Thus, "'the institution of disciplinary proceedings is sufficient in this circuit to constitute an adverse employment decision'" when the proceedings "'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Burgos v. City of New York*, 2019 WL 1299461, at *8-9 (S.D.N.Y. Mar. 21, 2019) (Oetken, J.) (citations omitted) (rejecting argument that three disciplinary complaints that had not been adjudicated were not adverse employment actions); *Campbell v. New York City Transit Auth.*, 93 F. Supp. 3d 148, 177 (E.D.N.Y. 2015), *aff'd*, 662 F. App'x 57 (2d Cir. 2016) ("the institution of disciplinary proceedings may in some cases be sufficient to constitute adverse action which would have a deterrent effect on persons wishing to challenge discrimination in the workplace").[7]

---

[6] The Supreme Court in *Burlington* also found that Title VII's retaliation provision is broader than its discrimination provision and plaintiffs alleging retaliation are not required to prove an "adverse employment action" affecting terms and conditions of employment. *Id.* at 64 ("The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harms.").

[7] The NYS-HRL's retaliation provision is analyzed using the same criteria as Title VII. *Nezaj*, 719 F. Supp. 3d at 334–35. The NYC-HRL dispenses with the "materially adverse" phrase in favor of prohibiting retaliation "in any manner against any person" for opposing discrimination prohibited by NYC-HRL. N.Y.C. Admin. Code § 8-107(7). This means, in practice, that "[r]ather than requiring a plaintiff to show an adverse employment action," a NYC-HRL plaintiff need only show that "something happened that was reasonably likely to deter a person from engaging in protected activity." *Dodd v. City Univ. of New York*, 489 F. Supp. 3d 219, 268–69 (S.D.N.Y. 2020).

Here, retaliatory expulsion proceedings against Plaintiffs are actively underway. This more than satisfies pleading an adverse employment action in support of a retaliation claim.

**C.  Plaintiffs Allege "Impact" Within NYC Under the NYC-HRL**

Defendants argue that the NYC-HRL does not apply because Plaintiffs work in Nassau County. (Defs. Mem. at 24.) Defendants correctly cite the "impact" test established in *Hoffman v. Parade Publications*, 15 N.Y.3d 285 (2010), which, as the New York Court of Appeals explained in *Syeed v. Bloomberg L.P.*, 41 N.Y.3d 446, 452 (2024), allows a non-resident plaintiff to invoke the jurisdiction of the NYC-HRL by "establishing that the challenged conduct had some impact on the plaintiff within the respective New York geographic boundaries." *See, e.g.*, *Scalercio-Isenberg v. Morgan Stanley Services Group, Inc.*, 2019 WL 6916099, at *4 (S.D.N.Y. Dec. 19, 2019) (Oetken, J.) (non-resident satisfied "impact" requirement when she alleged she "was discriminated against when she was not hired by the New York office of Morgan Stanley, and that Morgan Stanley retaliated against her when she complained").

Here, although Plaintiffs work in Nassau County, they have alleged that the conduct had some impact on them in New York City, which is where the ALAA is located:

> ¶33. The ALAA conducts almost all of its operations, meetings, programs and training at its principal place of business, which is where plaintiffs and other members would go to seek assistance from the ALAA for union matters, all of which would be denied to plaintiffs if they are expelled. It is also where the meetings described herein occurred or were organized, to the extent that they had a physical locus at all and where the selection of jurors (the Trial Committee) would be selected and the trial itself would be conducted in plaintiffs' expulsion proceeding.

*SAC* ¶ 33.

Defendants do not address this allegation at all. They ignore that this case is not about Plaintiffs' employment, but rather their union membership. Although Plaintiffs work in Nassau County, the ALAA, being based in New York City, conducts almost all its operations, bargaining,

meetings, programs, and voting relative to Plaintiffs' participation in the union in New York City. Indeed, despite having collective bargaining agreements with employers across downstate New York, the ALAA, and in particular, membership in the ALAA, is fundamentally a Manhattan operation *regardless* of where its members are employed. In addition, if expelled, Plaintiffs' future employment in NYC will be adversely impacted by their inability to join the union in which membership is mandatory at the very many legal services employers with which the ALAA has a collective bargaining agreement. Expulsion from the ALAA effectively ends Plaintiffs' careers as legal services attorneys in New York City.

Thus, Plaintiffs' allegations satisfy the standard articulated by the Court of Appeals in *Syeed*, i.e., that expulsion will have at least "some impact" on them within New York City.

### D. Plaintiffs State NYS-HRL and NYC-HRL Claims Against the Individual Defendants

Both the NYS-HRL and the NYC-HRL recognize individual liability, under both "aider and abettor" and "direct" theories for retaliation. *See* N.Y. Exec. Law §§ 296(6) and (7), and N.Y.C. Admin Code §§ 8-107(6) and (7). *See also Nezaj*, 719 F. Supp. 3d at 334–35 ("although the NYSHRL does not provide for direct liability for discrimination other than by an 'employer,' it makes it unlawful for 'any person' to retaliate); *Doe v. Bloomberg, L.P.*, 36 N.Y.3d 450, 459, (2021) ("individuals may incur liability only for their own discriminatory conduct, for aiding and abetting such conduct by others, or for retaliation against protected conduct").

Defendants cite *Falchenberg v. New York State Dep't of Educ.*, 338 F. App'x 11 (2d Cir. 2009), for the proposition that an "aiding or abetting" claim cannot survive the defeat of the underlying discrimination claim, that is, one cannot guiltily aid and abet a non-offense. *Falchenberg* is of no help to the individual Defendants for two reasons.

*First*, for the reasons offered above, Plaintiffs have adequately pled their underlying claims, and since those claims survive so should Plaintiffs' aiding and abetting claims.

*Second*, *Falchenberg* only saves individual defendants when they are accused of *discrimination* and the underlying discrimination claim fails; it does not apply to *retaliation* claims because a plaintiff need not prove the underlying discrimination, but merely that they had a good faith, reasonable basis for believing that they are opposing discriminatory conduct to be protected from retaliation. *See Swiderski*, 2017 WL 6502221, at *11  (Oetken, J.) ("plaintiff in a retaliation case 'need not establish that the conduct he opposed was *in fact* a violation of [the NYSHRL and NYCHRL]. Instead, '[t]he plaintiff must demonstrate a good faith, reasonable belief that the underlying challenged actions of the employer violated the law.'") (citations omitted).

Therefore, the individual Defendants can be held personally liable for both their own retaliation and for aiding and abetting the underlying discrimination.

The individual Defendants also repeat their argument made in defense of the LMRDA claim against them (i.e., that they were performing ministerial acts). The argument fails for the same reasons addressed above; the SAC pleads in detail that they acted in bad faith in approving charges that violate Plaintiffs' rights.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' motion to dismiss the Second Amended Complaint.

Dated: New York, New York
        January 24, 2025

                                Respectfully submitted,

                                THE LOUIS D. BRANDEIS CENTER
                                FOR HUMAN RIGHTS UNDER LAW

By: */s/ Paul Eckles*
    */s/ Rory Lancman*
Paul Eckles
Rory Lancman
1330 Avenue of the Americas, 23rd Fl.
New York, NY 10019
peckles@brandeiscenter.com
(917) 488-7025
rlancman@brandeiscenter.com
(917) 363-9004

*Attorneys for Plaintiffs*