UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ILANA KOPMAR, DIANE T. CLARKE, AND ISAAC ALTMAN,<br><br>                              Plaintiffs,<br><br>v.<br><br>THE ASSOCIATION OF LEGAL AID ATTORNEYS AMALGAMATED LOCAL UNION 2325 OF THE INTERNATIONAL UNION, UNITED AUTOMOBILE AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW), AFL-CIO, and DANIELLE WELCH, GERALD KOCH, EVA STEVENSON, CANDACE GRAFF, LISA OHTA, BRET J. TAYLOR, EMILY C. EATON, MARTYNA KAZNOWSKI, JEREMY BUNYANER, IOANA CALIN, GILLIAN R. KRESS, PUJA PAUL, JACQUELINE AGUILAR, BABATUNDE AREMU, CASEY BOHANNON, MICHAEL GIBBONS, ALEXANDER HU, KELSEY LAING, MARTHA MENENDEZ, HALLIE MITNIK, SEAN T. PARMENTER, IAN SPIRIDIGLIOZZI, DOROTHY SUMMERS, TANNER WIELAND, TORI ROSEMAN, ANDREW SPENCE, COLLEEN FOLEY, and JULIA JENKINS,<br><br>                              Defendants. | Case No.<br>1:24-cv-05158-JPO |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

                                        Levy Ratner, P.C.
                                        80 Eighth Avenue, Floor 8
                                        New York, NY 10011-7127
                                        (212) 627-8100
                                        (212) 627-8182 (fax)


On the Brief:    Jessica I. Apter
                 Allyson L. Belovin

i

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ILANA KOPMAR, DIANE T. CLARKE, AND ISAAC ALTMAN,<br><br>                                                                      Plaintiffs,<br><br>v.<br><br>THE ASSOCIATION OF LEGAL AID ATTORNEYS AMALGAMATED LOCAL UNION 2325 OF THE INTERNATIONAL UNION, UNITED AUTOMOBILE AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW), AFL-CIO, *et al.*,<br><br>                                                                     Defendants. | Case No.<br>1:24-cv-05158-JPO |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

The Association of Legal Aid Attorneys Amalgamated Local Union 2325 of the International Union, United Automobile Aerospace and Agricultural Implement Workers of America (UAW), AFL-CIO ("**ALAA**" or "**Union**") and the individual defendants (with the Union, "**Defendants**") submit this reply memorandum in support of their motion to dismiss.[1]

**I.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE LMRDA.**

   **A.    Plaintiffs fail to state a claim for discipline *or* infringement.**

Nothing Plaintiffs allege or argue brings the conduct complained of within this Circuit's definition of "discipline" under LMRDA Section 609, 29 U.S.C. § 529. Discipline "denote[s] only punishment authorized by the union as a collective entity." Schermerhorn v. Local 100, 91 F.3d 316, 326 (2d Cir. 1996) (quoting Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6, 493 U.S. 67, 91 (1989)). This Court has already ruled that "the leveling of charges and hearing…is neither discipline within the meaning of [the LMRDA] nor does it give rise to irreparable injury to speech rights, because it is merely an investigation of [a plaintiff's]

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Defendants' Memorandum of Law in Support of Motion to Dismiss the Second Amended Complaint.

1

activities and not punishment for the exercise of those rights." <u>Rivera v. Feinstein</u>, 636 F. Supp. 159, 163 (S.D.N.Y. 1986). Nothing in Plaintiffs' cases (which predate those cited herein) permits a finding that filing charges or holding a trial constitutes *discipline* under Section 609. Accordingly, the Section 609 claims must be dismissed.

Further, as argued previously and below, Plaintiffs also do not sufficiently plead LMRDA infringement. First, they fail to allege that they attempted to engage in speech with, or directed to, fellow Union members. Second, they fail to allege even a single action by the Union or its agents to limit or suppress an LMRDA right, including the right to sue. To the contrary, this case and the underlying EEOC charges demonstrate a lack of any such infringement.

**B.     The Individual Defendants are not liable under the LMRDA.**

**1.   The Rank-and-File Defendants filed the Charges on their own behalf.**

Plaintiffs do not argue, let alone allege facts to establish, that the Rank-and-File Defendants filed the Charges on the ALAA's behalf. Instead, they assert that simply by being filed pursuant to the Union Constitution, the Charges were filed "under color of union authority." But that is insufficient to establish a claim. The "uniform current of authority in this Circuit has been to limit the jurisdiction…under the [LMRDA] to suits based upon allegations that a labor organization or officer or agent thereof acting in his official capacity violated the terms of the Act." <u>Thompson v. N.Y. Cent. R.R. Co.</u>, 361 F.2d 137, 145 (2d Cir. 1966).

Plaintiffs cite <u>Morrissey v. National Maritime Union</u>, 544 F.2d 19 (1976) for the extension of liability "beyond the union itself" (Pl.'s Br. at 15). However, the Court there extended liability only to union officials, in light of the LMRDA's "intent to curb the power of overweening union officials," 544 F.2d at 24. Nor does <u>Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10</u>, 605 F.2d 1228 (2d Cir. 1979), extend liability beyond

2

officials as that case involved only elected officers. The only example Plaintiffs offer of non-officer liability is Maxwell v. United Automobile, Aerospace & Agricultural Implement Workers, Local No. 1306, 489 F. Supp. 745, 751 (C.D. Ill. 1980), where trial committee members were held liable because they were *appointed by the union* to issue a verdict *on behalf of the Union*. Plaintiffs neglect to mention that the court held not liable three other union members who testified against the plaintiff in the trial but "held no official union positions." Id. Plaintiffs fail to identify any basis for the conclusory allegation that the Rank-and-File Defendants acted "under color of union authority" by their mere filing of charges using a union procedure equally available to Plaintiffs had they chosen to use it. "Color of union authority" must require something more than the mere exercise of a basic membership right.

Plaintiffs' commentary on Defendants' cases[2] misses the point: no case need say that liability requires *both* official or agency status *and* action "under color of union authority" because the Rank-And-File Defendants had neither. No more officers or agents of the Union than any other member, they did not have or need any "authority" to file the Charges, so their conduct is not governed by the LMRDA.

### 2. The AC reviewed the Charges in good faith.

Union Officers may only be sued for interference with LMRDA rights for official acts that are taken "in abuse of" their authority; they are not subject to liability when they "act in a good faith effort to discharge their duties." Berg v. Watson, 417 F. Supp. 806, 812 (S.D.N.Y. 1976) (citing Morrissey v. Nat'l Mar. Union, 544 F.2d 19, 24 (2d Cir. 1976)). Plaintiffs

---

[2] Defendants' cases holding individuals not liable under the LMRDA absent agency or an official position included *Farrell v. Hellen*, No. 03 CIV. 4083 (JCF), 2004 WL 433802 (S.D.N.Y. Mar. 10, 2004), which involved a union lawyer acting in the capacity of counsel. Plaintiffs take out of context that court's willingness to consider one bit of non-advisory conduct alleged; immediately prior to entertaining the possibility of liability (and then rejecting it on another ground), the court listed cases where a lawyer had been held liable in the capacity of an agent or official.

3

incorrectly point to Berg for the proposition that disputes about good faith cannot be resolved at the pleading stage. There, the court denied summary judgment to *plaintiff* on the speculative matter of whether defendants acted in bad faith; here, it is *Defendants* seeking dismissal because Plaintiffs plead nothing to show that the AC Defendants abused their authority in finding that the Charges must proceed because they were not improper as defined in the Union constitution, which makes it "mandatory that a trial be held unless the charges are withdrawn by the accuser or considered by the Union to be improper under" Article 31. Apter Aff. Ex. 4, Art. 31(3).

### C. Plaintiffs fail to state a free speech claim under § 101(a)(2).

#### 1. Lawsuits are not the kind of 'speech' protected by § 101(a)(2).

Plaintiffs continue to confuse the right to sue with the right to free speech. Lawsuits are, no doubt, "speech" and are described using that word in cases, but that does not mean that they are the *kind* of speech protected by LMRDA Section 101(a)(*2*). See Lacy v. Highway & Motor Freight Emps., Local 667, 1978 WL 1735, at *4 (W.D. Tenn. Apr. 3, 1978) ("the plaintiff's former suit…seem[s] irrelevant to § 411(a)(2) because § 411(a)(4) deals with the right of a member to sue"). Plaintiffs fail to cite any case in which a lawsuit was held protected by Section 101(a)(*2*). Defendants addressed the infringement claims in their principal brief, and state again here: Plaintiffs cannot sustain a claim of retaliation for or infringement on their right to speak freely to fellow members, without alleging ever trying to engage in intraunion speech. Moreover, Plaintiffs do not allege any Union action taken to suppress or limit their speech rights.

### 2. The TRO Action violated Plaintiffs' responsibility to the ALAA.[3]

The Supreme Court has recognized that the "overriding objective" of the LMRDA is "democratic union governance." Sheet Metal Workers' Int'l Ass'n v. Lynn, 488 U.S. 347, 644 (1989); see also United Steelworkers v. Sadlowski, 457 U.S. 102 (1982). Thus, "despite the broad interpretation of § 101(a)(2), …a balancing must be carried out—the union member's interest in free and untrammeled speech must be weighed against the interests of the union as an institution." Loekle v. Hansen, 551 F. Supp. 74, 80 (S.D.N.Y. 1982). None of the distinctions Plaintiffs identify between Defendants' cited cases and this one changes the balance here: the Union's interest in holding a democratic vote on an issue of importance to the membership outweighs Plaintiffs' personal interest in *blocking* fellow members from voting.

### D.    Plaintiffs fail to state a right-to-sue claim under LMRDA § 101(a)(4).

The LMRDA was enacted to *protect* Union democracy and *proscribe* Union conduct that would chill union members' free speech. Having failed altogether to allege a single Union or Union agent action taken for the purpose or with the effect of suppressing any member's right to sue, Plaintiffs ignore the reality that their own act of filing the TRO Action was an explicit attempt to *block* a Union democratic vote, and the use of it to dox other Union members risked further interfering with Union democracy by chilling speech with which Plaintiffs disagreed. Plaintiffs again miss the point when they attempt to distinguish the facts here from those in the cases cited by the Union, because this is the very first case in the country where a plaintiff has sought the protection of the pro-democratic LMRDA for a lawsuit that 1) was brought to stifle Union democracy, and/or 2) doxed fellow Union members. Further, the TRO Action was not a

---

[3] Plaintiffs ignore the argument that the TRO Action violated a responsibility to the *ALAA*, and instead argue it did not violate a duty to the *UAW* (Def. Br. §II(B)(2)); they then assert that the ALAA violated *its* duty to third-party UAW, by holding a vote on the Resolution at all. The Union disagrees with this unpled and irrelevant allegation.

"discrimination lawsuit," see infra at II(A)(1), nor was the contact information of members who made anti-Zionism or pro-Resolution statements in an internal forum material "evidence" in that action. Plaintiffs gratuitously included that information, subjecting those members to potential harassment and chilling what had been a robust debate within the Union. The Court should not hold that suing to block a democratic Union-wide vote or doxing fellow members in a lawsuit is conduct protected by the LMRDA; to do so would pervert the entire purpose of the LMRDA's Bill of Rights and provide a roadmap for how to shut down Union debate with impunity.

## II. PLAINTIFFS FAIL TO STATE A CIVIL RIGHTS RETALIATION CLAIM.

### A. Plaintiffs fail to make out a prima facie retaliation claim.

#### 1. Plaintiffs did not engage in protected activity.

Plaintiffs do not allege facts sufficient to suggest that they engaged in activity protected by Title VII, the NYSHRL or the NYCHRL, and their good faith belief that a TRO was warranted is not the same as having a good faith belief that they were opposing a violation of civil rights laws. Whether they had the latter belief is "determined in part by the extent of the plaintiff's legal sophistication…Thus, for example, an attorney or equal employment opportunity specialist will be held to a higher standard of expertise about Title VII than a layperson." Iannone v. Frederic R. Harris, Inc., 941 F. Supp. 403, 410 (S.D.N.Y. 1996). Further, "a plaintiff's belief is not reasonable "simply because…she complains of something that appears to be discrimination in some form…. Moreover, the employer must be able to reasonably understand that the complaint was directed at conduct prohibited by Title VII." Bamba v. Fenton, 758 Fed.App'x 8 (2d Cir. Dec. 4, 2018). "Although particular words such as "discrimination" are certainly not required to put an employer on notice of a protected complaint, neither are they sufficient to do so if nothing in the substance of the complaint suggests that the complained-of

6

activity is, in fact, unlawfully discriminatory." Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 17 (2d Cir. 2013). Thus, Plaintiffs, attorneys themselves represented by attorneys, cannot rely on their use of the word "discriminatory" in the phrase "arbitrary, discriminatory, and/or in bad faith," to post-hoc frame a duty of fair representation ("**DFR**") allegation – one they admit they brought under the National Labor Relations Act[4] (Pl.'s Br. at 20) – as opposition to a violation of civil rights laws. Even if Plaintiffs and their attorneys had a "good faith" and "reasonable" belief they were opposing an employment practice unlawful under federal *labor* law when they cited the DFR standard, they present no authority for the argument that doing so brought them within the protection of entirely separate *civil rights* laws. Plaintiffs and their attorneys did not just fail to exhaust administrative proceedings (at the EEOC or state or local counterparts) that they must have known were required to successfully challenge employment discrimination, they entirely failed to request any relief whatsoever for any suspected or actual violation of employment discrimination laws. See Comstock v. Consumers Mkts., Inc., 953 F. Supp. 1096, 1103 (W.D. Mo. 1996) ("[h]owever,…such lawsuit was not brought under Title VII, nor did such suit allege…any unlawful employment practice which would entitle her to protection under Title VII's anti-retaliation provisions"). It is implausible that Plaintiffs (or their attorneys) had a good faith belief that they were alleging violations of civil rights laws yet did not cite those laws to support their request for a TRO.

Further, Plaintiffs fail to explain how quoting fellow members' allegedly antisemitic statements supportive of Palestinian liberation or of the Resolution amounted to opposition of any Union practice prohibited by employment discrimination laws. See Levy v. Legal Aid Soc'y,

---

[4] Vaca v. Sipes, 386 U.S. 171 (1967), does nothing for Plaintiffs; it defines the duty owed to bargaining unit members by Unions in their capacity as representative for the purpose of contract bargaining and enforcement.

408 F. Supp. 3d 209, 216 (E.D.N.Y. 2019) (former employee's complaint that coworker's email supportive of women's and transgender rights was "sinful, offensive, and went against his religious beliefs," as observant Jew was not protected activity because it did not allege a violation of Title VII or NYSHRL). In any case, Plaintiffs already conceded that the allegedly antisemitic quotes (along with the quoted members' contact information) were submitted "in further support of their application for a TRO" blocking the membership vote, Compl. ¶ 145, and thus not about Union discrimination at all, but rather, to avoid the purported harm of having various third parties (judges, employers, clients) impute to *all* ALAA members *equally* the position taken in the Resolution if it was approved democratically. Apter Aff. Ex. 1 ¶ 33. Thus, Plaintiffs' own arguments in support of the TRO Action undermine any claim they engaged in protected activity and instead make clear that the entire purpose of the TRO Action was to object to the democratic process by which the Union sought to adopt the Resolution.

### 2.     Plaintiffs have not suffered an adverse action.

Plaintiffs are correct that under Burlington North & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006), the standard for the kind of adversity required to make out a claim of retaliation under Title VII is no longer "ultimate employment decisions" but rather whether it "could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burgos v. City of New York, 2019 WL 1299461, at *8-9 (S.D.N.Y. Mar. 21, 2019) (Oetken, J.) (citing Burlington). However, as the Court acknowledged in Burgos, cited by Plaintiffs, "courts in this Circuit have disagreed as to whether an investigation into disciplinary charges that does not result in any discipline may be sufficient [to] constitute an adverse action in the retaliation context," and that "[c]ontext matters" when determining "whether such disciplinary complaints would deter a reasonable employee . . . from complaining about discrimination." Id. at *8 (citing

8

cases). The Court based its determination that disciplinary proceedings in that case constituted adverse actions on the "crucial role disciplinary complaints play in the Department's system for awarding promotions – and the lasting effect it appears they can have even if ultimately dismissed." Id. at *9. In the other post-Burlington case cited by Plaintiffs, the court also looked for impact on conditions of employment, and failing to find any, held that the service of disciplinary charges was insufficiently adverse. See Campbell v. N.Y.C. Transit Auth., 93 F. Supp. 3d 148, 170 (E.D.N.Y. 2015), aff'd, 662 F. App'x 57 (2d Cir. 2016). Thus, Plaintiffs' assertion that "expulsion proceedings against Plaintiffs are actively underway" is insufficient to satisfy the requirement that they plead an adverse employment action.[5]

Plaintiffs do not address Defendants' argument that the Charges would not reasonably chill Union members from challenging an actual act of employment discrimination, because they are narrowly tailored, seeking to condemn the "interrupt[ion of] a democratic process on an internal union matter and, in the process, [the] baseless[] and public[] smearing [of] fellow union siblings as antisemitic" because of their political opinions. Apter Aff. Ex. 1. As Plaintiffs seem to concede, charges of such specificity would not deter a reasonable ALAA member from opposing or challenging any actual—or actually perceived—violation of a human rights law.

---

[5] This may explain Plaintiffs' knowingly false claim that "if expelled, Plaintiffs' future employment in NYC will be adversely impacted by their inability to join the union in which membership is mandatory at the very many legal services employers with which the ALAA has a collective bargaining agreement. Expulsion from the ALAA effectively ends Plaintiffs' careers as legal services attorneys in New York City." Pl. Br. at 24. As Plaintiffs well know, Union membership is not required when it has been revoked for other than nonpayment of dues. 29 U.S.C. § 158(a)(3)(B); Transp. Workers Union, 326 N.L.R.B. 8 (1998). In any case, the Court must disregard those unpled "facts," since "Plaintiffs cannot amend their complaint by asserting new facts or theories…in opposition to Defendants' motion." K.D. ex rel. Duncan v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013).

## B. The Union had a legitimate, non-retaliatory reason to process the Charges.

Plaintiffs fail to address the Defendants' legitimate, non-retaliatory reason to process the Charges once filed. Specifically, they do not suggest how the Charges met any of the enumerated reasons permitted by the Union Constitution for rejecting charges. Apter Aff. Ex. 4, Art. 31.

## C. The NYCHRL does not protect membership in a Long Island union chapter.

Hoffman v. Parade Publications, 15 N.Y.3d 285, 290 (2010), and Defendants' other cases on this point preclude extending the reach of the NYCHRL to those who work (and belong to a union chapter) outside of NYC based on the occurrence of meetings or the making of important decisions at the employer's (or union's) NYC headquarters. This Court's decision in Scalercio-Isenberg v. Morgan Stanley Services Group, Inc., 2019 WL 6916099 (S.D.N.Y. Dec. 19, 2019) is distinguishable as it involved the rejection of a non-resident applicant for a *New York City-based* position. Lastly, the Court may not accept Plaintiffs' unpled (and false) statements that "membership is mandatory at the very many legal services employers with which the ALAA has a collective bargaining agreement" so "[e]xpulsion from the ALAA effectively ends Plaintiffs' careers as legal services attorneys in New York City." See supra, note 5.

## D. Plaintiffs fail to state NYCHRL or NYSHRL claims against any individual.

Plaintiffs' NYSHRL and NYCHRL claims against the individual defendants fail for the reasons set forth in Defendants' principal brief. Swiderski v. Urban Outfitters, Inc., 2017 WL 6502221, at *11 (S.D.N.Y. Dec. 18, 2017), cited by Plaintiffs, does not help them overcome Falchenberg v. New York State Department of Education, 338 F.App'x 11, 14 (2d Cir. 2009), because Swiderski does not address individual liability at all. Moreover, this Court has applied Falchenberg to preclude aider/abettor liability for retaliation in the absence of entity retaliation. E.g., Smith v. N.Y. & Presbyterian Hosp., 440 F. Supp. 3d 303, 347–48 (S.D.N.Y. 2020).

## **CONCLUSION**

For all these reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety and with prejudice.

Dated:   March 3, 2025
         New York, New York

LEVY RATNER, P.C.

By:   Allyson L. Belovin
     Jessica I. Apter
     Attorneys for Defendants
     80 Eighth Avenue, 8th Floor
     New York, New York 10011
     (212) 627-8100
     (212) 627-8182 (fax)
     abelovin@levyratner.com
     japter@levyratner.com